JAMES A. KIDNEY
DANETTE EDWARDS
THOMAS SWIERS
100 F St., NE
Washington, D.C. 20549-5949
(202) 551-4441 (Kidney)
(202) 772-9282 (Fax)
kidneyj@sec.gov
Attorneys for the Securities and Exchange
Commission

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) ) ) ) ) ) ) ) ) ) ) ) | **Case No.: 2-13-cv-1658 JCM-CWH** <br><br> **PLAINTIFF'S MEMORANDUM IN SUPPORT OF APPLICATION FOR AN ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT OF THE ORDERS ENTERED BY THIS COURT** |
| Plaintiff, | | |
| v. | | |
| **EDWIN YOSHIHIRO FUJINAGA, et al.,** | | |
| Defendants. | | |

Plaintiff, the Securities and Exchange Commission ("SEC" or "the Commission"), applies for entry of an Order to Show Cause ("OSC") in the form submitted herewith as to why defendants Edwin Y. Fujinaga ("Fujinaga") and MRI International, Inc. ("MRI") and relief defendant CSA Service Center, LLC ("CSA"), should not be held in contempt of the preliminary injunction ("PI") entered by the Court on consent of the parties on October 7, 2013 (Dkt. Doc. 20) by failing to produce a required accounting of assets and in contempt of both the PI and a temporary restraining order entered on September 12, 2013 by failing to abide by an asset freeze included in said orders.

Specifically, defendants have failed to comply with paragraph VII of the PI, which required that they provide an accounting "of all funds, assets and liabilities" within seven days of service of entry of the PI. Although counsel for the defendants has repeatedly promised that an

accounting would be forthcoming, as of this writing no such document has been received. It is over four months since the accounting was ordered and due.

Further, the SEC has reason to believe that Fujinaga is violating the asset freeze incorporated in paragraph III of the PI and also ordered in the TRO. Although Fujinaga claimed 2012 net income of $1,486,079 in his federal tax return (net of taxes paid but reclaimed based on claimed substantial partnership losses), the bank statements he has produced as "personal" accounts disclose only $188,379 in deposits. Despite repeated requests, Fujinaga has provided no records of personal checking accounts, brokerage accounts, credit cards accounts and the like disclosing how he and his family have supported themselves since entry of the original asset freeze in the TRO entered on September 12, 2013 and continued in the PI. Instead, counsel for Fujinaga claims that all expenses have been paid in accounts owned by Fujinaga's wife. However, the SEC is not aware of any substantial income Mrs. Fujinaga can claim independent of the income realized by Fujinaga's various business interests and alleged Ponzi scheme. Once again, the plaintiff has repeatedly asked counsel for Mr. Fujinaga and for Mrs. Fujinaga for reliable evidence of Mrs. Fujinaga's income independent of her husband's activities. Once again, no information has been produced. Nor has Fujinaga produced records accounting for the disposition of $1.3 million in income reported in 2012 and any significant income realized in 2013. The income reported to the IRS included substantial interest income, yet no records have been produced disclosing the source of interest income or other investments.

The proposed Order to Show Cause would require the defendants and Mrs. Fujinaga -- whose counsel is being served with this application for an OSC – to produce all documents disclosing the expenditures of funds since entry of the TRO on September 12 and all documents disclosing the sources of income to pay for those expenditures, as well as all records disclosing

income and expenditures and the location of assets since at least January 1, 2012. Provision is made in the proposed Order for fines and incarceration should defendant Fujinaga not comply with the order.

Further, given the extraordinarily contumacious conduct exhibited by defendant Fujinaga, the Commission requests that the defendant surrender his passport to the Court to reduce the likelihood that he will flee the country while this action proceeds.

## STATEMENT OF FACTS

The SEC filed a Complaint under seal on September 11, 2013, alleging that Fujinaga and MRI perpetrated a Ponzi scheme victimizing thousands of investors who had paid over $800 million to the defendants over the space of nearly 15 years. (Cplt. ¶ 3). When MRI's business of collecting medical accounts receivable, in which victims had invested their funds, was unable to pay returns promised to investors, the Complaint alleges that the defendants used money from new investors to pay promised returns to earlier investors. Investor funds were used to maintain Fujinaga in a lavish lifestyle through payments to another company owned and controlled by Fujinaga, The Factoring Company. (Cplt. ¶ 5). As all Ponzi schemes eventually do, the fraudulent enterprise collapsed. Since at least 2011, MRI has been in default on payments it was obliged to make to investors. (Cpl. ¶ 6).

