DANIEL L. HITZKE, ESQ. (pro hac vice)
Cal. State Bar No. 220872
HITZKE & ASSOCIATES
100 Oceangate, Suite 1100
Long Beach, CA 90802
*Telephone No.: (562) 437-2807*
*Facsimile No.: (562) 595-9983*

ERICK M. FERRAN, ESQ.
Nevada State Bar No. 9554
HITZKE & ASSOCIATES
3753 Howard Hughes Parkway, Ste. 200
Las Vegas, NV 89169
*Telephone No.: (702) 784-7660*
*Facsimile No.: (702) 784-7649*
*ferranlawoffice@gmail.com*

*Attorneys for Defendants and Relief Defendant*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | CASE NO.:  2-13-cv-1658-JCM-CWH |
| Plaintiff, | |
| v. | **DECLARATION OF COUNSEL** |
| EDWIN YOSHIHIRO FUJINAGA et al. | |
| Defendants | |

## DECLARATION OF ERICK M. FERRAN, ESQ.

I, ERICK M. FERRAN, ESQ., declare as follows:

1.    I am an attorney at the law firm of Hitzke & Associates, counsel of record for Defendants Edwin Fujinaga, MRI International, and Relief-Defendant CSA Service Center, LLC. The following facts are based on my personal knowledge and belief and if called as a witness I could, and would, competently testify thereto, under the penalty of perjury.  This Declaration is

1    made in Response to Plaintiff Securities and Exchange Commission's Motion For An Order To

2    Show Cause, and is further made in support of Defendants' request that such Order not be issued

3    by the Court.

4
          2.    As set forth below, Defendants and Relief-Defendants have attempted at every step

5
     to comply with this Court's Orders, as well as with the free and open exchange of information of

6
     every kind with the Plaintiff.  To that end, this Declaration will summarize and provide examples

7
     of the communications that have transpired between the Plaintiff and the Defendants/Relief-

8
     Defendant, as well as the massive amounts of information compiled and transmitted to the

9
     Plaintiff.   Such transmissions have specifically included invitations to the Commission to

10
     personally come to Defendants to download data and/or inspect further, at their discretion.

11

12
          3.    This action was filed under seal by the Plaintiff on or about September 11, 2013,

13
     and was served upon Defendants/Relief-Defendant on September 19, 2013.  Service at that time

14
     included a copy of the Ex Parte Temporary Restraining Order and Asset Freeze (Doc. 10) issued

15
     by the Court on or about September 12, 2013.

16

17
          4.    Following service of the Complaint and the Temporary Restraining Order, the

18
     undersigned, as well as co-counsel Daniel Hitzke, Esq., immediately reached out to the Plaintiff to

19
     discuss the matter and to work out a resolution pending discovery and further proceedings in this

20
     matter.  The result of these efforts included the Stipulated, Consented, Preliminary Injunction And

21
     Asset Freezes (Doc. 20), which was the result of several communications, conference calls, and an

22
     in-person meeting held between the undersigned and counsel for the Plaintiff.

23

24
          5.    While Plaintiff continued its investigation into the allegations raised in its

25
     Complaint in this matter, the undersigned believed that a positive working relationship existed

26
     with the Plaintiff for the continued preservation of the business and the assets of the

27
     Defendants/Relief-Defendants.  To this end, the parties arranged for two modifications to the

28

injunction in place. These stipulations, entered on or about October 15, 2013 (Doc. 22), and November 21, 2013 (Doc. 26), respectively, allowed for the unfreezing of certain bank accounts and the continued operation of the Harmon Medical Clinic.

6.   Attached as **Exhibit 1** hereto is a true and correct copy of an e-mail correspondence chain between the undersigned and Plaintiff's counsel regarding bank accounts and the modification to the Stipulated Preliminary Injunction. In this e-mail, as of November 18, 2013, Defendants and Relief/Defendant offer, pursuant to the Stipulated Injunction, to immediately execute releases for the release of all financial information to the Plaintiff. As of the time of this filing, said releases have never been provided, despite an open invitation for the release of this information.

