1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff(s),

      v.

EDWIN YOSHIHIRO FUNINAGA and MRI
INTERNATIONAL, INC., et al.,

Defendant(s).

Case No. 2:13-CV-1658 JCM (CWH)

ORDER

Presently before the court is a motion to dismiss filed by defendants MRI International, Inc. ("MRI") and Edwin Fujinaga ("Fujinaga") (collectively "defendants"), and relief defendants CSA Service Center, LLC ("CSA") and the Factoring Company ("FC"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. # 134).  Plaintiff Securities and Exchange Commission (hereinafter "plaintiff") filed a response, (doc. # 138), and defendants filed a reply, (doc. # 147). Plaintiff also filed a notice of supplemental authority.  (Doc. # 149).

Also before the court are two motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by relief defendants June Fujinaga and the Yunju Trust. (Docs. # 140, 141).  Plaintiff filed a response to the motions, (doc. # 144), and the relief defendants filed a reply, (doc. # 150).

Also before the court is defendants' motion for partial summary judgment.  (Doc. # 122). Plaintiff filed a response, (doc. # 137), and defendants filed a reply, (doc. # 146).

Also before the court is plaintiff's motion for summary judgment.   (Doc. # 113). Defendants filed a response, (doc. # 136), to which plaintiff filed a reply, (doc. # 139).

**James C. Mahan**
**U.S. District Judge**

I.    **Background**

On September 11, 2013, the Securities and Exchange Commission ("SEC") filed a civil enforcement complaint against defendants.  (Doc. # 3).  On September 12, 2013, the court entered an order that Fujinaga and MRI show cause as to why a preliminary injunction should not issue.  (Doc. # 11).  On October 7, 2013, the parties stipulated to the entry of a preliminary injunction.  (Doc. # 20).

On December 11, 2013, defendants Fujinaga, MRI, and CSA filed an answer to plaintiff's complaint.  (Doc. # 27).  The parties completed discovery by July 8, 2014.  (Doc. # 138).  On July 16, 2014, plaintiff filed a motion for summary judgment.  (Doc. # 113).  On July 24, 2014, after having been granted leave by the court, plaintiff filed an amended complaint. (Doc. # 118).

Plaintiff alleges that Fujinaga, through his company, MRI, perpetrated an elaborate Ponzi scheme robbing investors of their life savings.  Plaintiff alleges that defendants told investors that MRI was using their investments to buy medical accounts receivable ("MARS") from medical providers at a discount to recover their full value from insurance companies.

Plaintiff claims that in reality, defendants were using the investments to pay back earlier investors.  In an April 2013 statement to the Japanese Financial Services Agency, Fujinaga admitted that "from 3, 4, 5 years ago, we started to appropriate investments from our investors to pay the principal and interest of other investors."  (Doc. # 113).  Plaintiff also asserts that Fujinaga used investors' money for his own personal expenses, including to buy property and luxury cars.  By May 2013, investors' funds had been depleted entirely.

Plaintiff alleges that from 1998 to 2013, defendants operated from Las Vegas, Nevada with a sales office in Tokyo, Japan.  According to plaintiff, investors wired money or sent checks to defendants' Wells Fargo bank accounts in Las Vegas.

The relief defendants purportedly received and used investors' funds, also to buy and hold real property.  June Fujinaga is defendant Edwin Fujinaga's wife.  She allegedly used investor funds to purchase condominium units in the MGM Grand residential tower, later transferring ownership of these units to relief defendant "the Yunju Trust."  (Doc. # 118).

**James C. Mahan**
**U.S. District Judge**

- 2 -

1    Relief defendant CSA is purportedly an alter-ego of Fujinaga.  (Doc. # 113).  FC is also

2    wholly owned by Fujinaga.   MRI allegedly paid FC millions of dollars of "marketing fees."

3    (Doc. # 113).

4    According to plaintiff, defendants solicited Japanese investors to purchase Class A and

5    Select A securities.  (Doc. # 113).  Plaintiff contends that defendants' offering book advertised

6    these investments with statements such as the following:

7    "[I]nvesting with MRI provides superb profitability and, above all, unwavering stability."

8    "Funds are used for purchasing medical account [sic] receivable only."

9    "[Y]our precious investments are protected in the event of unforeseen
10   circumstances."

11   "The role of state governments . . . [p]rovides guarantees through deposit system [sic]."

