UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff(s),<br><br>v.<br><br>EDWIN YOSHIHIRO FUNINAGA and MRI INTERNATIONAL, INC., et al.,<br><br>Defendant(s). | Case No. 2:13-CV-1658 JCM (CWH)<br><br>ORDER |

Presently before the court is the Securities and Exchange Commission's (hereinafter "SEC") motion for judgment against defendants Edwin Fujinaga ("Fujinaga") and MRI International, Inc. ("MRI") (collectively "defendants"). (Doc. # 178). Defendants filed a response, (doc. # 184), and the SEC filed a reply, (doc. # 185).

In its motion, the SEC seeks disgorgement in the amount of $442,229,611.70 on a joint and several basis; prejudgment interest in the amount of $102,129,752.38 on a joint and several basis; a civil money penalty of $20,000,000.00 as to each defendant; and permanent injunctions. (Doc. # 178).

**I.  Background**

The instant case arises from a Ponzi scheme perpetrated by defendants. Defendants collected hundreds of millions of dollars for purported investments in medical accounts receivable. Defendants used these funds to repay earlier investments as well as for their own personal expenses. By May 2013, defendants had entirely depleted the invested funds. (Doc. # 118).

**James C. Mahan**
**U.S. District Judge**

1    On September 11, 2013, the SEC filed a civil enforcement action against defendants. (Doc. # 2). On October 7, 2013, the parties stipulated to the entry of a preliminary injunction. (Doc. # 20). On December 11, 2013, defendants filed an answer to plaintiff's complaint. (Doc. # 27). The parties completed discovery by July 8, 2014. (Doc. # 138).

On July 16, 2014, the SEC filed a motion for summary judgment on liability. (Doc. # 113). On October 3, 2014, the court granted the SEC's motion. (Doc. # 156). The SEC then filed the instant motion for judgment.

**II.    Legal Standard**

*A.  Disgorgement*

"The district court has broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of the securities laws." *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998). "[T]he amount of disgorgement should include all gains flowing from the illegal activities." *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1114 (9th Cir. 2006) (citations and quotation marks omitted).

"A disgorgement calculation requires only a reasonable approximation of profits causally connected to the violation . . . ." *Id.* at 1113-14. "The SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (citations and quotation marks omitted). However, the SEC need not trace every dollar of a defendant's ill-gotten gains, and a detailed accounting is not required. *First Pac. Bancorp*, 142 F.3d at 1192 n.6.

"Once the SEC establishes a reasonable approximation of defendants' actual profits . . . the burden shifts to the defendants to demonstrate that the disgorgement figure was not a reasonable approximation." *Id.* Because "[t]he defendants are more likely than the SEC to have access to evidence establishing what they paid for the securities . . . the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty." *Id.*

. . .

. . .

James C. Mahan
U.S. District Judge

- 2 -

*B.  Prejudgment interest*

Disgorgement remedies for securities should include prejudgment interest to ensure that the defendants do not profit from any illegal activity.  *SEC v. Henke*, 130 Fed. App'x 173, 174 (9th Cir. 2005).  Prejudgment interest may be calculated based on the rate provided in 28 U.S.C. § 1961 for post-judgment interest on money judgments in civil cases, or by the rate provided in 26 U.S.C. § 6621 for tax underpayment.  *Platforms Wireless*, 617 F.3d at 1099.

*C.  Joint and several liability*

"[W]here two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they have been held jointly and severally liable for the disgorgement of illegally obtained proceeds."  *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998).

*D.  Civil monetary penalties*

The court has jurisdiction to impose one of three tiers of civil penalties in cases of securities violations.  15 U.S.C. § 77t(d).  "The amount of the penalty shall be determined by the court in light of the facts and circumstances."  15 U.S.C. § 77t(d)(2)(A).

First-tier penalties are available for any violation of the Exchange Act.  15 U.S.C. § 77t(d)(2)(A).  The court may impose second-tier penalties for violations involving "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  15 U.S.C. § 77t(d)(2)(B).

