UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 2:13-cv-1658-JCM-CWH |
| Plaintiff, |  |
| v. | **ORDER APPOINTING AN EQUITABLE RECEIVER** |
| EDWIN YOSHIHIRO FUJINAGA and MRI INTERNATIONAL, INC., |  |
| Defendants, |  |
| and |  |
| CSA SERVICE CENTER, LLC, THE FACTORING COMPANY, JUNE FUJINAGA, and THE YUNJU TRUST, |  |
| Relief Defendants. |  |

This cause comes before the Court on the motion of Plaintiff Securities and Exchange Commission, pursuant to Rule 66 of the Federal Rules of Civil Procedure and Local Rules 66-1 through 66-10, for an order appointing an equitable receiver for certain commercial properties, identified in Exhibit 1, which are owned or controlled by Defendants Edwin Fujinaga or MRI International, Inc., or Relief Defendants CSA Service Center, LLC, or The Factoring Company (collectively, "MRI International" or "Defendants").[1]  The Court has received, read and considered the papers submitted by the parties on this motion, held the hearing required by Local Rule 66-2 and, being fully advised in the premises,

---

[1] Defendants have reviewed this proposed order and have no objection to the form of this proposed order.

THE COURT HEREBY ORDERS THAT:

1. A Receiver is appointed for the commercial properties and their rents and issues (collectively, the "Properties") described in Exhibit 1.

2. The Court hereby appoints Robb Evans & Associates LLC to be the Receiver (the "Receiver").

3. MRI International shall relinquish its occupancy rights with respect to the Properties to the Receiver within seven calendar days of the date of this Order.

4. The Receiver is hereby authorized, empowered and directed to perform the following duties and responsibilities, as reasonably appropriate and necessary to comply with and effectuate the goals and purposes of the equitable receivership:

    a. Take and retain immediate possession, custody and control of the Properties, all personal property located in or at the Properties, and the books and records owned by, controlled by or belonging to MRI International pertaining to the Properties.

    b. Take and retain immediate and exclusive possession, custody and control from MRI International of all keys, key cards, passwords, user names, and any other means of access to the Properties and any locked or secure areas within the Properties including, but not limited to, safes, secure computer or information systems, secure rooms and locked cabinets.

    c. Take all steps the Receiver deems necessary to secure and protect the Properties including, but not limited to, their personal property, premises, files and computer or information systems.

    d. Take all steps the Receiver deems necessary to maintain the confidentiality of information contained in the Properties, and to dispose of such information in an appropriate manner and in consultation with MRI International.

      e. May, in the Receiver's discretion, pay all debts and remove all encumbrances as necessary and reasonable to preserve the Properties against foreclosure and loss including, but not limited to, all local, state and federal taxes, priority liens and property insurance. The Receiver may pursue negotiated settlements of all such debts and encumbrances.

      5. Insofar as there is a tenant occupying a portion of the property located at 150 East Harmon Avenue, Las Vegas, Nevada, the Receiver shall take over the role of landlord, collect all rents and issues paid by the tenant, and take over the occupancy of the property upon the expiration or termination of the lease.

      6. In accordance with Local Rule 66-7, and except as otherwise allowed by statute or ordered by the Court, no party in interest, and no accountant, attorney, or representative of a party in interest, shall be employed by the Receiver.

      7. The Clerk of the Court shall issue a check in the full amount of the funds in the Registry Account of the Court in this action. The check shall be payable to the Receiver, and the check proceeds shall be used to pay the ongoing expenses of the Properties, such as insurance, maintenance, property taxes, repairs, security and utilities. The Receiver shall file and serve a quarterly report accounting for the use of the check proceeds received from the Registry Account of the Court.

      8. The Receiver shall deposit the check and check proceeds described in paragraph 7 above in a custodial account at a federally insured bank.

      The check proceeds described in paragraph 7 above shall also be used to pay the reasonable costs, expenses and fees of the Receiver incurred in connection with the performance of its duties described herein. All requests for payment of costs, expenses and fees of the

receiver shall be made by application to the Court, setting forth in reasonable detail the nature of any such costs, expenses and fees.

9. The Receiver shall take all necessary steps to enable the check proceeds described in paragraph 7 above to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations, whether proposed, temporary or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver shall be designated the administrator of the Settlement Fund, pursuant to Treas. Reg. § 1.468B-2(k)(3)(i), and shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number, (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon, and (c) satisfying any information, reporting or withholding requirements imposed on distributions from the Settlement Fund. The receiver shall cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a "Qualified Settlement Fund." MRI International shall cooperate with the Receiver in fulfilling the Settlement Fund's obligations under Treas. Reg. § 1.468B-2.

10. The Receiver shall deposit the net proceeds of any lease effected pursuant to paragraph 4 above into the custodial account described in paragraph 8 above. The net lease proceeds shall be maintained in the custodial account until the Court enters an order of distribution or other action to be taken.

