# ROBB EVANS & ASSOCIATES LLC
## RECEIVER OF MRI INTERNATIONAL INC., et al.

## REPORT OF RECEIVER'S ACTIVITIES
### April 18, 2015 through September 30, 2015

This report covers the activities of the Receiver[1] since its last report as of April 17, 2015. This is the first Quarterly Report to the Court on the progress of the receivership. It does not constitute an audit of financial condition and is intended only to provide information for use by the Court in assessing the progress of the receivership.

## Summary of Operations of the Receiver

The Receiver took steps to provide additional security to each of the properties. A security fence has been installed around the three office buildings and parking garage located on Durango Road. Immediately after the Receiver's initial appointment, the Receiver retained the services of a security firm that provided on-site security guards twenty-four hours a day, seven days a week. In an attempt to preserve receivership assets, the Receiver determined that temporary fencing around the property would provide reasonable protection from theft and vandalism and reduce the monthly costs of security services by over $20,000 each month. As a result of discussions with the tenant in Suite 206 at the property located at 150 East Harmon and based on the observations made by the Receiver during several site visits to the property, the Receiver confirmed there were numerous instances where trespassers were occupying portions of the property, including a storage shed and an outbuilding housing the garbage bins. Staff and patients of the tenant expressed concerns about the presence of the trespassers. The Receiver contracted with American Fence to install perimeter fencing around the Harmon property. The fence has provided a marked increase in security and a sense of relief to the tenants and their patients. The Receiver provided a chain and lock so only the tenants and Receiver can access the property.

The Receiver was able to secure individual insurance coverage for the seven commercial buildings in Las Vegas which resulted in a significant savings from the cost of coverage under the master policy held by the Receiver. The Receiver has coverage for other properties under its master policy that have been identified by the Receiver as part of the Receivership Estate, but not yet under the control of the Receiver. For example, the Receiver has made numerous requests for Mr. Fujinaga to comply with the Court's Order and turn over possession of his residence in Las Vegas. Although, Mr. Fujinaga has provided cooperation with the Receiver in many areas, as yet, Mr. Fujinaga has not turned over his residence to the Receiver. Mr. Fujinaga's counsel submitted a request that the Receiver agree to allow Mr. Fujinaga to continue to occupy the residence for the immediate future. The Receiver reminded Mr.

---

[1] Reference to the Receiver in this report means the Receiver, the Receiver's deputies, and its staff.

Fujinaga's counsel that the Court's Order compelled Mr. Fujinaga to turn over all of his assets, and that should Mr. Fujinaga desire an exception to that obligation, that he should apply to the Court directly, as in the Receiver's opinion, the Receiver does not have authority to grant such a request under the appointment Order.

The Receiver's counsel has undertaken steps to familiarize himself with the issues presented in the Hoy's litigation. The Receiver's counsel was successful in getting an extension of the discovery period and continues to analyze the strengths and weaknesses of this pending litigation.

Pursuant to the Court's direction, the Receiver has investigated the claim of Mr. Fujinaga that independent third parties hold an ownership interest in HMC Service Center, LLC, the entity holding title to the property at 150 E. Harmon. The Receiver will report on its findings regarding these ownership interests later in this report.

The Receiver interviewed numerous qualified brokers and agents interested in marketing the commercial properties in Las Vegas. The Receiver selected listing brokers for the three properties at 2865, 2875 and 2955 Coleman Road and three buildings at 5330, 5370 and 5420 Durango Drive. The Receiver has not taken steps to list for sale the Harmon property pending further direction from the Court regarding the issue of ownership. The status of the marketing activities for each property will be discussed in more detail later in this report.

The Receiver has continued to investigate the location of additional assets of the estate and potential claims against third-parties. The Receiver has encountered significant roadblocks to its ongoing financial investigation and asset tracing activities as a result of the lack of electronic financial and accounting records of the entities.

The Receiver has continued to analyze options to account for and properly store the voluminous number of documents stored at the various properties. In order to complete the liquidation process of the properties, the Receiver must box and remove all documents from the premises. The Receiver has been advised that certain of the documents may be stored by the F.B.I. pursuant to a possible agreement between the Department of Justice and counsel for Mr. Fujinaga. Even if such an agreement is reached, the amount of documents remaining is still a massive undertaking to box and move to a proper storage facility. The Receiver has continued to review the Defendant's records in an effort to locate additional assets and to locate documents helpful to the Hoy's litigation as well as identifying claims against third parties. The Receiver's staff has also started the process of boxing documents in preparation for removal to a storage facility.

The Receiver drafted stipulations for the destruction of expired drug products and the sale at auction of personal property located the buildings on Durango and two of the three buildings located on Coleman Road. Mr. Fujinaga has cooperated with the Receiver's request and signed both stipulations. The Receiver confirmed with Plaintiff's counsel that the SEC had no

objections and filed the stipulations with the Court. On October 5, 2015, the Court entered an Order approving both stipulations.

## Real Property Assets

### *Durango Properties*

The Durango Properties consist of three buildings located at 5330, 5370 and 5420 South Durango Avenue on two parcels of land. The office building at 5420 South Durango was not completed and remains a two story shell without interior tenant improvements.