The Court granted the Commission's request for a TRO the day after the Complaint was filed, based on declarations and other evidence supporting the allegations and concern that defendants would abscond with, hide, or dissipate assets, including cash, absent a court order freezing all assets. The SEC served the TRO on defendants or their counsel shortly after it was entered. Paragraph IV of the TRO provided:

>  IT IS FURTHER ORDERED that, pending further Order of the Court,

Defendants Fujinaga and MRI, and Relief Defendant CSA, and their officers, agents, servants, employees, family members, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, and each of them, shall hold and retain within their control, and otherwise prevent any direct or indirect withdrawal, disposition, sale, transfer, pledge, hypothecation, changing, wasting, encumbrance, assignment, dissipation, conversion, concealment, or other disposal whatsoever of any funds, assets, securities, or other real or personal property, wherever located, of Defendants, and their subsidiaries and affiliates, whether owned by, controlled by, managed by or in the possession or custody of any of them, including assets held in business, corporate or partnership accounts in which Defendants Fujinaga and MRI, and Relief Defendant CSA, have an interest, except as otherwise ordered by the Court. This Order expressly includes a prohibition on opening or causing to be opened any safe deposit boxes titled in the name of, or subject to access by, the Defendants or the Relief Defendant;

The PI, to which defendants stipulated, contained nearly identical language at paragraph IV. It further provided, at paragraph VII:

**IT IS FURTHER ORDERED** that within seven calendar days following the service of this Order, each Defendant and Relief Defendant shall:

A. Provide the SEC with a verified, written accounting, signed by the Defendant or Relief Defendant under penalty of perjury, of all funds, assets and liabilities, including: all real and personal property exceeding $5,000 in value, located both within and outside the United States, held by such Defendant or Relief Defendant on his or its own behalf, or under his or its direct or indirect control, whether jointly or singly, or in which he or it has an interest, all funds and assets that each Defendant or Relief Defendant received from investors, and the ultimate use or current location of those funds or assets. The accountings shall include a description of the source(s) of all such assets and all bank, securities, futures and other accounts controlled by the Defendant or Relief Defendant, directly or indirectly, identified by institution, branch address and account name and number.

The accounting identified above was, by terms of the PI, due in the hands of the SEC not later than October 15, 2013.

As shown in the exchange of letters and emails to defense counsel filed herewith as Exhibits 1-9 to the Declaration of James A. Kidney, the Commission has repeatedly asked defendants for the accounting and has been told it is being worked on, but no accounting has been produced. In responding to SEC counsel's demand for immediate production of an accounting on December 3, 2013, defense counsel promised on December 4 that within seven days "we will be producing to your

4

office the detailed accounting requested . . ..." (Kidney Dec. Ex. 1 and 2).  No such accounting was ever produced.

The SEC reiterated its demand for an accounting in a letter dated January 16, 2014 to defense counsel and counsel for Fujinaga's wife, June Fujinaga.  That letter also asked that Mrs. Fujinaga withdraw from sale two condominium units in the MGM Towers which the SEC believes were acquired with funds provided her, directly or indirectly, by defendant Fujinaga.  Kidney Dec. Ex. 3.  Counsel for Mrs. Fujinaga wrote the Commission that the properties were largely (though not entirely) acquired with Mrs. Fujinaga's own funds but that, nevertheless, the properties would be withdrawn from sale.   Kidney Dec. Ex. 4. The SEC's request that Mrs. Fujinaga provide reliable evidence that the funds principally used to acquire the properties were her own, and not from her husband, has gone unanswered.  Kidney Dec. Ex. 6, January 22, 2014 letter from James A. Kidney to defense counsel; Kidney Dec. Ex. 8, January 23, 2014 email to defense counsel and counsel for June Fujinaga; Kidney Dec. Ex. 9, January 27, 2014 letter to defense counsel and counsel for June Fujinaga.

Meanwhile, in response to the SEC's January 16 renewal of a demand for an accounting, defense counsel responded in a letter dated January 21, 2014 by recounting how a large volume of corporate records had been and was continuing to be produced and claiming that defendants wanted to be cooperative.  Kidney Dec. Ex. 5.  Rather than continue false promises to belatedly obey the Court's order for an accounting, defense counsel instead stated that no accounting would be produced until invoices from accountants were paid.  "Our suggestion is that if you want additional financial and the completion of the audited accounting, then these invoices need to be take care of so that additional work can be completed."  Kidney Dec. Ex. 6, unnumbered page 3, paragraph immediately following bulleted matter.  In other words, over four months after this Court ordered production of an accounting within a week, the defendants are now refusing to produce one unless and until the SEC agrees to permit the defendants to pay bills  owed the defendants' accountants before the SEC even

has knowledge of what assets are available.  This is extortionate behavior and outright contempt of the court's order.