7.   In addition, and prior to the modification of the original injunction, the undersigned's office remained in constant communication with Plaintiff's counsel and worked to produce documents pursuant to the Plaintiff's request. Attached as **Exhibit 2** is a copy of correspondence to Richard Simpson, Esq., one of Plaintiff's counsel, advising of the production of several thousands of pages of documentation as part of a rolling production of documents. This production included substantiation and documents relative to pharmaceutical claims purchased for one of the related entities, Hoys—and cut directly to the Plaintiff's claim that Defendants purchased no medical receivables, as stated in their Complaint. Despite this substantial production, and the substantial relevance with respect to the Plaintiff's claims, in a later correspondence lead counsel for the Plaintiff, James Kidney, called these documents largely irrelevant.

8.   Attached as **Exhibit 3** is a true and correct copy of an e-mail to Plaintiff's counsel confirming mailing and production of the claims documentation—which was requested by the Plaintiff's.

9.      Attached as **Exhibit 4** is a true and correct copy of an e-mail transmitting to Plaintiff's counsel documents relative to the Investor List and Investor Payments made by Defendants, which was requested by Plaintiff, compiled, and transmited pursuant to the terms of the Stipuled Injunction.  This e-mail was sent on October 17, 2013, and when no response was received, a follow-up e-mail was transmitted on October 28, 2013, and a true and correct copy is attached hereto as **Exhibit 5**.  Defendants specifically advised that there were substantial documents and data for production, but wanted to be able to confirm receipt and ability to review on the part of the Plaintiff.

10.      On December 3, 2013, the undersigned's office received correspondence from James Kidney, Esq., introducing himself as the new lead counsel and, for the first time, discussing issues with the perceived lack of production of records, the lack of the production of an investor list (which had already been produced), issues with a final accounting, and the Defendants' filing of an answer.  A true and correct copy of the correspondence is attached hereto as **Exhibit 6**.

11.      On December 4, 2013, the undersigned's office immediately respondend in reference to the production of records, the accounting, and the investor list, and noted that prior to this correspondence it had been unaware of any issues with the investor list transmitted in October, 2013.  **Exhibit 7**.

12.      In response to the updated investor list request by the Plaintiff as well as with respect to the accounting of assets and financials for all of the entities, the undersigned's office immediately began working to compile this information as well as the additional information requested by the Plaintiffs.

13.      Following the correspondence received from Mr. Kidney, Defendants continued to produce, and continue to produce, massive amounts of data per the request of the Plaintiff on an ongoing basis.  Moreover, despite numerous technical difficulties on the part of Plaintiff (i.e., lost

or misplaced disks and flash drives), Defendants and the undersigned have been responsive to every communication, every request, and have continued to produce documentation and have coordinated with Plaintiff's counsel in its discovery efforts.

14.    Attached as **Exhibit 8** is correspondence regarding all of the investment certificates, as requested by the Plaintiff, in addition to Investment Contracts and lists of payments. These documents were transmitted via "DropBox," and then via hard copy because Plaintiff had apparent limitations on the receipt of data transmitted electronically.

15.    Attached as **Exhibit 9** is a true and correct copy of an e-mail chain dated December 23, 2013, wherein Plaintiff's continued to provide financials for the Factoring Company (as requested by Plaintiffs), as well as information regarding expenses and payments made to a Japanese Consultant and for the Japanese MRI Office.

16.    Attached as **Exhibit 10** is a true and correct copy of an e-mail chain between Plaintiff's counsel and the undersigned regarding production of substantial data pursuant to the requests of the Plaintiff, including a FedEx confirmation number.

17.    Attached as **Exhibit 11** is true and correct copy of an e-mail chain between Plaintiff's counsel and the undersigned regarding production of banking records, and regarding the Plaintiff's inability to locate the materials transmitted to the Defendant.  It was later discovered that this information had been lost or misplaced in Plaintiff's mail room.