12   "Investors' money is . . . kept . . . in special lock box accounts managed by an
     escrow agent . . . protected by state laws so that they cannot be touched by anyone
13   else, even if the bank goes bankrupt."

14   Defendants also allegedly delivered a Japanese disclosure document to defendants stating

15   that "[t]he funds from investors will be deposited in an account in trust under prudent fund

16   management by an escrow agent."  (Doc. # 113).  Finally, defendants supposedly represented in

17   their investor magazine that "[i]n 2009, MRI purchased MARS of approximately 1.3 billion

18   dollars in total," when MRI really purchased only $16.1 million in value.  (Doc. # 113).

19   The president and owner of defendants' purported escrow service, Sterling Escrow,

20   declared that he transferred money at Fujinaga's discretion, and did not provide escrow services

21   to defendants.  (Doc. # 113).  Fujinaga later blamed his failure to pay interest to investors on a

22   "financial audit that is taking place in Sterling Escrow."  (Doc. # 113).

23   Fujinaga has invoked his Fifth Amendment privilege in response to questions about his

24   representations to investors, MRI's safekeeping of investor funds, the money MRI owed to

25   investors, CSA's receipt of money from MRI, Fujinaga's ownership of FC, and FC's

26   performance of marketing services for MRI, among other topics.  (Doc. # 113).

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    Based on the foregoing facts, plaintiff requests an injunction and civil monetary penalties

2    against Fujinaga and MRI, disgorgement of misappropriated funds from all defendants and relief

3    defendants, and other appropriate equitable relief.  (Doc. # 118).

4    Defendants filed the instant motions to dismiss and motion for summary judgment in

5    response to the parties' discovery and plaintiff's amended complaint.  Plaintiff filed a motion for

6    summary judgment on liability.

7    **II.    Legal Standard**

8    *A.   12(b)(1) lack of subject matter jurisdiction*

9    A court may dismiss a plaintiff's complaint for lack of subject-matter jurisdiction.  Fed.

10   R. Civ. P. 12(b)(1).  Federal Rule of Civil Procedure 12(b)(1) permits a party to assert this

11   defense by motion.  *Id.*  When presented as a factual challenge, a rule 12(b)(1) motion can be

12   supported by affidavits or other evidence outside of the pleadings.  *United States v. LSL*

13   *Biotechs.*, 379 F.3d 672, 700 n.14 (9th Cir. 2004) (citing *St. Clair v. City of Chicago*, 880 F.2d

14   199, 201 (9th Cir. 1989)).

15   "A plaintiff suing in federal court must show in his pleading, affirmatively and distinctly,

16   the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court,

17   on having the defect called to its attention or on discovering the same, must dismiss the case."

18   *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

19   *B.   12(b)(6) failure to state a claim*

20   A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

21   can be granted."  Fed. R. Civ. P. 12(b)(6).  A properly pled complaint must provide "[a] short

22   and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

23   8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While Rule 8 does not

24   require detailed factual allegations, it demands "more than labels and conclusions" or a

25   "formulaic recitation of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

26   (2009) (citation omitted).

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

- 4 -

1   "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550

2   U.S. at 555.  Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

3   matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation

4   omitted).

5   In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply

6   when considering motions to dismiss.  First, the court must accept as true all well-pled factual

7   allegations in the complaint; however, legal conclusions are not entitled to the assumption of

8   truth.  *Id.* at 678-79.  Mere recitals of the elements of a cause of action, supported only by

9   conclusory statements, do not suffice.  *Id.*

10   Second, the court must consider whether the factual allegations in the complaint allege a

11   plausible claim for relief.  *Id.* at 679.  A claim is facially plausible when the plaintiff's complaint

12   alleges facts that allow the court to draw a reasonable inference that the defendant is liable for

13   the alleged misconduct.  *Id.* at 678.

14   Where the complaint does not permit the court to infer more than the mere possibility of

15   misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to

16   relief."  *Id.* at 679 (internal quotations omitted).  When the allegations in a complaint have not

17   crossed the line from conceivable to plausible, plaintiff's claim must be dismissed.  *Twombly*,

18   550 U.S. at 570.

19   The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d

20   1202, 1216 (9th Cir. 2011).  The *Starr* court stated,

21

22   First, to be entitled to the presumption of truth, allegations in a complaint or
   counterclaim may not simply recite the elements of a cause of action, but must

23   contain sufficient allegations of underlying facts to give fair notice and to enable
   the opposing party to defend itself effectively.  Second, the factual allegations that

24   are taken as true must plausibly suggest an entitlement to relief, such that it is not
   unfair to require the opposing party to be subjected to the expense of discovery

25   and continued litigation.