Third-tier penalties may be imposed for violations that (1) involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and (2) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  15 U.S.C. § 77t(d)(2)(C).

. . .

. . .

. . .

. . .

. . .

James C. Mahan
U.S. District Judge

- 3 -

In determining the appropriate civil penalty, courts may consider the following factors:

(1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; (5) and the sincerity of the defendant's assurances against future violations.

*SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d. 1185, 1192 (D. Nev. 2009); *see also SEC v. Brandonisio*, No. 2:11-cv-2011-JAD-VCF, 2013 WL 5375283 at *9 (D. Nev. Sept. 24, 2013).

*E. Permanent injunctions*

The SEC may be entitled to a permanent injunction where it shows a reasonable likelihood of future securities violations. *SEC v. Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996). In determining this likelihood, the court must assess the totality of the circumstances. *Id.* This entails a consideration of the same factors applicable to civil penalty calculations. *See id.* at 1295-96.

**III. Discussion**

In the instant motion, the SEC requests disgorgement remedies, prejudgment interest, civil monetary penalties, and permanent injunctions against Fujinaga and MRI. (Doc. # 178). The court will address each requested remedy and defendants' objections in turn.

*A. Disgorgement*

The SEC approximates a disgorgement amount of $442,339,611.70. (Doc. # 178-1). The SEC obtained this figure through review of defendants' balance sheets and bank account statements. The stated disgorgement amount reflects the difference between the amount owing to investors as of December 31, 2008, $519,167,484.11, and the net amount paid out to investors from January 1, 2009, to the present, $76,827,872.41. (Doc. # 178-1). In support of its motion, the SEC attached the declaration of Colin J. Rand, a certified public accountant employed with the SEC. (Doc. # 178-2).

*i.     Defendants' objection to Mr. Rand's declaration*

Defendants object to Mr. Rand's declaration on the grounds that it is improper, untimely expert testimony that contravenes Federal Rule of Civil Procedure 26. (Doc. # 184). They also

James C. Mahan
U.S. District Judge

- 4 -

1  argue that they have procedural due process rights to depose Mr. Rand regarding his
2  methodology and to refute his opinions through a rebuttal expert. (Doc. # 184).

3        Defendants state that they have "retained an accounting firm to reanalyze and address tax
4  returns for MRI, which have been improperly prepared, and to work to evaluate and address the
5  analysis of the SEC's expert." (Doc. # 184).

6        The SEC replies that Mr. Rand is simply a summary witness who "added and subtracted
7  numbers in Defendants' own financial records and bank account statements." (Doc. # 185). The
8  SEC also notes that Mr. Rand "did not express any opinions based on scientific, technical, or
9  specialized knowledge," that would classify him as an expert witness under Federal Rule of
10  Evidence 702. (Doc. # 185).

11        In his declaration, Mr. Rand explains that he was asked to approximate a disgorgement
12  amount in the present case. (Doc. # 178-2). He states that "one reasonable calculation of illegal
13  profits would consist of the difference between the total amount that the defendants obtained
14  from investors minus the total amount that the defendants paid back to investors in the form of
15  interest and redemptions." (Doc. # 178-2).

16        Mr. Rand describes how he used defendants' balance sheets to calculate the SEC's
17  proposed disgorgement amount in this case. (Doc. # 178-2). He also explains how he calculated
18  the SEC's prejudgment interest amount. (Doc. # 178-2). As attachments to his declaration, Mr.
19  Rand includes (1) defendants' balance sheets, and (2) spreadsheets demonstrating his
20  calculations. (Doc. # 178-2).

21        Mr. Rand does not present any opinions or testimony based on specialized knowledge.
22  Instead, his declaration simply explains the SEC's calculations of the instant disgorgement
23  approximation.

24        Defendants' objections to Mr. Rand's declaration are therefore without merit.
25  Defendants had an opportunity to refute the SEC's disgorgement calculations in their response to
26  the instant motion. Pursuant to the briefing schedule set by the court, defendants were given
27  over thirty days from the SEC's filing of its motion to submit their response. (Doc. # 179).