11. Pursuant to Rule 65(a) of the Federal Rules of Civil Procedure, the Receiver shall not be required to post a bond or other security.

12. The Receiver shall not be liable for any act or omission of the Receiver unless it shall be proven that the Receiver acted, or omitted to act, in bad faith.

13. MRI International shall indemnify, defend and hold harmless the Receiver and the Receiver's firm from and against all actions (pending or threatened and whether at law or equity in any forum), liabilities and damages. This paragraph applies to costs, expenses and losses, including but not limited to reasonable attorneys' and other professional fees, arising from acts or omissions of the Receiver and the Receiver's firm under the terms of this Order.

14. The Receiver may be removed at any time by the Court and replaced with a successor, *sua sponte*, upon request of the Commission, or otherwise. In the event that the Receiver decides to resign, the Receiver shall first give written notice to the Commission's counsel of record and the Court of its intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall follow such instructions as the Court may provide.

15. All persons who receive actual notice of this Order by personal service or otherwise are enjoined from in any way disturbing the Properties and from filing or prosecuting any judicial action or proceeding of any kind (*e.g.*, administrative, civil or criminal), pertaining to the Properties, and from appointing a receiver or administrator of the Properties, except on leave having been granted by this Court. The Receiver shall not be required to respond to any subpoena or other court process (for documents or testimony) relating to the Receiver's duties, except on order of this Court.

16. On the request of the Commission, the Receiver shall provide the Commission with any documentation in the possession of the Receiver that the Commission deems necessary to meet its reporting obligations, that is mandated by Congress or statute, or that is otherwise necessary to further the Commission's mission.

17. In accordance with Local Rule 66-4, within sixty days of being appointed, the Receiver shall file a verified report and account of the Receiver's administration, which shall be heard in a hearing before the Court upon fourteen days' notice to all parties and known creditors of MRI International. The report and account shall contain the following:

   a. A summary of the operations of the Receiver.

   b. An inventory of the Properties and the personal property located therein.

   c. A schedule of all the Receiver's receipts and disbursements.

   d. A list of all known creditors who have claims on one or more of the Properties, with their addresses and the amounts of their claims. This sub-paragraph does not apply to investors who purchased certificates of investment from MRI International.

   e. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

In accordance with Local Rule 66-4 and this Court's order dated December 2, 1014, beginning after the hearing provided for in paragraph 17 above, the Receiver shall submit a status report every 90 days for the purpose of apprising the Court of the Receiver's activities.

18. The Receiver shall file and serve appraisals of the Properties within 120 days of being appointed.

19. At the hearing provided for in paragraph 17 above, the Court shall approve or disapprove the Receiver's report and account, determine whether the receivership may continue, and fix the time for further regular reports by the Receiver, if applicable.

20. In accordance with Local Rule 66-5, the Receiver shall give all interested parties and creditors at least fourteen days' notice of the time and place of hearings of:

   a. All further reports of the Receiver.

  b. All petitions for approval of the payment of dividends to creditors.

  c. All petitions for confirmation of sales of real or personal property.

  d. All applications for fees of the Receiver.

  e. Any application for the discharge of the Receiver.

  f. All petitions for authority to sell property at private sale.

21. Subject to all rights and privileges available under the law, MRI International, and its agents, directors, officers, servants, employees and attorneys-in-fact, and anyone affiliated with, in control of, or under the control of, MRI International, shall:

 a. Provide to the Receiver complete and unfettered access to all non-privileged books, records and documents of MRI International pertaining to the Properties, wherever located, and in whatever form or format they exist, including computerized and electronic records, contracts and lease agreements. MRI International and Edwin Fujinaga shall cooperate fully with the Receiver in this regard, and shall turn over or provide complete and unfettered access to such non-privileged books, records and documents.

 b. Provide to the Receiver complete, immediate and exclusive possession, custody and control of all keys, key cards, passwords, user names, and any other means of access to the Properties and any locked or secure areas within the Properties including, but not limited to, safes, secure rooms, secure computer or information systems, and locked cabinets.

 c. Provide to the Receiver immediately upon receipt all deliveries, email, facsimiles, mail and any other correspondence of MRI International pertaining to the Properties.

   d.  Take no action, directly or indirectly, to hinder, obstruct, delay or otherwise interfere in any manner with the actions of the Receiver or any other person engaged or employed by the Receiver to assist in carrying out the Receiver's duties herein.

SO ORDERED.

Dated:  Las Vegas, Nevada
    February 23, 2015.