As reported in the Receiver's initial report to the Court, all three buildings suffered significant theft and vandalism prior to the Receiver's appointment. Many windows had been smashed, door locks were broken with doors ajar, and business documents were strewn throughout the offices. Holes were torn through various ceilings and walls in order to remove copper pipes and electrical wiring. The HVAC systems had been destroyed and all salvageable metals throughout the Durango Properties were removed. Some bathroom toilets and fixtures were smashed. Most valuable electronic equipment had been stolen or was otherwise missing.

The water has been shut off for months and much of the landscaping is dead or otherwise deteriorating. A significant amount of trash and debris was around the exterior of the buildings and the Receiver retained the services of a contractor to remove the debris and clean the exterior of the buildings. During the heat of the summer, the Receiver arranged for a landscape company to water many portions of the landscape to prevent further loss of the trees and shrubs.

At the onset of its appointment, in an attempt to stop further damage to the Durango buildings, the Receiver retained the services of a local security company and contracted for guards to be present at the Durango Properties 24 hours a day, seven days a week. The Receiver determined that placement of security guards at the Durango Properties was necessary in order to protect and preserve the value of the receivership assets. As mentioned above, in order to reduce administrative costs to the estate, the Receiver determined that the installation of a temporary construction fence around the entire property would provide reasonable security against further damage. The Receiver entered into a one-year lease with American Fence at an annual cost of $2,700. By terminating the security guard service the Receiver reduced the monthly administrative costs to the estate of over $20,000. There has not been any significant theft or damage to the buildings since installation of the perimeter fence.

The Receiver listed the Durango properties with two qualified brokers and directed that they work as a team in marketing the property. One of the brokers was formerly with CBRE and has extensive experience in developing and marketing commercial real estate. The second broker has a strong construction background and has proved very productive in developing estimated costs to repair the buildings, the status of all necessary permits and by reviewing

existing plans and drawings. After the initial marketing campaign, the brokers held open houses during July and August 2015 for all parties that had submitted an expression of interest in the properties. The open houses were well attended with numerous buyers inspecting the Durango properties accompanied by personal contractors, agents and consultants. All potential buyers were invited to submit written offers to the Receiver on or before September 30, 2015. The Receiver and brokers carefully reviewed all written offers and selected buyers that submitted the five best offers and invited them to submit a "final and best" offer on or before Wednesday, October 14, 2015. The Receiver anticipates selecting the best offer and thereafter negotiating a Sales and Purchase Agreement.

**Coleman Properties**

As previously reported, the Coleman Properties are located in a development comprised primarily of light industrial buildings. The buildings are designed with office space in the front and warehouse and shipping space in the rear. As a result of multiple other active businesses in the area and the resulting higher foot and auto traffic volume, these three buildings are substantially intact and free from vandalism and theft.

The building at 2865 Coleman Street contains approximately 28,366 square feet of office and warehouse space on 1.39 acres. This property is vacant and swept clean. The locks have been changed and the building is secure.

The building at 2875 Coleman Street contains approximately 31,801 square feet of office and warehouse space on 1.67 acres. This building contains office furniture, computer equipment and a significant amount of medical supply inventory. This property has a large built-in vault containing thousands of pills of Class III, IV and V controlled substances.

The building at 2955 Coleman Street contains approximately 68,315 square feet of office space, drug manufacturing production rooms and warehouse space on 3.55 acres. The tenant improvements to this building were constructed in such a manor so as to comply with the technical regulations of the U.S. Food and Drug Administration ("FDA") for the production, rebottling and packaging of drug products. The environmental control equipment alone included in the build-out would have cost hundreds of thousands of dollars. The building has numerous "clean rooms" designed to meet the high standards required by the FDA. This building has office furniture, production, bottling and labeling machines and computer equipment.

The Receiver conducted interviews with a number of local brokers that specialize in light industrial buildings and selected an agent with CBRE who came highly recommended by several other brokers. An aggressive marketing campaign of the three Coleman Properties was undertaken and the Receiver oversaw numerous inspections of the properties by various buyers. Most buyers were accompanied by contractors, agents and consultants. The Receiver has negotiated Sale and Purchase Agreements for 2875 and 2865 Coleman with well qualified buyers. The terms of both Agreements make the pending sales expressly conditional upon

the Receiver obtaining Court approval. The Receiver has discussed the pending sales with Mr. Fujinaga and his counsel. Both have expressed agreement to the terms of the sale. The Receiver's counsel has drafted stipulations and hopes to get them approved by the Parties so they can be submitted to the Court. Mr. Fujinaga is cooperating with the Receiver by approving the pending sales and has indicated that he will sign the stipulations. If the Receiver is not able to obtain an agreement to the stipulations, the Receiver will file a motion seeking the Court's confirmation of the pending sales and an Order authorizing the Receiver to close the sales. Both sales will be subject to an overbid procedure that the Receiver will recommend to the Court. The Receiver has contacted Plaintiff's counsel and counsel for the investors to confirm their willingness to remove lis pendens filed against the properties subject to the Receiver obtaining the Court's approval.

The marketing of 2955 Coleman Road has presented specific challenges to the Receiver and its broker. The Receiver's brokers have targeted regulated industries that could benefit from the special use of the building's improvements. The Receiver has rejected several offers that were well below the amount that could be realized in a sale of 2955 Coleman to a special use company. The only offers to date are from buyers interested in the property as an open warehouse use and have reflected that value per square foot. The Receiver believes that the effort to locate a company that could benefit from the specific improvements should continue for another five or six months before considering lower offers.