Defendant Fujinaga also has contemptuously refused to produce documents accurately disclosing his financial situation both before and after the entry of the asset freeze.  Through counsel, he has produced alleged "personal" checking account records which disclose only $188,000 of deposits in 2012.  His income tax return for 2012 reports over $1.4 million of income from salaries and interest.  Yet, no records of either the income or the disposition of the income have been produced beyond the one checking account with deposits of only 15 percent of Fujinaga's personal income.[1]

It appears that the defendants have simply decided that complexity and massive production of detailed corporate documents, many of them dating back to 2008, while refusing to produce current personal income and expense data, are a way of stifling the orders of this Court.  The SEC never suggested that an accounting directed to establishing the current value of Fujinaga and MRI assets had to be rendered in extraordinary detail and be other than materially accurate as of the date it was filed.  The defendants have ignored the purpose of the accounting – to determine the amount and source of assets under defendants' control at the time of the freeze order – and instead purport to take months to prepare needlessly detailed records, then moan that no accounting can be produced because there are bills to pay.  Meanwhile, it is fair to infer -- based on the failure to produce evidence of sources of income for current living expenses, the wide gap between income reported to the IRS for 2012 by Mr. Fujinaga and the pitifully slight production of any related records of that

---

[1] Exhibit 10 to Kidney Declaration is a collection of documents, beginning with a summary of Fujinaga's income tax filing for 2012 prepared by his outside accountants.  Following that is a table prepared by the Commission disclosing the credits and debits compiled from the only 2012 records produced by the defendant purporting to disclose his "personal" accounts.  The source material – banking statements – follows the table.  It fully supports the representation above that Fujinaga has disclosed records reflecting only 15 percent of his 2012 income.

income -- that the defendants have used this time to violate provisions of the asset freeze and probably to remove funds from easily detected domestic bank accounts.

Based on the elapsed time since the order requiring production of an accounting (again, an order to which the defendants consented), the excuses for not producing either the accounting or relevant income and expense records are only that – weak excuses.  In any event, the PI has not been complied with and defendants have not offered any colorable reason or failing to comply.  To the contrary, now they are trying to hold the accounting for ransom.[2]

Nor has the defense produced any personal records of Fujinaga's expenditures for himself or his family since entry of the TRO.  Fujinaga contends that all of his expenses are paid by his wife and that his personal records, accounting for at best 15 percent of his gross income, have been produced.  But to the SEC's knowledge, Mrs. Fujinaga has no source of income independent of her husband's and the defendants and Mrs. Fujinaga have rejected requests for reliable documentation to establish such a source.  The absence of records for nearly $1.5 million in gross income for 2012 is absurd and a clear cut attempt to avoid the Court's orders.[3]

## ARGUMENT

### I. The Defendants Have Violated the Court's Orders for an Accounting and Have Failed to Provide Evidence that Fujinaga Is Not Violating the Asset Freeze

---

[2] The SEC is considering whether to ask the Court to appoint a receiver to run those businesses owned by the defendants that still operate and to exercise control over personal accounts with funds derived from investors or owed investors.  However, receivers must be paid, so it is necessary to obtain a reasonable estimate of what value the assets have in order to determine if they are sufficient to warrant paying a receiver.  This process has been severely hampered by the lack of an accounting.

[3] In an effort to avoid filing this application, the SEC suggested that Fujinaga be made available this week for a telephone deposition limited to the whereabouts of his personal assets and the source of funds for personal expenditures, either through himself, his wife, or others.  The proposal was first made on January 23.  As of this filing, there has been no answer from the defendant.

A court's power of contempt is an "inherent" power that is "necessary to the exercise of all others." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994), quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812).  An order of civil contempt is specifically authorized by 18 U.S.C. § 401(3), which provides: "A court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, . . . contempt of its authority . . . ." *See United States v. Powers*, 629 F.2d 619, 624 (9th Cir. 1980) ("Section 401 applies to both criminal and civil contempt . . . .").