18.    On January 3, 2014, Defendants continued to transmit additional financial information to the Plaintiffs.  Attached as **Exhibit 12** is a true and correct copy of an e-mail chain between the undersigned and Plaintiff's counsel regarding additional tax returns transmitted, which were not on the flash drive previously produced.  Additionally, on January 3, 2014 Defendants provided a personal ledger for Defendant Edwin Fujinaga from 2008-2013.  **Exhibit 13.**

19.     On January 6, 2014, Defendants transmitted e-mail to the Plaintiff providing the personal bank statements for Defendant Edwin Fujinaga from 12/08 to 09/12.  The undersigned advised that it was awaiting additional statements and would produce the same upon receipt. **Exhibit 14**.

20.     On January 8, 2014, Defendants transmitted e-mail to the Plaintiff providing the additional bank statements promised, as well as discussing the production of additional promotional and/or advertising materials requested by the Plaintiffs.  **Exhibit 15**.

21.     In the e-mail dated January 8, 2014, Defendants further requested assistance from the Plaintiff regarding payment of employees, release of funds for ongoing purchase of claims, and payment of expenses, and noted that roughly 1.5 million in total funds had been frozen.

22.     To that end, a conference call was held on or about January 10, 2014, between the undersigned, Mr. Kidney, Daniel Hitzke, and Richard Simpson.  During this conference call the continued production of documents was discussed, as well as the final accounting for Mr. Fujinaga and the entities.  At that time, Defendants requested assistance in the form of release of funds to the accountants for completion of a verified final accounting.  Moreover, Defendants further suggested that a vacant property be listed for sale, and that an offer above the current appraisal of the property had been pending.  At that point, Mr. Kidney and Mr. Simpson advised that the undersigned's office should forward over the accountants bills, as well as the property information.

23.     Moreover, during this January 10, 2014 conference call, the undersigned specifically invited Plaintiff and/or its IT personnel to come to Defendants location and collect any data it felt was appropriate, including financial data, data on the server, and any information relative to communications it was seeking (other than privileged material).  This offer was further refused.

24. On January 21, 2014, Defendants continued to provide accounting information and financial data to the Plaintiff, including financials for the entities as available. These included financial information for the entities: CSA Service Center, Claims Servicing of America, EBJ & F. Factoring Company, Harmon Primary Care, HMC Service Center, Hoys, MH Pharma, MHPP, and Haldun. In addition, numerous ledgers for Hoys and Haldun—pharmacies in which the Defendants have a financial and ownership interest in—were produced. **Exhibit 16**.

25. Also on January 21, 2014, Defendants transmitted information to Plaintiffs regarding 2865 Coleman, a vacant property which has a pending offer higher than the appraised value. This was the property discussed on the January 10, 2014 conference call. Defendants provided an appraisal and recent sales comparables as well. Moreover, the undersigned's office had also contacted counsel in the related class-action litigation (Takiguchi v. MRI) regarding an agreement for the sale of the property and deposit of funds with the Court and/or another protected account. No response was ever received from the Plaintiff and/or its counsel. **Exhibit 17**.

26. Moreover, and per the prior communication on the accounting, Defendants further transmitted to Plaintiff's counsel the outstanding invoices for the accountants so that final, verified financials and the accounting could be produced. **Exhibit 18**. No response was received with respect to this request, other than Plaintiff's counsel stating that such a request would be considered only after the final accounting and financials had been provided. As previously disclosed to the Plaintiff's counsel, however, the accounting firm of Gilmore & Gilmore will not provide additional work and will not undertake to finalize all of the financials in a manner which will be acceptable to the Plaintiff until their invoices have been paid.

27. Attached as **Exhibit 19** is an e-mail communication regarding all of the Wire Reports (payments to investors), as well as the communications between the United States MRI office and the Japan Office, which was requested by the Plaintiff's counsel. The Wire Reports for

2008-2013, as well as the communications, have also been produced by Defendants as part of the continued requests.