26   *Id.*

27   Allegations of fraud are subject to a heightened pleading standard.  *See* Fed. R. Civ. P.

28   9(b) ("[A] party must state with particularity the circumstances constituting fraud . . . .").  Rule
   9(b) operates "to give defendants notice of the particular misconduct which is alleged," requiring

**James C. Mahan**
**U.S. District Judge**

plaintiffs to identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citations omitted).

### C.   Summary judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323-24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the non-moving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

James C. Mahan
U.S. District Judge

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

### D. Antifraud provisions

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device" in violation of SEC rules. 15 U.S.C. § 78j(b). SEC Rule 10b-5 states, in relevant part,

> It shall be unlawful for any person . . . (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5(a)-(c).

Rule 10b-5 requires (1) a material misrepresentation, (2) in connection with the purchase or sale of a security, (3) with scienter, (4) by means of interstate commerce. *SEC v. Todd*, 642 F.3d 1207, 1215 (9th Cir. 2011).

A misrepresentation is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (citation omitted). Misrepresentations about the safety of an investment are material. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 930 (9th Cir. 1991).

Scienter is the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). A showing of knowing or reckless

James C. Mahan
U.S. District Judge

- 7 -

1    conduct is sufficient to meet the element of scienter.  *Vernazza v. SEC*, 327 F.3d 851, 860 (9th
2    Cir. 2003).

3         Section 17(a) of the Securities Act of 1933 makes it unlawful "for any person in the offer
4    or sale of any securities . . ."

6    (1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or
     property by means of any untrue statement of a material fact or any omission to
7    state a material fact necessary in order to make the statements made . . . not
     misleading; or (3) to engage in any transaction, practice, or course of business
8    which operates or would operate as a fraud or deceit upon the purchaser.

9    15 U.S.C. § 77q(a)(1)-(3).

10        Like Rule 10b-5, section 17(a) requires (1) a material misrepresentation, (2) in
11   connection with the purchase or sale of a security, (3) by means of interstate commerce.  *SEC v.*
12   *Dain Rauscher, Inc.*, 254 F.3d 852, 855-56 (9th Cir. 2001).  While section 17(a)(1) requires
13   scienter, sections 17(a)(2) and 17(a)(3) do not.  *See Aaron v. SEC*, 446 U.S. 680, 697 (1980).

14   **III.    Discussion**

15        *A.  12(b)(1) lack of subject matter jurisdiction*

16        Relief defendants June Fujinaga and the Yunju Trust ("relief defendants") claim that the
17   court lacks subject matter jurisdiction over plaintiff's claims against them because the alleged
18   conduct falls outside the 5-year statute of limitations imposed by title 28 U.S.C. section 2462.
19   (Doc. # 140-1).  The relief defendants state that plaintiff is consequently time-barred from
20   seeking disgorgement relief on these claims.  (Doc. # 140-1).

21        Plaintiff responds that its claims are not outside of the limitations period because the
22   amended complaint alleges an ongoing fraudulent scheme perpetrated up until 2013.  (Doc. #
23   144).  Plaintiff further argues that even if the conduct at issue occurred more than five years
24   before the complaint was filed, section 2462 does not apply to the disgorgement claims because
25   they are claims for equitable relief.  (Doc. # 144).

26        The court agrees with plaintiff that the 5-year statute of limitations in section 2462 is
27   inapplicable.  Actions for disgorgement of profits are equitable in nature.  *SEC v. Rind*, 991 F.2d
28   1486, 1493 (9th Cir. 1993) (*citing Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494

**James C. Mahan**
**U.S. District Judge**

- 8 -

U.S. 558, 570 (1990)).  Accordingly, the statute of limitations in section 2462 does not apply. *See id.* (holding that no statute of limitations applies to disgorgement claims in SEC civil enforcement actions).

The relief defendants cite *Gabelli v. SEC*, 133 S.Ct. 1216 (2013), in support of their contention that section 2462 applies in the instant case.  However, *Gabelli* involved an SEC civil enforcement proceeding for penalties, not disgorgement.  *Id.* at 1217 (stating that section 2462 provides a general statute of limitations for penalty provisions).

Further, *Gabelli* ultimately dealt with the meaning of "when the claim first accrued," not the applicability of section 2462.  *See id.* at 1224 (holding that section 2462's statute of limitations begins to run at the time the conduct occurs, not at the time of discovery).