28

**James C. Mahan**
**U.S. District Judge**

- 5 -

Accordingly, the court finds that defendants' requested delay to obtain expert testimony is unwarranted and unnecessary in this case. The SEC's motion for judgment is ripe, and the court will consider the SEC's disgorgement calculation as well as defendants' remaining objections.

*ii.     Calculation of disgorgement funds*

Defendants argue that the SEC's disgorgement calculation improperly includes funds received before 2008 because the SEC's amended complaint alleged wrongdoing only "from approximately 2008." (Doc. # 184). Defendants suggest that they should be liable solely for funds within the time frame of the complaint's allegations. (Doc. # 184).

In its reply, the SEC notes that its amended complaint included allegations of conduct predating 2008. In particular, the SEC points to its allegations that MRI began collecting money from investors in October 1998 and that MRI made false representations in its 2006 offering book. (Doc. # 118).

The SEC has produced sufficient evidence to support a finding that its approximation of causally connected profits was reasonable. As the SEC and the court have both noted, the amended complaint in this case alleged illegal conduct predating 2008. (Docs. # 118, 156).

In its order granting summary judgment, the court found that defendants misappropriated investor funds through a Ponzi scheme. (Doc. # 156). Defendants used incoming investments to fund their scheme and provide proceeds to other investors, misrepresenting the nature of their enterprise. The investments that defendants collected are therefore properly construed as "gains flowing from the illegal activities." *See JT Wallenbrock*, 440 F.3d at 1114.

In light of this showing, the burden now shifts to defendants to demonstrate that the SEC's disgorgement figure was not a reasonable approximation. *See Platforms Wireless*, 617 F.3d at 1096. Defendants present an alternative analysis regarding disgorgement to the court, arguing that it represents the proper amount of liability in this case. (Doc. # 184).

Defendants contend that they received a total of $561,133,206.50 in investor funds from September 2008 to April 2013. (Doc. # 184). Defendants argue that during that time period,

James C. Mahan
U.S. District Judge

- 6 -

1 they paid out $360,615,705.70 in liquidations. (Doc. # 184). Accordingly, defendants represent that they are liable for the difference between these numbers, $200,517,501.80. (Doc. # 184).

Defendants include the declaration of Mr. Fujinaga with their response. (Doc. # 184). Fujinaga states that to his knowledge, defendants' proposed calculations were made by an employee of MRI at his direction. (Doc. # 184). Fujinaga declares that wire reports and banking statements produced to the SEC support defendants' calculations. (Doc. # 184). Fujinaga attaches yearly summaries of these amounts to his declaration, but does not include any formal records. (Doc. # 184-2).

Defendants fail to provide the court with any substantive evidence of the liquidations purportedly paid out to investors. (Doc. # 184). They simply state that "these sums are supported by the banking records, wire reports, and other materials disclosed to the SEC and available upon request." (Doc. # 184).

In the instant case, every investment that defendants received allowed them to facilitate their fraudulent scheme. Defendants' misrepresentations affected more than just investments made after 2008. This court and other courts have previously ordered disgorgement of all investments where defendants engaged in fraudulent conduct. *See SEC v. Earthly Mineral Solutions, Inc.*, 2:07-cv-1057 JCM (LRL), 2011 WL 1103349, at *4 (D. Nev. Mar. 23, 2011) (ordering disgorgement of full $20 million of investments); *see also SEC v. Brown*, 658 F.3d 858, 860 (8th Cir. 2011) (affirming disgorgement of misappropriated investor funds); *SEC v. Interlink Data Network of Los Angeles, Inc.*, Civ. A. No. 93-3073 R., 1993 WL 603274, at *13 (C.D. Cal. Nov. 15, 1993) (holding defendants liable for disgorgement of full amount raised from investors in Ponzi scheme).

Accordingly, defendants fail to show that the SEC's disgorgement figure is not a reasonable approximation. Any uncertainty in calculating disgorgement is construed against defendants in light of their illegal conduct. For these reasons, the court accepts the SEC's disgorgement amount and will hold defendants liable for disgorgement in the amount of $442,339,611.70.