                 _/s/ James C. Mahan_
                 UNITED STATES DISTRICT JUDGE

**Exhibit 1**
**Property List**

| No. | Address | Clark County Parcel No. | Description | Reason/Concern |
|---|---|---|---|---|
| 1 | 5330 South Durango Drive, Las Vegas, Nevada (MRI) and 5370 South Durango Drive, Las Vegas, Nevada (Claims Servicing of America) | 163-28-301-001 | The West Half (W1/2) of the Northwest Quarter (NW1/4) of the Northwest Quarter (NW1/4) of the Southwest Quarter (SW1/4) of Section 28, Township 21 South, Range 60 East, M.D.M. | Vandalism and waste |
| 2 | 5420 South Durango Drive, Las Vegas, Nevada (MRI Building No. 3) | 163-28-301-007 | The West Half (W1/2) of the Southwest Quarter (SW1/4) of the Northwest Quarter (NW1/4) of the Southwest Quarter (SW1/4) of Section 28, Township 21 South, Range 60 East, M.D.B. & M. | Vandalism and waste |
| 3 | 2955 Coleman Street, North Las Vegas, Nevada (Med-Health Medical Supplies) | 139-17-610-006 | See Exhibit A, Parcel 1 | Vandalism and waste |
| 4 | 2865 Coleman Street, North Las Vegas, Nevada (Med-Health Pharmaceutical Products) | 139-17-610-007 | See Exhibit A, Parcel 2 | Vandalism and waste |
| 5 | 2875 Coleman Street, North Las Vegas, Nevada (Med-Health Pharmaceutical Products) | 139-17-610-008 | See Exhibit A, Parcel 3 | Vandalism and waste |
| 6 | 150 East Harmon Avenue, Las Vegas, Nevada (Harmon Medical Center) | 162-21-202-004 | That portion of the Northwest Quarter (NW1/4) of Section 21, Township 21 South, Range 61 East, M.D.B.& M., more particularly described as follows: Lot One (1) of the certain parcel map on file in File 13, Page 40, in the Office of the County Recorder of Clark County, Nevada | Vandalism and waste; No viable owner |

# EXHIBIT "A"

**PARCEL 1:**

A PORTION OF LOT ONE (1) OF COLEMAN AIRPARK, A COMMERCIAL SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127 OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

A PORTION OF LANDS AS DESCRIBED IN A GRANT, BARGAIN, AND SALE DEED RECORDED NOVEMBER 21, 2005 IN BOOK 20051121 AS DOCUMENT NO. 0003850 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA AND SITUATE WITHIN THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF SECTION 17, TOWNSHIP 20 SOUTH, RANGE 61 EAST, M.D.M., CITY OF NORTH LAS VEGAS, CLARK COUNTY, NEVADA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF SAID SECTION 17, SAID POINT ALSO BEING AT THE CENTERLINE INTERSECTION OF BROOKS AVENUE AND COLEMAN STREET; THENCE ALONG THE NORTH LINE OF THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) AND CENTERLINE OF BROOKS AVENUE, NORTH 89°33'21" WEST, 481.39 FEET; THENCE DEPARTING SAID NORTH LINE AND CENTERLINE, SOUTH 00°26'39" WEST, 30.00 FEET TO THE SOUTH RIGHT-OF-WAY LINE OF BROOKS AVENUE, SAID POINT ALSO BEING THE MOST NORTHEASTERLY CORNER OF PARCEL 1 AS SHOWN ON RECORD OF SURVEY FILE 151, PAGE 100 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA SAID POINT BEING THE POINT OF BEGINNING; THENCE DEPARTING SAID SOUTH RIGHT-OF-WAY LINE, SOUTH 01°12'09" EAST, 378.60 FEET; THENCE SOUTH 88°47'52" EAST [West] 402.01 FEET TO THE WEST LINE OF LOT ONE (1) AS SHOWN ON THAT CERTAIN FINAL MAP ENTITLED "COLEMAN AIRPARK" RECORDED IN BOOK 127 OF PLATS AT PAGE 15 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA; THENCE ALONG SAID WEST LINE, NORTH 01°15'15" WEST, 390.16 FEET TO THE NORTHWEST CORNER OF SAID LOT ONE (1), SAID POINT BEING ON THE SOUTH RIGHT-OF-WAY LINE OF BROOKS AVENUE; THENCE ALONG SAID SOUTH RIGHT-OF-WAY LINE, SOUTH 89°33'21" EAST, 402.53 FEET TO THE POINT OF BEGINNING.