In anticipation of the pending sales of two of the Coleman Properties, the Receiver needed to make arrangements to vacate the premises. In order to accomplish this, the Receiver drafted two stipulations. The first was an agreement that the Receiver could retain the services of an auctioneer to conduct an auction and liquidate the office furniture and equipment and the inventory of medical supplies. The stipulation for the sale of personal property also includes the office furniture and equipment and construction supplies located in the Durango Properties. The second stipulation authorizes the receiver to dispose of the drugs stored in a drug vault in 2875 Coleman by contracting with a vendor approved by the Drug Enforcement Administration. All of the drug products are now expired and cannot be liquidated. Mr. Fujinaga agreed to cooperate with the Receiver's request and signed both stipulations. The Plaintiff's counsel advised the Receiver that they did not have any objection to either stipulation. On October 5, 2015, the Court approved the stipulations and entered an Order authorizing the Receiver to dispose of the drugs and sell the personal property.

**Harmon Property**

The building at 150 East Harmon is a two story medical building which contains approximately 25,741 square feet of office space on 1.62 acres. The tenant improvements are designed with multiple examination rooms, labs, X-ray rooms, executive offices and document storage areas. The suites are vacant with the exception of a tenant on the second floor in suite 206. The Receiver has continued to manage the property and address any concerns raised by the tenant. As previously reported, the Receiver determined that the location of the property attracted numerous transient visitors that posed a problem for the tenant, the tenant's staff and the

tenant's patients.  The Receiver secured the property by contracting with American Fence to install a fence around the perimeter of the building.  The Receiver continues to constantly monitor the presence of anyone trespassing on the property.  The Receiver arranged to extend the height of a portion of the fence and secured a storage building in order to address two additional incidents of trespassing.  Since the most recent security measures were implemented, the Receiver has not received any complaints about trespassers from the tenant.  The Receiver continues to make periodic safety inspections of the property to ensure that no further problems exist.

The Harmon Property is titled to HMC Service Center LLC.  During a hearing before the Court, counsel for Mr. Fujinaga raised an objection to the sale of the Harmon Property based on his assertion that there were several other independent parties that hold an ownership interest in HMC Service Center.  In response to Mr. Fujinaga's claim, the Court directed the Receiver to investigate the ownership of the Harmon Property.  Based on a review of tax returns and other HMC Service Center documents, the Receiver has confirmed that two other individuals each have a fifteen percent (15%) interest in HMC Service Center.  Mr. Fujinaga effectively owns 70% of the LLC.  He holds 65% in his own name and a company owned by Mr. Fujinaga owns the remaining 5% of the LLC. Mr. Suzuki, a co-defendant in the criminal action filed by the Department of Justice owns 15% of the LLC.  Another individual from Henderson, Nevada, who has since passed away, holds the other 15% interest.  The Receiver has not been able to confirm whether or not the other two individuals paid consideration for their interest in HMC Service Center.  The Receiver has requested proof of the payment of consideration by the two partners from Mr. Fujinaga, but has not yet received a response.  The Receiver was able to locate documents at the Durango Property that show each Member of the LLC paid a token amount for the percentage of interest in the LLC held by each one, but the Receiver has not been able to determine the source of funds used to purchase the Harmon Property.  As such, the Receiver is not prepared to concede that the two other Members have a legitimate claim to the property.  The Receiver is still reviewing the matter, but the Receiver's is investigating the option of preparing a motion for the Court requesting authority to liquidate the property and hold 30% of the net proceeds of the sale subject to the claims of the other two Members.  The remaining 70% of the net proceeds would be included in the general fund of the Receivership Estate.

Pending the resolution of the issue of ownership, the Receiver has not taken any steps to list the property for sale.  The Receiver has received a number of inquiries from brokers representing buyers interested in the property  The Receiver will seek further direction from the Court before proceeding with any efforts to liquidate the Harmon Property.

**Other Real Property and Assets**

The Receiver has identified properties located in Solvang, California and Honokaa, Hawaii.  The Receiver is in the process of taking control of these properties and securing appraisals for both.

Mr. Fujinaga advised the Receiver of funds held in the account of One Stop Pharmacy which represent the proceeds from the sale of the pharmacy. Mr. Fujinaga has cooperated with the Receiver in getting the funds transferred to the Receiver by drafting a letter directing the signatory on the account to transmit the funds to the Receiver.

## Inventory of the Documents and Electronic Data

The inventory, preservation and storage of the documents and electronic data present a monumental task for the Receiver. This is the case, not only because of the voluminous amount of documents, but also the nature of the documents and the retention requirements for various types of medical records. As discussed above, the Receiver is aware that counsel for the Department of Justice and Mr. Fujinaga's counsel have discussed the collection and storage of certain documents by the F.B.I. On separate occasions, the Receiver provided access to counsel from the DOJ and Mr. Fujinaga and his counsel to inspect the documents stored at all seven commercial buildings. Even if the parties can reach an agreement regarding the retention of a portion of the documents, the Receiver estimates that this represents approximately less than 20% of the total volume of documents. The Receiver has no objection to this process if the Parties reach an agreement because it would reduce the administrative costs to the estate for collection and storage of the documents in question. In order to facilitate the sale of the personal property and the pending sale of the properties, the Receiver has taken steps to box the remaining documents in preparation for removal to a storage facility. This process has started, but is expected to take several weeks to complete.