Thus, "[a] district court has the power to adjudge in civil contempt any person who … disobeys a specific and definite order of the court." *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984) (*citing Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983)).  *Accord In re Wallace*, 490 B.R. 898, 906 (9th Cir. BAP 2013).  The moving party must prove that the respondent violated a prior court order.  *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002); *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

A violation occurs when "[a] person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to insure compliance with the court's order." *Shuffler*, 720 F.2d at 1146-47 (internal quotation omitted).  Because the purpose of civil contempt is remedial, intent in failing to comply with the order is irrelevant. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) (noting that civil contempt serves a remedial purpose and that "it matters not with what intent the defendant did the prohibited act."); *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003).  "Intent is not an issue in civil contempt proceedings.  The sole issue is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (internal quotation omitted).  The SEC has met its burden to show that defendants Fujinaga and MRI, and relief defendant CSA, violated specific and definite

orders of the court. *Bennett*, 298 F.3d at 1069. It has demonstrated "that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (citation omitted).

Here, the Court's Orders are without question specific and definite. Defendants had actual notice of terms of the asset freeze on or around Sept. 12, 2013 and of the accounting requirement as of October 7, 2013. Someone has been paying Fujinaga's expenses since that time, and he has refused each request from the SEC to identify the source of funding those expenses, making quite sensible the SEC's suspicion that the funds are ultimately derived from Fujinaga's fraudulent activities and strongly suggesting a continuing violation of the asset freeze through a chain of checking and credit accounts using the name of Mrs. Fujinaga or others. An accounting unambiguously was due on or before October 15, 2013, but four months later, there are only excuses for failing to abide by the Court's order along with a threat that no accounting will be forthcoming unless accountants are paid for having delayed production for four months.

Moreover, Fujinaga has secreted most of his assets, as proven by the fact that for four months there has been no production of documents showing the whereabouts of 85 percent of his income in 2012. No tax return has been produced for 2013 income, but there is no reason to believe that, at least until the instant action was filed, Fujinaga reduced his income or expenditures if he was able to maintain both. However, there are no records of the location of such funds for 2013 or 2014. It is outright contempt for the defendants to hide their assets, as they have clearly done, for the purposes of avoiding an asset freeze ordered by this Court.

### II.     Coercive Sanctions Should Be Conditionally Ordered

The Court in its discretion may impose relief in the form of sanctions for defendants' contemptuous conduct. Sanctions for Fujinaga's civil contempt may be imposed to compel or

9

coerce his obedience to this court's orders. *Shuffler*, 720 F.2d at 1147; *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).

The appropriate sanction to compel obedience could be either a daily fine -- for example, $1,000 per day -- or incarceration, either of which would terminate when Fujinaga fully complies with the Court's orders. *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (imposing $500 daily fine after 10-day grace period); *United States v. Bright*, 596 F.3d 683, 690 (9th Cir. 2010) (imposing $500 daily fine); *Atlas Corp. v. DeVilliers*, 447 F.2d 799, 802 (10th Cir. 1971) (ordering commitment to jail until fine paid).  The Court should order that, beginning three days after entry of the contempt judgment and for each day that he does not cure his contempt, Fujinaga must pay a $1,000 fine, to be deposited with the Court in a fund for compensation of defrauded investors.  If, after 10 days, the Court should order that Fujinaga be incarcerated until he files the accounting consistent with this Court's October 7, 2013 Order and until either Fujinaga or others provide the SEC with evidence establishing the location of all funds under Fujinaga's control and that Fujinaga's living expenses are not being paid, directly or indirectly, out of assets of the defendants.

### III. Fujinaga Should Surrender His Passport

Fujinaga's refusal to provide an accounting or complete records of the receipt and disposition of 85 percent of his 2012 income strongly suggest a contumacious refusal to respect or abide by the orders of this Court and a lack of respectful participation in the civil law enforcement case brought by the Commission.  Such behavior counsels that it is highly likely Fujinaga will be tempted to use his hidden resources to leave the country and the reach of this Court and the SEC.  In order to prevent such flight, the Court should order Fujinaga to surrender his passport to the Court one day after entry of an order providing for such relief.

## **CONCLUSION**

  For the reasons stated herein, the SEC respectfully requests that an OSC in the form filed herewith be entered.

Date: January 27, 2014            Respectfully submitted,

                       /s/James A. Kidney

                       JAMES A. KIDNEY
                       DANETTE EDWARDS
                       THOMAS SWIERS
                       100 F St., NE
                       Washington, D.C. 20549-5949
                       (202) 551-4441 (Kidney)
                       (202) 772-9282 (Fax)
                       kidneyj@sec.gov

                       Attorneys for the Securities and
                       Exchange Commission