28.     Attached as **Exhibit 20** are two additional e-mails containing even more bank statements for CSA Service Center, from 2009-2013.  Again, in the spirit of open exchange of discovery, Defendants again offered to execute any release for information prepared by the Plaintiffs.

29.     Despite the production of both personal banking records and records for all of the entities requested by Plaintiff (and more), counsel for Plaintiff continued to accuse Defendant of not producing any records.  This is simply not the case, as is evident from the constant communication and ongoing production, and from the summary of records outlined below. Moreover, for the first time—and not found anywhere in the stipulated injunction—Plaintiff's requested the production of records not within the control of these Defendants, and records regarding every expenditure over the sum of $50.00.  In response, Defendants transmitted correspondence responsive to this new request on January 22, 2014.  **Exhibit 21**.

30.     Despite the Plaintiff's continued statements that no documents have been produced in this matter, Defendant continued to provide and produce additional records.  On January 22, 2014, additional banking records were produced for Claims Servicing of America.  **Exhibit 22**.

31.     During this time, the undersigned also learned that despite having produced on an ongoing basis substantial banking records, and despite having offered the Plaintiff's a fully executed release for the same, Plaintiff's counsel issued several subpoenas to banking institutions without even noticing the Defendants.  This was deemed an "oversight" by Plaintiff's counsel. Notwithstanding this "oversight," these subpoenas and the expenses thereof could have been obviated, as the offer to execute full releases was made on at least five (5) ocassions.

32.    Additionally, and per the request of Plaintiff, tax returns were produced for Edwin Fujinaga from 2008-2013 and for the Factoring Company. **Exhibit 23**.

33.    Enclosed for the Court's review as **Exhibit 24** is a series of e-mails discussing production of additional documents, consisting of the promotional materials and magazines requested by the Plaintiff, as well as copies of the communications between MRI's United States Office and its Japanese Office.

34.    In response to the continued production of relevant financial documents and other materials (which have been requested by the Plaintiff itself), Plaintiff responded that the Defendants were only "papering the file."  Defendants in turn responded, and reiterated that they would continue to produce the documentation that had been requested by the Plaintiff, and inquired as to whether the Plaintiff did not want production of financial documents. **Exhibit 25**.

35.    Attached as **Exhibit 26** is an e-mail chain discussing the deposition of Mr. Fujinaga, which the parties had agreed to set for the week of the 24th of February, 2014. Additionally, in this e-mail chain the parties discuss a potential limited deposition of Mr. Fujinaga, and, moreover, the Plaintiff's counsel reiterate that they will not pay for any accounting until one is produced.

36.    Attached as **Exhibit 27** is an additional e-mail containing the production of banking records from the other entities, including through 2013, for HMC Service Center, Harmon Primary, Med Health Pharma, and MHPP.

37.    Attached as **Exhibit 28** is confirmation that the additional Wire Reports (2008 Investor Payments) had been completed, and were ready for transmission to the Plaintiff's counsel. These documents were transmitted shortly thereafter via UPS and received by the Plaintiff's counsel.

38.     Attached as **Exhibit 29** is a true and correct copy of a transmission to Plaintiff's counsel dated February 3, 2014, containing a breakdown of the monthly bills and expenses at the Fujinaga household.  Plaintiff's counsel had been previously advised that at present June Fujinaga was covering the limited expenses on a monthly basis for the household from her personal funds.

39.     Attached as **Exhibit 30** is a true and correct copy of an e-mail transmission dated February 7, 2014 containing additional records, per the Plaintiff's request, regarding the Factoring Company Account.

40.     Attached as **Exhibit 31** is a true and correct copy of an e-mail transmission dated February 12, 2014, containing additional records for CSA Service Center and Med Health Medical Supply.

41.     Defendants continue to provide records as this case progresses.   Attached as **Exhibit 32** is an e-mail transmission dated February 12, 2014, wherein additional records for the Factoring Company are provided, per the request of the Plaintiff.