Notably, other jurisdictions have held that section 2462 applies to all forms of relief sought by the SEC, including disgorgement.  *See SEC v. Graham*, No. 2014 U.S. Dist. LEXIS 64953, at *24-26 (S.D. Fla. May 12, 2014).   However, *Rind* remains controlling in this jurisdiction and indicates that section 2462 is inapplicable to disgorgement claims.  991 F.2d at 1493.

Nevertheless, at this stage of the proceedings, plaintiff's complaint sufficiently alleges conduct within the statutory period.  Thus, even if section 2462 applied, dismissal on these grounds would be improper.  *Compare Gabelli*, 133 S.Ct. at 1217 (reversing and remanding for dismissal under section 2462 where complaint filed in 2008 alleged misconduct ending in 2002).

For these reasons, the relief defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

B.  *12(b)(6) failure to state a claim*

Defendants MRI and Fujinaga and relief defendants CSA and FC argue that the instant action should be dismissed because the transactions at issue were not domestic.  (Doc. # 134). Defendants cite the "transactional test" from *Morrison v. National Australia Bank Limited*, 561 U.S. 247 (2010), in support of this contention.

. . .

James C. Mahan
U.S. District Judge

- 9 -

1    Plaintiff responds by citing the Dodd-Frank Wall Street Reform and Consumer Protection

2 Act of 2010 ("Dodd-Frank" or "the Act"), which it contends overruled *Morrison*. (Doc. # 138).

3 The Act's subsection on extraterritorial jurisdiction states that the district courts have jurisdiction

4 over SEC actions involving, "(1) conduct within the United States that constitutes significant

5 steps in furtherance of the violation, even if the securities transaction occurs outside the United

6 States and involves only foreign investors; or (2) conduct occurring outside the United States that

7 has a foreseeable substantial effect within the United States." 15 U.S.C. § 78aa(b)(1)-(2).

8    Defendants contend that Dodd-Frank did not change the applicability of *Morrison*. (Doc.

9 # 147).  In particular, defendants argue that the above subsection is "procedural in nature, and

10 not substantive," and that it only addresses the courts' jurisdiction.  (Doc. # 147).  Further,

11 defendants claim that Dodd-Frank could not have overruled *Morrison* or broadened its test

12 without explicit reference to that decision.  (Doc. # 147).

13    Other jurisdictions have noted a lack of clarity regarding the effect of Dodd-Frank on the

14 *Morrison* test.  *See, e.g.*, *SEC v. Chi. Convention Ctr., LLC*, 961 F. Supp. 2d 905, 916-17 (N.D.

15 Ill. 2013) (denying motion to dismiss under *Morrison* while declining to conclusively interpret

16 the effects of Dodd-Frank).

17    As those jurisdictions concluded, the court need not determine the applicability of Dodd-

18 Frank where defendants' motion to dismiss can be denied under the narrower *Morrison* test.

19 Plaintiff's amended complaint alleges sufficient facts that, when taken as true, state a plausible

20 claim for relief under that standard.  (Doc. # 118).

21    *Morrison* held that the antifraud provisions of the securities laws apply only to securities

22 listed on a domestic exchange or "domestic transactions in other securities."  *See Morrison*, 561

23 U.S. at 274.  In *Morrison*, the Court explained that "[w]ith regard to securities *not* registered on

24 domestic exchanges, the exclusive focus [is] on *domestic* purchases and sales . . . ."  *Id.* at 268

25 (emphasis in original).  However, the Court did not delineate the meaning of "domestic

26 purchases and sales."  *See id.*

27    Since *Morrison*, the Second Circuit has held that this test is met when "irrevocable

28 liability is incurred or title passes within the United States . . . when the parties become bound to

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  effectuate the transaction." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67

2  (2d Cir. 2012).

3        Courts in this jurisdiction have applied the Second Circuit's test in similar cases.  *See*

4  *Takiguchi v. MRI Intern., Inc*, No. 2:13-cv-01183-JAD-VCF, 2014 WL 4663851, at *2 (D. Nev.

5  Sept. 18, 2014) (denying motion to dismiss for lack of jurisdiction where contracts and investor

6  funds were sent to and from Nevada).

7        Similarly, the Ninth Circuit, citing *Morrison*, has classified transactions as domestic

8  where defendants received stock purchase agreements and payments in Nevada.  *See SEC v.*

9  *Levine*, 462 F. App'x 717, 719 (9th Cir. 2011) (affirming summary judgment on other grounds).