. . .

**James C. Mahan**
**U.S. District Judge**

- 7 -

*B. Prejudgment interest*

The SEC seeks prejudgment interest against defendants in the amount of $102,129,752.38. (Doc. # 178). The SEC used the underpayment rate provided in 26 U.S.C. § 6621 to calculate this amount. (Doc. # 178-2).

The SEC computed prejudgment interest annually beginning in 2008, accounting at the end of each period for the amounts taken in and paid out. (Doc. # 178-1). The SEC also accounted for adjustments to the prejudgment interest amount based on certain classes of stock that paid out more than they received from investors. (Doc. # 178-1).

Defendants contend that prejudgment interest should be calculated from the date of filing of the SEC's complaint in 2013, rather than from December 2008. (Doc. # 184). However, prejudgment interest is properly applied to the entire disgorgement amount to ensure that defendants do not profit from any illegal conduct. *See SEC v. Henke*, 130 Fed. App'x 173, 174 (9th Cir. 2005); *SEC v. Platforms Wireless Intern. Corp.*, 617 F.3d 1072, 1099-1100 (9th Cir. 2010) (upholding award of prejudgment interest calculated "from the date of sales of securities to the public, rather than from the date the SEC filed its complaint"). Further, "the court's selection of a prejudgment interest accrual date is flexible." *SEC v. Brandonisio*, 2:11-cv-2011-JAD-VCF, 2013 WL 5375283, at *6 (D. Nev. Sept. 24, 2013).

Because the court will adopt the SEC's proposed disgorgement calculations, the SEC's calculation of prejudgment interest is also appropriate. Prejudgment interest in the amount of $102,129,752.38 will be imposed against defendants.

*C. Joint and several liability*

The SEC proposes that defendants should be jointly and severally liable for the disgorgement and prejudgment interest amounts in the instant case. (Doc. # 178). The SEC reasons that "Fujinaga and MRI have a close relationship in that [Fujinaga] is the sole owner and control person of the company." (Doc. # 178-1). Defendants contend that joint and several liability should not be imposed because the court has not made any alter-ego findings with regard to MRI and Fujinaga. (Doc. # 184).

. . .

James C. Mahan
U.S. District Judge

The Ninth Circuit's holding in *First Pacific Bancorp* is instructive here. 142 F.3d at 1192. In that case, the court held an individual defendant jointly and severally liable with his corporate codefendants for "jointly undertaken violations of the securities laws." *Id.* The court reasoned that "[a]s the chairman of the board, the CEO and the majority shareholder of Bancorp, and as the president and the CEO of PacVen, Sands clearly enjoyed a 'close relationship' with those corporate codefendants." *Id.*, *see also SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1117 (imposing joint and several liability where "the defendants used all of the investors' funds to operate their pyramid scheme and invest in speculative business ventures, all to the defendants' benefit").

Fujinaga states in his declaration that he is the president and CEO of MRI. (Doc. # 184-2). In conjunction with its motion for summary judgment, the SEC included MRI pamphlets bearing Fujinaga's signature and endorsement in this capacity. (Doc. # 113). As discussed in the court's order on that motion, the SEC provided evidence that Fujinaga had sole control over funds invested in the scheme. (Doc. # 156). Accordingly, the court finds that joint and several liability is appropriate in the instant case. Defendants will be held jointly and severally liable for the disgorgement and prejudgment interest amounts imposed herein.

D.  *Civil monetary penalty*

The SEC also asks the court to impose civil monetary penalties of $20,000,000.00 as to each defendant in this case. (Doc. # 178). The SEC argues that defendants' violations were repeated, egregious, and carried a high degree of scienter. (Doc. # 178-1). The SEC notes that these penalties reflect only 4.5 percent of defendants' gross pecuniary gain. (Doc. # 178-1).