**PARCEL 2:**

A PORTION OF LOT ONE (1) OF COLEMAN AIRPARK, A COMMERCIAL SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127 OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

A PORTION OF LANDS AS DESCRIBED IN A GRANT, BARGAIN, AND SALE DEED RECORDED NOVEMBER 21, 2005 IN BOOK 20051121 AS DOCUMENT NO. 0003850 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA AND SITUATE WITHIN THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF SECTION 17, TOWNSHIP 20 SOUTH, RANGE 61 EAST, M.D.M., CITY OF NORTH LAS VEGAS, CLARK COUNTY, NEVADA, MORE PARTICULARLY DESCRIBED AS

FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF SAID SECTION 17, SAID POINT ALSO BEING AT THE CENTERLINE INTERSECTION OF BROOKS AVENUE AND COLEMAN STREET; THENCE ALONG THE EAST LINE OF THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) AND CENTERLINE OF COLEMAN STREET, SOUTH 01°12'24" EAST, 959.60 FEET; THENCE DEPARTING SAID EAST LINE AND CENTERLINE, SOUTH 88°47'36" WEST, 30.00 FEET TO THE WEST RIGHT-OF-WAY LINE OF COLEMAN STREET, SAID POINT ALSO BEING THE SOUTHEAST CORNER OF PARCEL 1 AS SHOWN ON RECORD OF SURVEY FILE 151, PAGE 100 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA; THENCE DEPARTING SAID WEST RIGHT-OF-WAY LINE AND ALONG THE SOUTH LINE OF SAID PARCEL 1, SOUTH 88°47'51" WEST, 246.48 FEET TO THE POINT OF BEGINNING; THENCE CONTINUING, SOUTH 88°47'51" WEST, 205.65 FEET; THENCE NORTH 01°12'09" WEST, 294.41 FEET; THENCE NORTH 88°47'52" EAST, 205.65 FEET; THENCE SOUTH 01°12'09" ~~WEST~~ [East], 294.41 FEET TO THE POINT OF BEGINNING.

SAID PARCEL FURTHER DESCRIBED AS BUILDING 7 AS SHOWN IN FILE 157, OF SURVEYS, AT PAGE 65, RECORDED JUNE 6, 2006, IN BOOK 20060622 AS INSTRUMENT NO. 3572 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.

PARCEL 3:

A PORTION OF LOT ONE (1) OF COLEMAN AIRPARK, A COMMERCIAL SUBDIVISION, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 127 OF PLATS, PAGE 15, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, DESCRIBED AS FOLLOWS:

A PORTION OF LANDS AS DESCRIBED IN A GRANT, BARGAIN, AND SALE DEED RECORDED NOVEMBER 21, 2005 IN BOOK 20051121 AS DOCUMENT NO. 0003850 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA AND SITUATE WITHIN THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF SECTION 17, TOWNSHIP 20 SOUTH, RANGE 61 EAST, M.D.M., CITY OF NORTH LAS VEGAS, CLARK COUNTY, NEVADA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHEAST CORNER OF THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) OF SAID SECTION 17, SAID POINT ALSO BEING AT THE CENTERLINE INTERSECTION OF BROOKS AVENUE AND COLEMAN STREET; THENCE ALONG THE EAST LINE OF THE SOUTHWEST QUARTER (SW ¼) OF THE NORTHEAST QUARTER (NE ¼) AND CENTERLINE OF COLEMAN STREET, SOUTH 01°12'24" EAST, 959.60 FEET; THENCE DEPARTING SAID EAST LINE AND CENTERLINE, SOUTH 88°47'36" WEST, 30.00 FEET TO THE WEST RIGHT-OF-WAY LINE OF COLEMAN STREET, SAID POINT ALSO BEING THE SOUTHEAST CORNER OF PARCEL 1 AS SHOWN ON RECORD OF SURVEY FILE 151, PAGE 100 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA, AND THE POINT OF BEGINNING; THENCE DEPARTING SAID WEST RIGHT-OF-WAY LINE AND ALONG THE SOUTH LINE OF SAID PARCEL 1, SOUTH 88°47'51" WEST, 246.48 FEET; THENCE NORTH 01°12'09" WEST, 294.41 FEET; THENCE NORTH 88°47'52" EAST, 246.46 FEET TO THE WEST RIGHT-OF-WAY LINE OF COLEMAN STREET; THENCE ALONG SAID WEST RIGHT-OF-WAY LINE, SOUTH 01°12'24" EAST, 294.41 FEET TO THE POINT OF BEGINNING.

SAID PARCEL FURTHER DESCRIBED AS BUILDING 8 AS SHOWN IN FILE 157, OF SURVEYS, AT PAGE 65, RECORDED JUNE 22, 2006, IN BOOK 20060622 AS INSTRUMENT NO. 3572 ON FILE IN THE OFFICE OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA.

NOTE: THE ABOVE METES AND BOUND DESCRIPTION WAS PREPARED BY CHARLES KELLEY AT 600 South 8th Street, Suite 230, Las Vegas, Nevada 89101

PARCEL 4:

A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS AS SET FORTH IN THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS, RECORDED AUGUST 30, 2005, IN BOOK 20050830, AS DOCUMENT NO. 01696, OF OFFICIAL RECORDS, CLARK COUNTY, NEVADA.