The Receiver's initial report to the Court described a document vault located at 5330 S. Durango Drive. Mr. Fujinaga has attempted to locate the combination to the vault, but has been unsuccessful. The Receiver must be prepared to vacate the premises and has decided to retain the services of a specialized locksmith capable of opening the vault. The cost of opening the document vault is expected to range from $5,000 to $7,000 depending on whether or not both dials were used in setting the combination. The Receiver not only needs to identify and remove the contents of the vault in preparation for the sale of the property, but the Receiver is hopeful that the vault contains backup tapes of the various companies servers with banking and financial information needed in the Hoy's litigation. As previously reported, approximately 45 servers have been taken or are otherwise missing. The Receiver has been severely hampered by the lack of banking and financial data and is hopeful that the backup tapes will contain information useful to the Receiver in tracing other assets and in the litigation with Hoys Pharmacy and identifying potential third-party claims.

The Receiver is of the opinion that a large number of documents could be identified and destroyed. Most of the documents contain consumer data and would need to be shredded. This is probably not a viable alternative given the ongoing criminal action. Additionally, counsel for the investors has expressed an interest in access to documents. The Receiver intends to store all documents and electronic data until such time as the Court directs otherwise.

**Schedule of Receivership Receipts and Disbursements**

As set forth in more detail in the Receivership Administration Expenses and Fund Balance statement attached hereto as **Exhibit "1"**, during the reporting period from April 1, 2015 to September 30, 2015, the Receiver has collected a total of $151,800.76. This includes turnover of funds with Talmer Bank and Wells Fargo Bank of $119,250.97. The Receiver also collected rent on 150 E. Harmon of $32,424.00.

Real Property expenses for this period totaled $343,113.45 as detailed below:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Fire Alarm & Monitoring | 478.00 | | | | | | | 478.00 |
| Garbage Service | 1,837.71 | | | | | | | 1,837.71 |
| Grafitti Removal | | | | 260.00 | 285.00 | | | 545.00 |
| Hazard & Liability Insurance | 529.83 | | | | | | | 529.83 |
| Landscaping Maintenance | 4,125.00 | | | | 255.00 | 255.00 | | 4,635.00 |
| Locksmith Services | 620.33 | 296.33 | 296.33 | 479.34 | 685.73 | 277.75 | | 2,655.81 |
| Marketing Expense | | | | | 3,785.25 | | | 3,785.25 |
| Property Insurance | 2,153.02 | 8,282.01 | 8,808.28 | 16,675.57 | 13,148.34 | 18,615.86 | | 67,683.08 |
| Property Taxes & Liens | 14,496.57 | 3,559.44 | 4,051.15 | 8,165.50 | 17,258.81 | 18,213.33 | 50.00 | 65,794.80 |
| Repairs & Maintenance | 4,299.43 | | 2,663.94 | | 2,673.48 | 550.00 | | 10,186.85 |
| Security & Patrol Services | | | | | 15,034.65 | | | 15,034.65 |
| Telephone & Internet | 13,191.23 | | | | | | | 13,191.23 |
| Water & Sewer | 11,949.90 | 7,935.56 | 9,325.07 | 12,587.57 | 10,093.74 | 18,931.17 | | 70,823.01 |
| Other | | | | 28.88 | | | | 28.88 |
| Total | 76,592.13 | 31,850.26 | 61,281.78 | 46,901.93 | 66,407.12 | 60,030.23 | 50.00 | 343,113.45 |

Respectfully Submitted,

/s/ Brick Kane

Robb Evans & Associates LLC
Receiver

# Exhibit 1

# Exhibit 1

**ROBB EVANS ASSOCIATES LLC**
Receiver of MRI International, Inc.
**Receivership Administrative Expenses and Fund Balance**
From Inception(February 23, 2015) to September 30, 2015