42.     As of the time of the instant filing, Defendants have produced substantial financial and other materials to the Plaintiff, and it appears that no matter what Defendants produce, it will be insufficient for the Plaintiffs.  For that reason, Defendants have continuously offered an open invitation for the execution of any releases for information, and have even allowed Plaintiff come for a site inspection and/or to download data from Defendants' server.  Moreover, Defendants have cooperated in the setting of Edwin Fujinaga's deposition, per the request of the Plaintiff.

43.     Despite the continued production of documents, the participation in this and the other related lawsuit, and the fact that the original investigation into Defendants commenced over one full year prior to the date of this filing, Plaintiffs somehow try to imply that Defendant is absconding or prepared to abscond the jurisdiction.  The substantial production of information, the length of time that has passed, and the open invitation to the Plaintiff for continued information

belie this contention.  Defendants have requested assistance from the SEC, have been continually responsive, and continue to provide information—these are not the actions of an individual that is prepared to flee the jurisdiction.  The Plaintiff's claims in this respect are simply meant to further harass and embarrass the Defendant, who has participated in discovery in good-faith and will continue to do so.

44.    To this end, while the Plaintiff claims that no accounting or financial records have been provided, this is simply untrue.  Not only have banking records been provided, but financial records for the entities and for Defendant Fujinaga individually as well, including:

a.   Accounts Receivables Purchase Agreements

b.   Bank Statements for the entities, including CSA Service Center, Claims Servicing, HMC Service Center, MH Pharma, Med Health Medical  Supply, and MHPP

c.   Documents Regarding the Real Estate Holdings of the Defendants

d.   All Investor Payments, Certificates, Contracts, Wire Reports, and All Pertinent Information Regarding The Investors

e.   All Promotional Materials per the Plaintiff's request

f.   Communications per the Plaintiff's request.

g.   Documents regarding the corporate formation of the entities

h.   Tax Returns for the entities  and for Edwin Fujinaga

i.   List of household expenses

j.   Financials for the entities

k.   Personal Bank Statements for Edwin Fujinaga, and a personal ledger for his accounts

l.   Each and every lock box bank statement

m. Bank Statements for MRI, MRI A/R (Accounts Receivable), and all of the documents received from Sterling Escrow

n. Full and updated Investor Lists

o. Factoring Company Financials, Banking Records, and Statements

p. Bank Statements for the Select A and Class A Accounts for the entities.

45.   It is simply disingenous for Plaintiff to claim that Defendant has produced no relevant records, either financial or otherwise, in light of the continuing efforts set forth above. Defendants have requested assistance for the preparation of the final accounting, which places a substantial burden upon Defendant Fujinaga as it is "under the penalty of perjury."  Given Plaintiff's inability to admit that any of the records produced are relevant (despite the fact that the records produced are utilized by Plaintiff in its own motion), it appears that if Defendant Fujinaga executes an accounting under this penalty of perjury, and misstates a value or unintentionally omits an item, the Plaintiff will undoubtedly seek to immediately continue to accuse Defendants of fraud, and/or worse, will seek to impute some kind of further action against him.  There are simply too many assets, too many valuations, and too many intricacies to expect Defendant Fujinaga to be able to complete this information on his own.  A "rough" accounting will undoubtedly lead to additional criticism and insults from the Plaintiff.

46.   Given the amount of assets, including real estate and other property, Defendant would request that this Court order that the accountants be paid so that they may assist in compiling the values and accounting which Plaintiff seeks, to the extent this information has not already been provided to the Plaintiff.   Simply put, the Plaintiff is in posession of these funds, and has ignored Defendants requests—including for the sale (above market value) of an unencumbered property.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

47.      Ultimately, Defendants would ask that the Court review the information provided to the Plaintiff, which is substantial and detailed in nature.  This information can be produced in-camera to the Court for its own inspection, and the undersigned is confident that the Court will acknowledge that Defendants are producing all of the requested records, financial and otherwise, being sought by the Plaintiff.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 14, 2014.

ERICK M. FERRAN, ESQ.