10        Plaintiff specifically alleges that defendants transmitted application forms, money, and

11  investment certificates to and from Las Vegas offices and bank accounts.  These facts, when

12  taken as true, show that defendants transferred title to the securities at issue in the United States.

13  This suffices to meet the "passing of title" test derived from *Morrison*.

14        Alternatively, plaintiff's complaint also includes sufficient allegations to support a

15  finding that irrevocable liability was incurred in the United States.  Plaintiffs allege that investors

16  wired money to defendants in Las Vegas and that defendants issued investment certificates from

17  the United States.

18        These transactions are the subject of the instant civil enforcement action, and any liability

19  that defendants incurred resulted from these dealings.  As a result, plaintiff's complaint also

20  meets the "irrevocable liability" test above.  Accordingly, the court finds that the transactions at

21  issue are properly subject to domestic securities laws.

22        Based on the foregoing, dismissal of plaintiff's complaint under rule 12(b)(6) is

23  inappropriate.  The court will deny defendants' motion.

24        *C.  12(b)(6) failure to plead with specificity*

25        Relief defendants June Fujinaga and the Yunju Trust ("relief defendants") also filed a

26  motion to dismiss plaintiff's first amended complaint for failure to plead facts with sufficient

27  specificity.  (Doc. # 141).  The relief defendants allege that plaintiff "fails to allege the who,

28

**James C. Mahan**
**U.S. District Judge**

- 11 -

1    what, where, when and how of the alleged transfers of ill-gotten funds" supporting its request for

2    disgorgement relief.  (Doc. # 141).

3        The court rejected similar arguments by relief defendants in another fraud case, finding

4    that parallel allegations were sufficient to survive a motion to dismiss.  *See FTC v. Ivy Capital,*

5    *Inv.*, No. 2:11-cv-00283-JCM-GWF, 2011 WL 2118626, at *4-5 (D. Nev. May 23, 2012).  The

6    same result is appropriate here.

7        Plaintiff's complaint alleges that June Fujinaga received improperly-obtained investor

8    funds from defendants and used those funds for personal purposes, including to buy real estate.

9    (Doc. # 118).   Plaintiff specifically claims that Ms. Fujinaga used the funds to "purchase

10   condominium units in the MGM Grand residential tower," later transferring ownership to the

11   Yunju Trust.  (Doc. # 118).

12       Plaintiff's allegations against the relief defendants are sufficiently specific to preclude

13   dismissal under rule 12(b)(6).   Plaintiff's complaint provides adequate detail regarding the

14   purported fraud at issue, and describes the relief defendants' alleged connection to the fraud to

15   support its claim for disgorgement.

16       Therefore, the court will deny the relief defendants' motion to dismiss for failure to plead

17   with specificity under rule 12(b)(6).

18       *D.  Defendants' motion for partial summary judgment on statute of limitations*

19       Defendants Fujinaga and MRI and relief defendant CSA move the court for partial

20   summary judgment on the grounds that some of the claims and remedies sought by the SEC fall

21   outside the applicable statute of limitations.  (Doc. # 122).  In this motion, defendants restate the

22   arguments made in their motion to dismiss, (doc. # 140), discussed above.

23       In particular, defendants argue that the five-year statute of limitations set forth in 28

24   U.S.C. § 2462 bars plaintiff's claims.   However, plaintiff alleges that defendants continually

25   perpetrated a fraudulent scheme through 2013.  In support of this allegation, plaintiff provides

26   detailed evidence as outlined in its opposition to defendants' motion.  (Doc. # 137).

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1     Notably, section 2462 only applies to some of plaintiff's claims against defendant.  *See*

2  *supra § III.A.*  However, the court finds it unnecessary to address these distinctions.  At the very

3  least, defendants have failed to show the absence of a genuine dispute of material fact regarding

4  whether the alleged fraudulent conduct occurred within the statutory period.  Because disputed

5  factual issues should be construed in favor of plaintiff on defendants' motion, summary

6  judgment on these grounds will be denied.

7          E.  *Plaintiff's motion for summary judgment on liability*

8          Plaintiff moves the court for summary judgment on liability against defendants Fujinaga

9  and MRI.  Plaintiff's memorandum in support of its motion details the evidence supporting its

10  allegations against defendants.  (Doc. # 113-1).  Plaintiff argues that there is no genuine issue of

11  fact regarding defendants' false statements and fraudulent scheme, thus it contends that summary

12  judgment is appropriate.