Defendants dispute the appropriateness of the SEC's proposed monetary penalty. (Doc. # 184). In particular, they note that the SEC fails to differentiate between the defendants and their respective pecuniary gain. (Doc. # 184). They contend that the SEC provides no rationale for its figures, suggesting $20,000,000.00, penalties based on an arbitrary 4.5 percent calculation. (Doc. # 184). Additionally, defendants state that this amount is incorrect based on the SEC's overestimate of the applicable disgorgement amount. (Doc. # 184).

. . .

**James C. Mahan**
**U.S. District Judge**

Defendants argue that civil penalties are not warranted because "MRI as an entity has ceased to exist," and Fujinaga "will likely soon face Federal Indictment, making any future securities violations unlikely." (Doc. # 184). Defendants suggest that Fujinaga's consent to a permanent injunction and his commitment to repaying investors are sufficient. (Doc. # 184).

Third-tier civil penalties are appropriate in the instant case. *See SEC v. CMKM Diamonds, Inc.*, 635 F.Supp.2d 1185, 1191-92 (D. Nev. 2009) (applying third-tier penalties where defendants defrauded investors of $64.2 million); *SEC v. Brandonisio*, 2:11-cv-2011-JAD-VCF, 2013 WL 5375283, at *8 (D. Nev. Sept. 24, 2013) (imposing third-tier penalties against defendant who made knowing misrepresentations to investors, resulting in at least $2.4 million of losses); *SEC v. Earthly Mineral Solutions, Inc.*, 2011 WL 1103349, at *4-*5 (D. Nev. Mar. 23, 2011) (applying third-tier penalties where defendant's fraud led to $20 million in investor losses).

Defendants engaged in a deceitful Ponzi scheme over several years, leading to substantial losses for investors. As this court has previously reasoned, such conduct manifests a high degree of scienter. *See SEC v. Earthly Mineral Solutions, Inc.*, 2:07-cv-1057 JCM (LRL), 2011 WL 1103349, at *5 (D. Nev. Mar. 23, 2011).

Courts have imposed civil penalties equal to the applicable disgorgement amounts. *See SEC v. Yuen*, 272 Fed. App'x 615, 618 (9th Cir. 2008) (affirming civil penalties equal to disgorgement amount); *SEC v. CMKM Diamonds, Inc.*, 635 F.Supp.2d 1185, 1193 (D. Nev. 2009). The SEC's proposed penalties amount to less than ten percent of defendants' gross pecuniary gain, even based on defendants' proposed disgorgement amounts. These penalties are substantially lower than those imposed in the cases cited above.

While defendants argue that their circumstances make future violations unlikely, this constitutes only one factor that the court may consider in imposing civil penalties. As previously stated, the degree of scienter and ongoing nature of the illegal conduct involved here warrant third-tier civil penalties.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

Based on the foregoing, the court will impose the SEC's proposed civil penalties of $20,000,000.00 as to Fujinaga and MRI in this case.

*E. Permanent injunctions*

Finally, the SEC requests that the court enter permanent injunctions barring defendants from further securities violations. (Doc. # 178). The SEC contends that permanent injunctions are warranted against defendants because defendants "exhibited a high degree of scienter and committed multiple, recurrent and egregious violations of the securities laws." (Doc. # 178-1).

In their response to the SEC's motion, defendants "strongly assert, without making any admission in the instant case, that they will not violate any securities laws and/or regulations in the future, and, to that end, agree to an injunction prohibiting any conduct that would violate Section 17(a) of the Securities Act or Section 10(b) of the Exchange Act and Rule 10b-5." (Doc. # 184).

Based on the foregoing, the court will grant permanent injunctions against defendants in the instant case.

## IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the SEC's motion for judgment, (doc. # 178), be, and the same hereby is, GRANTED.

Defendants shall be jointly and severally liable for disgorgement of proceeds in the amount of $442,229,611.70 and prejudgment interest in the amount of $102,129,752.38. Defendants shall also be liable for civil money penalties of $20,000,000.00 each. Defendants are hereby permanently enjoined from any further securities violations.

The clerk shall enter judgment accordingly.

DATED January 27, 2015.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 11 -