| | Previously Reported and Approved | Apr 15 | May 15 | Jun 15 | Jul 15 | Aug 15 | Sep 15 | 4/1/15-9/30/15 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| **Corporate Funds in Custody** | | | | | | | | | |
| Talmer Bank | | | | | | | | | |
| Talmer Bank XX0767 | 0.00 | 0.00 | 0.00 | 0.00 | 164.74 | 0.00 | 0.00 | 164.74 | 164.74 |
| Talmer Bank-Harmon Primary Care | 0.00 | 0.00 | 0.00 | 0.00 | 7.25 | 0.00 | 0.00 | 7.25 | 7.25 |
| Talmer Bank 0770 | 0.00 | 0.00 | 0.00 | 0.00 | 5,507.14 | 0.00 | 0.00 | 5,507.14 | 5,507.14 |
| Talmer Bank - CSA | 0.00 | 0.00 | 0.00 | 0.00 | 49,999.99 | 0.00 | 0.00 | 49,999.99 | 49,999.99 |
| **Total Talmer Bank** | 0.00 | 0.00 | 0.00 | 0.00 | 55,679.12 | 0.00 | 0.00 | 55,679.12 | 55,679.12 |
| Wells Fargo Bank | | | | | | | | | |
| WFB Acct #91968013 | 0.00 | 0.00 | 63,571.85 | 0.00 | 0.00 | 0.00 | 0.00 | 63,571.85 | 63,571.85 |
| **Total Wells Fargo Bank** | 0.00 | 0.00 | 63,571.85 | 0.00 | 0.00 | 0.00 | 0.00 | 63,571.85 | 63,571.85 |
| **Total Corporate Funds in Custody** | 0.00 | 0.00 | 63,571.85 | 0.00 | 55,679.12 | 0.00 | 0.00 | 119,250.97 | 119,250.97 |
| **US District Court Funds** | 1,110,984.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,110,984.94 |
| **Rent Receipts - 150 E. Harmon** | 5,400.00 | 0.00 | 10,824.00 | 5,400.00 | 5,400.00 | 5,400.00 | 5,400.00 | 32,424.00 | 37,824.00 |
| **Miscellaneous Income** | 0.00 | 22.33 | 0.00 | 65.20 | 0.00 | 0.00 | 0.00 | 87.53 | 87.53 |
| **Interest Income** | 0.00 | 24.47 | 3.22 | 2.97 | 2.86 | 3.18 | 1.56 | 38.26 | 38.26 |
| **Total Funds Collected** | 1,116,384.94 | 46.80 | 74,399.07 | 5,468.17 | 61,081.98 | 5,403.18 | 5,401.56 | 151,800.76 | 1,268,185.70 |
| **Expenses** | | | | | | | | | |
| Business Entity Expenses | | | | | | | | | |
| Fees & Penalties | 0.00 | 250.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 250.00 | 250.00 |
| Records Storage | 0.00 | 0.00 | 0.00 | 0.00 | 232.01 | 232.01 | 2,049.57 | 2,513.59 | 2,513.59 |
| UCC Search Costs | 122.50 | 0.00 | 0.00 | 0.00 | 139.00 | 0.00 | 0.00 | 139.00 | 261.50 |
| **Total Business Entity Expenses** | 122.50 | 250.00 | 0.00 | 0.00 | 371.01 | 232.01 | 2,049.57 | 2,902.59 | 3,025.09 |
| Real Property Expenses | | | | | | | | | |
| 150 E. Harmon Ave. | | | | | | | | | |
| Alarm Monitoring & Response | 281.50 | 898.88 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 898.88 | 1,180.38 |
| Appraisal Fees | 1,875.00 | 5,375.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,375.00 | 7,250.00 |
| Common Area Cleaning | 0.00 | 0.00 | 0.00 | 0.00 | 812.50 | 0.00 | 0.00 | 812.50 | 812.50 |
| Electricity | 3,694.31 | 0.00 | 3,791.60 | 2,265.25 | 2,512.14 | 2,910.40 | 2,593.90 | 14,073.29 | 17,767.60 |
| Fence Rental Fees | 0.00 | 0.00 | 1,116.89 | 0.00 | 324.30 | 0.00 | 310.25 | 1,751.44 | 1,751.44 |
| Fire Alarm & Monitoring | 316.50 | 90.50 | 65.50 | 65.50 | 65.50 | 65.50 | 125.50 | 478.00 | 794.50 |
| Garbage Service | 10,124.28 | 0.00 | 0.00 | 0.00 | 1,837.71 | 0.00 | 0.00 | 1,837.71 | 11,961.99 |
| Hazard & Liability Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 529.83 | 0.00 | 0.00 | 529.83 | 529.83 |
| Landscaping Maintenance | 0.00 | 0.00 | 0.00 | 4,125.00 | 0.00 | 0.00 | 0.00 | 4,125.00 | 4,125.00 |
| Locksmith Services | 1,527.87 | 0.00 | 620.33 | 0.00 | 0.00 | 0.00 | 0.00 | 620.33 | 2,148.20 |

**ROBB EVANS ASSOCIATES LLC**
**Receiver of MRI International, Inc.**
**Receivership Administrative Expenses and Fund Balance**
From Inception(February 23, 2015) to September 30, 2015