13          Plaintiff also asks the court to draw an adverse inference from defendant Fujinaga's

14  invocation of the Fifth Amendment.  (Doc. # 113-1).  Courts in this jurisdiction have granted

15  summary judgment for the SEC where a defendant in a civil enforcement proceeding asserts his

16  Fifth Amendment privilege rather than refuting the SEC's evidence.  *See SEC v. Colello*, 139

17  F.3d 674, 677-78 (affirming district court's grant of summary judgment on these grounds).

18          Defendants' response simply reasserts its *Morrison* arguments rejected above, claiming

19  that "material issues of fact exist as to whether or not a domestic transaction exists."  (Doc. #

20  135).  Defendants also state that plaintiff cites inadmissible evidence in support of its motion.

21  (Doc. # 135).

22          Further, defendants argue that the court should not make an adverse inference from

23  Fujinaga's assertion of the Fifth Amendment.  (Doc. # 135).  In their conclusion, defendants

24  contend that the evidence provided is sufficient to create a genuine issue of material fact, making

25  summary judgment inappropriate.  (Doc. # 135).

26          Pursuant to the legal standard above, disputed factual issues should be construed in favor

27  of defendants.  *Lujan*, 497 U.S. at 888.  Because plaintiff would bear the burden of proof at trial,

28  summary judgment is only appropriate if plaintiff produces sufficient evidence to warrant a

**James C. Mahan**
**U.S. District Judge**

1    directed verdict.  *Darden*, 213 F.3d at 480.  As such, plaintiff must establish that there is no

2    genuine issue of material fact on any point.  *Id.*  If plaintiff satisfies this burden, the burden shifts

3    to defendants to establish a genuine issue of material fact.  *Matsushita*, 475 U.S. at 586.

4        Plaintiff has produced sufficient evidence to meet all the elements of the alleged

5    offenses.  The evidence shows that defendants materially misrepresented the nature of the Class

6    A and Select A investments.   Defendants advertised the investments as "guaranteed,"

7    "unwavering," and protected in escrow.

8        In reality, defendant Fujinaga had sole control over investment funds, using them for his

9    own personal benefit.  While depleting the pool of collected investments, Fujinaga facilitated a

10   Ponzi scheme funded by new investments.

11       As noted, misrepresentations about the safety of an investment are material.  *See In re*

12   *Wells Fargo Sec. Litig.*, 12 F.3d at 930.  The reasonable investor would view this information as

13   material in deciding whether to purchase the securities at issue.

14       Further, Fujinaga's control over this scheme, coupled with his assertions of the Fifth

15   Amendment, suffices to show scienter as required under the statute.  *See SEC v. Global Express*

16   *Capital Real Estate Inv. Fund, I, LLC*, 289 Fed.Appx. 183, 187 (9th Cir. 2008) (affirming

17   summary judgment against defendant who managed investments on grounds of recklessness).

18       Defendants do not dispute the fact that they sold securities to investors in Japan.  To

19   refute plaintiff's arguments, defendants simply claim that they are not subject to the securities

20   laws because their transactions were not domestic.  Pursuant to the discussion above, this

21   argument is without merit.

22       Accordingly, defendants produce insufficient evidence to show that there is a genuine

23   dispute of material fact.  As such, the court will grant plaintiff's motion for summary judgment

24   on liability.

25   . . .

26   . . .

27   . . .

28   . . .

**James C. Mahan**
**U.S. District Judge**

1

**IV.      Conclusion**

2

    Accordingly,

3

    IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to

4

dismiss for failure to state a claim, (doc. # 134), be, and the same hereby is, DENIED.

5

    IT IS FURTHER ORDERED that defendants' motion to dismiss for lack of subject

6

matter jurisdiction, (doc. # 140), be, and the same hereby is, DENIED.

7

    IT IS FURTHER ORDERED that defendants' motion to dismiss for failure to plead with

8

specificity, (doc. # 141), be, and the same hereby is, DENIED.

9

    IT IS FURTHER ORDERED that defendants' motion for partial summary judgment,

10

(doc. # 122), be, and the same hereby is, DENIED.

11

    IT IS FURTHER ORDERED that plaintiff's motion for summary judgment, (doc. # 113),

12

be, and the same hereby is, GRANTED.

13

    DATED October 3, 2014.

14

15

UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 15 -