| | Previously Reported and Approved | Apr 15 | May 15 | Jun 15 | Jul 15 | Aug 15 | Sep 15 | 4/1/15-9/30/15 | TOTAL |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| Property Insurance | 4,173.70 | (1,023.66) | 1,604.19 | 0.00 | 0.00 | 0.00 | 1,572.49 | 2,153.02 | 6,326.72 |
| Property Taxes & Liens | 182,144.54 | 0.00 | 0.00 | 0.00 | 0.00 | 14,496.57 | 0.00 | 14,496.57 | 196,641.11 |
| Repairs & Maintenance | 466.72 | 1,101.74 | 1,524.85 | 362.53 | 0.00 | 1,160.31 | 150.00 | 4,299.43 | 4,766.15 |
| Sewer | 3,494.17 | 1,164.72 | 0.00 | 0.00 | 1,164.88 | 0.00 | 0.00 | 2,329.60 | 5,823.77 |
| Telephone & Internet | 6,627.57 | 0.00 | 4,416.55 | 2,218.94 | 2,227.16 | 2,156.01 | 2,172.57 | 13,191.23 | 19,818.80 |
| Water | 3.35 | 3,940.25 | 0.00 | 3,548.52 | 706.03 | 755.80 | 669.70 | 9,620.30 | 9,623.65 |
| **Total 150 E. Harmon Ave.** | 214,729.51 | 11,547.43 | 13,139.91 | 12,585.74 | 10,180.05 | 21,544.59 | 7,594.41 | 76,592.13 | 291,321.64 |
| **2865 Coleman St.** | | | | | | | | | |
| Appraisal Fees | 4,625.00 | 1,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,875.00 | 6,500.00 |
| C.A.M. Fees | 13,387.48 | 0.00 | 538.09 | 538.09 | 538.09 | 538.09 | 538.09 | 2,690.45 | 16,077.93 |
| Clean up Services | 0.00 | 0.00 | 0.00 | 0.00 | 1,327.50 | 0.00 | 0.00 | 1,327.50 | 1,327.50 |
| Electricity | 39.20 | 60.38 | 28.88 | 29.33 | 3,792.87 | 1,027.37 | 945.14 | 5,883.97 | 5,923.17 |
| Locksmith Services | 307.69 | 0.00 | 0.00 | 0.00 | 296.33 | 0.00 | 0.00 | 296.33 | 604.02 |
| Property Insurance | 1,447.71 | 3,225.16 | 1,011.37 | 1,011.37 | 1,011.37 | 1,011.37 | 1,011.37 | 8,282.01 | 9,729.72 |
| Property Taxes & Liens | 31,991.57 | 0.00 | 0.00 | 0.00 | 0.00 | 3,559.44 | 0.00 | 3,559.44 | 35,551.01 |
| Water & Sewer | 0.00 | 6,790.76 | 0.00 | 0.00 | 0.00 | 466.76 | 678.04 | 7,935.56 | 7,935.56 |
| **Total 2865 Coleman St.** | 51,798.65 | 11,951.30 | 1,578.34 | 1,578.79 | 6,966.16 | 6,603.03 | 3,172.64 | 31,850.26 | 83,648.91 |
| **2875 Coleman St.** | | | | | | | | | |
| Alarm Monitoring & Response | 0.00 | 499.06 | 0.00 | 0.00 | 591.00 | 0.00 | 591.00 | 1,681.06 | 1,681.06 |
| Appraisal Fees | 4,625.00 | 1,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,875.00 | 6,500.00 |
| C.A.M. Fees | 12,055.29 | 0.00 | 602.93 | 602.93 | 602.93 | 602.93 | 602.93 | 3,014.65 | 15,069.94 |
| Clean Up Services | 0.00 | 0.00 | 0.00 | 0.00 | 2,100.50 | 0.00 | 0.00 | 2,100.50 | 2,100.50 |
| Electricity | 0.00 | 3,279.86 | 8,932.11 | 3,521.34 | 4,348.67 | 3,762.84 | 3,620.98 | 27,465.80 | 27,465.80 |
| Fees & Permits | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Locksmith Services | 402.68 | 0.00 | 0.00 | 0.00 | 296.33 | 0.00 | 0.00 | 296.33 | 699.01 |
| Property Insurance | 1,613.02 | 3,305.20 | 1,011.37 | 1,011.37 | 1,011.37 | 1,011.37 | 1,457.60 | 8,808.28 | 10,421.30 |
| Property Taxes & Liens | 36,410.59 | 0.00 | 0.00 | 0.00 | 0.00 | 4,051.15 | 0.00 | 4,051.15 | 40,461.74 |
| Repairs & Maintenance | 0.00 | 0.00 | 180.00 | 0.00 | 1,313.74 | 670.00 | 500.20 | 2,663.94 | 2,663.94 |
| Water & Sewer | 0.00 | 9,081.23 | 0.00 | 0.00 | 0.00 | 95.57 | 148.27 | 9,325.07 | 9,325.07 |
| **Total 2875 Coleman St.** | 55,106.58 | 18,040.35 | 10,726.41 | 5,135.64 | 10,264.54 | 10,193.86 | 6,920.98 | 61,281.78 | 116,388.36 |
| **2955 Coleman St.** | | | | | | | | | |
| Appraisal Fees | 4,625.00 | 1,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,875.00 | 6,500.00 |
| C.A.M. Fees | 28,584.69 | 0.00 | 1,297.44 | 1,297.44 | 1,297.44 | 1,297.44 | 1,297.44 | 6,487.20 | 35,071.89 |
| Electricity | 0.00 | 83.48 | 57.76 | 29.33 | 85.66 | 28.88 | 57.76 | 342.87 | 342.87 |
| Grafitti Removal | 0.00 | 0.00 | 0.00 | 0.00 | 260.00 | 0.00 | 0.00 | 260.00 | 260.00 |
| Locksmith Services | 606.08 | 0.00 | 0.00 | 0.00 | 296.34 | 0.00 | 183.00 | 479.34 | 1,085.42 |
| Property Insurance | 3,324.86 | 6,476.85 | 1,950.50 | 1,950.50 | 1,950.50 | 1,950.50 | 2,396.72 | 16,675.57 | 20,000.43 |
| Property Taxes & Liens | 74,251.27 | 0.00 | 0.00 | 0.00 | 0.00 | 8,165.50 | 0.00 | 8,165.50 | 82,416.77 |

**ROBB EVANS ASSOCIATES LLC**
**Receiver of MRI International, Inc.**
**Receivership Administrative Expenses and Fund Balance**
From Inception(February 23, 2015) to September 30, 2015

|  | Previously Reported and Approved | Apr 15 | May 15 | Jun 15 | Jul 15 | Aug 15 | Sep 15 | 4/1/15-9/30/15 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| Water & Sewer | 0.00 | 11,702.66 | 0.00 | 0.00 | 0.00 | 363.98 | 520.93 | 12,587.57 | 12,587.57 |
| 2955 Coleman St. - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 28.88 | 0.00 | 28.88 | 28.88 |
| **Total 2955 Coleman St.** | 111,391.90 | 20,137.99 | 3,305.70 | 3,277.27 | 3,889.94 | 11,835.18 | 4,455.85 | 46,901.93 | 158,293.83 |
| **5330 & 5370 S. Durango Dr.** | | | | | | | | | |
| Appraisal Fees | 4,875.00 | 1,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,875.00 | 6,750.00 |
| Fence Rental Fees | 0.00 | 1,312.12 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,312.12 | 1,312.12 |
| Grafitti Removal | 0.00 | 0.00 | 0.00 | 0.00 | 285.00 | 0.00 | 0.00 | 285.00 | 285.00 |
| Landscape Maintenance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 255.00 | 255.00 | 255.00 |
| Locksmith Services | 1,053.50 | 0.00 | 685.73 | 0.00 | 0.00 | 0.00 | 0.00 | 685.73 | 1,739.23 |
| Marketing Expenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,785.25 | 3,785.25 | 3,785.25 |
| Property Insurance | 7,034.49 | 6,643.44 | 1,300.34 | 1,300.34 | 1,301.94 | 1,301.14 | 1,301.14 | 13,148.34 | 20,182.83 |
| Property Taxes & Liens | 157,586.72 | 0.00 | 0.00 | 0.00 | 0.00 | 17,258.81 | 0.00 | 17,258.81 | 174,845.53 |
| Repairs & Maintenance | 5,616.10 | 0.00 | 1,573.48 | 0.00 | 450.00 | 375.00 | 275.00 | 2,673.48 | 8,289.58 |
| Security & Patrol Services | 11,390.40 | 15,034.65 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15,034.65 | 26,425.05 |
| Sewer | 0.00 | 0.00 | 0.00 | 0.00 | 974.16 | 0.00 | 0.00 | 974.16 | 974.16 |
| Water | 0.00 | 5,880.10 | 0.00 | 0.00 | 0.00 | 1,360.43 | 1,879.05 | 9,119.58 | 9,119.58 |
| **Total 5330 & 5370 S. Durango Dr.** | 187,556.21 | 30,745.31 | 3,559.55 | 1,300.34 | 3,011.10 | 20,295.38 | 7,495.44 | 66,407.12 | 253,963.33 |
| **5420 S. Durango Dr.** | | | | | | | | | |
| Locksmith Services | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 277.75 | 277.75 | 277.75 |
| Appraisal Fees | 4,875.00 | 1,875.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,875.00 | 6,750.00 |
| Fence Rental Fees | 0.00 | 1,312.12 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,312.12 | 1,312.12 |
| Landscape Maintenance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 255.00 | 255.00 | 255.00 |
| Property Insurance | 8,270.93 | 8,863.36 | 1,950.50 | 1,950.50 | 1,950.50 | 1,950.50 | 1,950.50 | 18,615.86 | 26,886.79 |
| Property Taxes & Liens | 207,463.91 | 0.00 | 0.00 | 0.00 | 0.00 | 18,213.33 | 0.00 | 18,213.33 | 225,677.24 |
| Repairs & Maintenance | 2,273.33 | 275.00 | 0.00 | 0.00 | 0.00 | 0.00 | 275.00 | 550.00 | 2,823.33 |
| Water | 0.00 | 15,272.89 | 0.00 | 0.00 | 0.00 | 1,490.53 | 2,167.75 | 18,931.17 | 18,931.17 |
| **Total 5420 S. Durango Dr.** | 222,883.17 | 27,598.37 | 1,950.50 | 1,950.50 | 1,950.50 | 21,654.36 | 4,926.00 | 60,030.23 | 282,913.40 |
| **Hawaii Land** | | | | | | | | | |
| Property Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 | 50.00 |
| **Total Hawaii Land** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 50.00 | 0.00 | 50.00 | 50.00 |
| **Total Real Property Expenses** | 843,466.02 | 120,020.75 | 34,260.41 | 25,828.28 | 36,262.29 | 92,176.40 | 34,565.32 | 343,113.45 | 1,186,579.47 |
| **Receiver Fees & Expenses** | | | | | | | | | |
| **Receiver Fees** | | | | | | | | | |
| B. Kane | 8,411.85 | 3,226.05 | 723.60 | 211.05 | 512.55 | 271.35 | 452.25 | 5,396.85 | 13,808.70 |
| K. Johnson | 120.60 | 0.00 | 542.70 | 0.00 | 0.00 | 0.00 | 0.00 | 542.70 | 663.30 |

ROBB EVANS ASSOCIATES LLC
Receiver of MRI International, Inc.
Receivership Administrative Expenses and Fund Balance
From Inception(February 23, 2015) to September 30, 2015

**ROBB EVANS ASSOCIATES LLC**
**Receiver of MRI International, Inc.**
**Receivership Administrative Expenses and Fund Balance**
From Inception(February 23, 2015) to September 30, 2015

|  | Previously Reported and Approved | Apr 15 | May 15 | Jun 15 | Jul 15 | Aug 15 | Sep 15 | 4/1/15-9/30/15 | TOTAL |
|---|---:|---:|---:|---:|---:|---:|---:|---:|---:|
| V. Miller | 42,149.70 | 9,497.25 | 12,361.50 | 13,085.10 | 17,245.80 | 13,235.85 | 30,481.65 | 95,907.15 | 138,056.85 |
| A. Jen | 482.40 | 934.65 | 30.15 | 150.75 | 934.65 | 814.05 | 452.25 | 3,316.50 | 3,798.90 |
| M. Lin | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 934.65 | 934.65 | 934.65 |
| L. Lee | 0.00 | 60.30 | 723.60 | 0.00 | 0.00 | 0.00 | 0.00 | 783.90 | 783.90 |
| F. Jen | 0.00 | 0.00 | 0.00 | 90.45 | 60.30 | 90.45 | 150.75 | 391.95 | 391.95 |
| C. Callahan | 1,755.00 | 1,665.00 | 697.50 | 1,215.00 | 270.00 | 0.00 | 67.50 | 3,915.00 | 5,670.00 |
| E. Roop | 8,748.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,414.50 | 4,414.50 | 13,162.50 |
| C. DeCius | 2,466.00 | 5,319.00 | 1,593.00 | 1,179.00 | 1,134.00 | 1,233.00 | 1,395.00 | 11,853.00 | 14,319.00 |
| N. Wolf | 7,698.00 | 2,418.00 | 1,560.00 | 954.00 | 2,112.00 | 1,974.00 | 3,282.00 | 12,300.00 | 19,998.00 |
| W. Wolf | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 323.00 | 0.00 | 323.00 | 323.00 |
| **Total Receiver Fees** | 71,831.55 | 23,120.25 | 18,232.05 | 16,885.35 | 22,269.30 | 17,941.70 | 41,630.55 | 140,079.20 | 211,910.75 |
| **Receiver Expenses** | | | | | | | | | |
| Meetings & Meals | 17.05 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17.05 |
| Office Telephone & Supplies | 0.00 | 609.53 | 0.00 | 3.76 | 0.00 | 0.00 | 0.00 | 613.29 | 613.29 |
| Postage & Delivery | 119.40 | 309.52 | 629.26 | 18.59 | 380.13 | 126.58 | 20.17 | 1,484.25 | 1,603.65 |
| Receiver Report Notification | 0.00 | 0.00 | 598.71 | 0.00 | 0.00 | 0.00 | 0.00 | 598.71 | 598.71 |
| Travel Expenses | 1,153.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,153.66 |
| Website Support | 199.62 | 84.28 | 70.98 | 0.00 | 0.00 | 26.62 | 0.00 | 181.88 | 381.50 |
| **Total Receiver Expenses** | 1,489.73 | 1,003.33 | 1,298.95 | 22.35 | 380.13 | 153.20 | 20.17 | 2,878.13 | 4,367.86 |
| **Legal Fees & Costs** | | | | | | | | | |
| Kolesar & Leatham | | | | | | | | | |
| Legal Fees | 0.00 | 0.00 | 37.50 | 0.00 | 0.00 | 0.00 | 0.00 | 37.50 | 37.50 |
| Total Kolesar & Leatham | 0.00 | 0.00 | 37.50 | 0.00 | 0.00 | 0.00 | 0.00 | 37.50 | 37.50 |
| Lynch Law Practice PLLC | | | | | | | | | |
| Legal Fees | 0.00 | 0.00 | 0.00 | 0.00 | 3,229.15 | 7,172.55 | 12,420.05 | 22,821.75 | 22,821.75 |
| Legal Costs | 0.00 | 0.00 | 0.00 | 0.00 | 510.00 | 8.00 | 62.00 | 580.00 | 580.00 |
| Total Lynch Law Practice PLLC | 0.00 | 0.00 | 0.00 | 0.00 | 3,739.15 | 7,180.55 | 12,482.05 | 23,401.75 | 23,401.75 |
| Dentons | | | | | | | | | |
| Legal Fees | 0.00 | 16,278.75 | 4,192.65 | 229.95 | 0.00 | 0.00 | 0.00 | 20,701.35 | 20,701.35 |
| Legal Costs | 0.00 | 232.06 | 169.54 | 85.10 | 304.40 | 129.40 | 0.00 | 920.50 | 920.50 |
| Total Dentons | 0.00 | 16,510.81 | 4,362.19 | 315.05 | 304.40 | 129.40 | 0.00 | 21,621.85 | 21,621.85 |
| **Total Legal Fees & Costs** | 0.00 | 16,510.81 | 4,399.69 | 315.05 | 4,043.55 | 7,309.95 | 12,482.05 | 45,061.10 | 45,061.10 |
| **Total Receiver Fees & Expenses** | 73,321.28 | 40,634.39 | 23,930.69 | 17,222.75 | 26,692.98 | 25,404.85 | 54,132.77 | 188,018.43 | 261,339.71 |
| **Total Expenses** | 916,909.80 | 160,905.14 | 58,191.10 | 43,051.03 | 63,326.28 | 117,813.26 | 90,747.66 | 534,034.47 | 1,450,944.27 |
| **Fund Balance** | 199,475.14 | | | | | | | | (182,758.57) |