1  Michael F. Lynch, Esq.
   Nevada Bar No. 8555
2  **LYNCH LAW PRACTICE, PLLC**
   3613 S. Eastern Ave.
3  Las Vegas, Nevada 89169
   702.684.6000
4  702.413.8282 (direct)
   702.543.3279 (fax)
5  Michael@LynchLawPractice.com
   *Attorney for the Receiver, Robb Evans*
6  *& Associates LLC*

7                    **UNITED STATES DISTRICT COURT**

8                           **DISTRICT OF NEVADA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No.: 2:13-cv-01658-JCM-CWH |
| Plaintiff, | **NOTICE OF MOTION AND OPPORTUNITY TO OBJECT, and,** |
| vs. | **JOINT MOTION FOR ORDER (1) AUTHORIZING, APPROVING AND CONFIRMING THE PRIVATE SALE OF REAL PROPERTY LOCATED AT 47-4400 HAWAII BELT RD. WITHOUT OVERBID PROCEEDINGS; AND (2) GRANTING RELIEF FROM LOCAL RULE 66-5 PERTAINING TO NOTICE TO CREDITORS** |
| EDWIN YOSHIHIRO FUJINAGA and MRI INTERNATIONAL, INC., | |
| Defendants, | |
| and | |
| CSA SERVICE CENTER, LLC THE FACTORING COMPANY, JUNE FUJINAGA, and THE YUNJU TRUST, | |
| Relief Defendants. | |

                           **NOTICE OF MOTION**

**NOTICE IS HEREBY GIVEN** that this *Joint Motion for Order (1) Authorizing, Approving and Confirming the Private Sale of Real Property Located at 47-4400 Hawaii Belt Rd. Without Overbid Proceedings; and (2) Granting Relief from Local Rule 66-5 Pertaining to Notice to Creditors* (the "Joint Motion") is made by Robb Evans & Associates LLC as Receiver ("Receiver") on the one hand, and defendants Edwin Fujinaga ("Fujinaga"), MRI International, Inc. ("MRI"), and relief Defendant CSA Service Center, LLC ("CSA", and together with MRI and Fujinaga, the "Defendants", and together with the Receiver, the "Parties"), on the other hand, each by and through their undersigned counsel.

By this Joint Motion, the Parties request that the Court enter an order (a) authorizing the Receiver to sell approximately 167.48 acres of unimproved agricultural real property known as 47-4400 Hawaii Belt Rd., Honokaa, Hawaii by private sale without an overbid session, and (b) granting relief from LR 66-5 pertaining to notice to creditors.

## NOTICE OF OPPORTUNITY TO OBJECT

**PURSUANT TO LR 66-5, YOU ARE HEREBY GIVEN 14 DAYS' NOTICE OF THIS JOINT MOTION.** This is your **DEADLINE** to file and serve any opposition, objection, and/or points and authorities in response to the Joint Motion, unless such deadline is extended by the Court.[1] See LR 7-2(b). The failure of an opposing party to file points and authorities in response to the Joint Motion constitutes consent to the granting of the Joint Motion and the relief requested herein. See e.g., LR 7-2(d).

It is the duty of any objecting party to timely (a) file its objection, (b) if desired, to request that its objection be set for a hearing, and (c) properly notice all parties in interest. If you do not file and serve an objection within the time permitted, an order granting the requested relief may be entered by the court without further notice or hearing.

> **NOTICE** is further given no hearing has been scheduled on the Joint Motion, and if no opposition is filed within 14 days of this notice, that the Joint Motion may be granted without a hearing.

See LR 78-1.[2]

---

[1] Should you wish to verify that the Court did not change the standard 14-day deadline to respond to the Joint Motion, you may either check the ECF docket for this case, accessible with an account at https://ecf.nvd.uscourts.gov/cgi-bin/login.pl and/or by contacting the Receiver's attorney, Michael Lynch, by email to Michael@LynchLawPractice.com, or by calling (702) 684-6000.

[2] Providing, in relevant part:

> All motions may be considered and decided with or without a hearing. Any party making or opposing a motion who believes oral argument may assist the court and wishes to be heard may request a hearing by inserting the words ORAL ARGUMENT REQUESTED below the title of the document on the first page of the motion or response. Parties must not file separate motions requesting a hearing."

2

## SUMMARY OF RELIEF REQUESTED

By this Joint Motion, the Parties are requesting:

1. An order approving the proposed sale of the real property located at 47-4400 Hawaii Belt Road, Honokaa, Hawaii 96727, consisting of approximately 167.48 acres of unimproved agricultural real property, owned by relief defendant CSA, located in the North Hilo area of the "Big Island", and identified by the Tax Map Key (3) 4-7-007-054[3] (the "Real Property"). The sale proposed is private sale without overbid proceedings, and on an "as is – where-is" basis, on the terms more fully set forth in the Purchase and Sale Agreement,[4] to Keith Gendreau and Allison Holt Gendreau (the "Buyers") arm's length buyers, at a purchase price of $1.8 million. An authenticated copy of the Purchase and Sale Agreement is attached as Exhibit 1 to the Declaration of Brick Kane filed contemporaneously herewith in support of this Joint Motion (the "Kane Declaration");

2. Authorizing the Receiver, by and through either one of its authorized deputies, Brick Kane and M. Val Miller, to execute all documents and instruments necessary or convenient to complete, implement, effectuate and close the sale of the Real Property to Buyers, free and clear of all existing debts and claims, including but not limited to:

    (a) Authorizing Brick Kane (or M. Val Miller), solely in his capacity as authorized deputy to the Receiver, solely in its capacity as the receiver for Defendant MRI and relief defendant CSA, to execute and consummate the sale of the Real Property to the Buyers under the Purchase and Sale Agreement, as SELLER as follows:

> MRI International Inc., Receivership QSF % Receiver Robb Evans
> & Associates LLC, the Receiver for MRI International, CSA
> Service Center, LLC, a Nevada limited liability company, et al.
>
> By:    Brick Kane (or M. Val Miller)
>          Authorized Deputy to the Receiver

---

[3] The Tax Map Key, or TMK, indicates that the Real Property is in the County of Hawaii (i.e., the Big Island), in Honokaa, Zone 7, Section 7, Plat 54.

[4] The term "Purchase and Sale Agreement" is defined in the Recitals section hereinbelow.

(b) Authorizing Brick Kane (or M. Val Miller), solely in his capacity as the authorized deputy to the Receiver, solely in its capacity as the receiver for relief defendant CSA, to execute a deed conveying title to the Real Property (free and clear of liens and claims) from CSA as GRANTOR, to the Buyers as follows:

> CSA Service Center, LLC, a Nevada limited liability company by Robb Evans & Associates LLC, a California limited liability company as Receiver for CSA Service Center, LLC, a Nevada limited liability company
>
> By: _____
> Brick Kane (or M. Val Miller)
> Authorized Deputy to the Receiver

and,

(c) Authorizing Brick Kane (or M. Val Miller), solely in his capacity as authorized deputy to the Receiver, solely in its capacity as the receiver for defendant MRI, to execute a release and/or re-conveyance of the mortgage encumbering the Hawaii Property executed by relief defendant CSA filed on August 5, 2011 with the Bureau of Conveyances of the State of Hawaii as Document No. 2011-124265, to and in favor of relief defendant MRI (the "<u>Mortgage</u>")[5] and to take any further actions that are reasonable or necessary to fully remove the Mortgage as an encumbrance upon the Hawaii Property, as the MORTGAGEE as follows:

> MRI International, Inc., a Nevada corporation by Robb Evans & Associates LLC a California limited liability company as Receiver for MRI International, Inc., a Nevada corporation
>
> By: _____
> Brick Kane (or M. Val Miller)
> Authorized Deputy to the Receiver

3. An order authorizing the Receiver to permit and/or cause to be paid from the proceeds of the sale of the Real Property (a) all ordinary and customary closing costs, (b) all costs and expenses required to be paid under the terms of the Purchase and Sale Agreement by

---

[5] The Mortgage is more fully identified in the preliminary title report prepared by Title Guaranty of Hawaii, at page 3, No. 6, a true and correct copy of which is attached as Exhibit 3 to the Kane Declaration.

the seller, from the proceeds of sale, (c) all commissions provided for in the Listing Agreement,[6] an authenticated copy of which is attached as Exhibit 2 to the Kane Declaration, (d) all real property tax liens and prorated real property taxes due up to the date of closing, and (e) any outstanding utility charges due and owing as of the date of the closing on a pro-rated basis.

    4.    An order finding that the Defendants have waived any requirements applicable to this sale set forth in 28 U.S.C. § 2001 *et. seq.*;

    5.    An order deeming the foregoing Notice of Motion sufficient under LR 66-5 based on the service of this Joint Motion and the contemporaneously-filed Kane Declaration by first class U.S. Mail, postage fully prepaid, on all known non-consumer creditors of the estate, but not on the tens of thousands of potential foreign creditors; and

    6.    An order for such additional relief as may be necessary or appropriate to allow the Receiver to effectuate the sale of the Real Property in full accord with the Purchase and Sale Agreement.

This Joint Motion is made pursuant to 28 U.S.C. § 2001 and 2002 and LR 66-5 and 66-10 and other applicable law, and is based upon the record of this case, the Notice of Motion and the Notice of Opportunity to Object hereinabove, the accompanying Memorandum of Points and Authorities, the Kane Declaration and the authenticated exhibits attached thereto, any reply, and upon all other pleadings and documentary evidence as may be presented to the Court by the Receiver in support of this Joint Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    RECITALS**[7]

The Parties stipulate and agree:

    A.    On January 27, 2015, the Clerk of Court entered judgment against the Defendants (the "Judgment") (ECF No. 189) pursuant to the Court's order granting summary judgment in favor of plaintiff Securities and Exchange Commission ("SEC") (ECF No. 188).

---

[6] The term "Listing Agreement" is defined in the Recitals section hereinbelow.
[7] In addition to being stipulated to by the Parties, these facts are also verified by the Kane Declaration.

B. On February 23, 2015, the Court issued its Order Appointing an Equitable Receiver (the "Appointment Order") (ECF No. 194) pursuant to which the Receiver was appointed as receiver for various real properties and their rents and profits, including the Real Property, as more fully set forth in the Appointment Order.

C. On February 25, 2015, the Court issued its Rule 54(b) Certification (ECF No. 195) pursuant to which the Judgment was made final as to the Defendants.

D. On May 15, 2015, the Receiver's duties and responsibilities were enlarged by that certain Order Appointing a Full Equitable Receiver to Assume Control over the Defendants' Assets and Enforce the Final Judgment entered on May 15, 2015 (the "Order Appointing Receiver") (ECF No. 226). The Order Appointing Receiver supersedes the Appointment Order, and directs the Receiver to take and retain immediate possession, custody, and control of all assets owned or controlled, directly or indirectly, by without limitation, Fujinaga, MRI, and CSA. *Id.*

E. Pursuant to the Order Appointing Receiver, the Receiver is currently in possession, custody, and control of the Real Property.

F. The Real Property consists of approximately 167.48 acres of unimproved agricultural land. Title to the Real Property is held in the name of CSA, and encumbered by a mortgage for the benefit of MRI.

G. The Parties agree that it makes economic sense to sell the Real Property, as (a) owning the Real Property serves no ongoing purpose to the receivership estate, (b) the Real Property is not needed due to the termination of the MRI and CSA businesses, and (c) selling the Real Property will eliminate ongoing expenses of the estate related to owning and safeguarding the Real Property as well as the ongoing risk, attendant to some degree to all vacant unimproved real properties, of illegal dumping, unauthorized grazing of livestock, and/or squatters.

H. The Parties agree that the purchase price of $1.8 million is a very favorable to the estate, as discussed in more detail below.

I. The Defendants have waived all requirements set forth in 28 U.S.C. § 2001 *et seq.* that are applicable to this sale, and the Parties request and recommend that the court approve the

Purchase and Sale Agreement without an overbid session.

J. The Parties agree that the potential market for the Real Property is very small. The Buyers in this instance own the neighboring property, and are therefore part of that very small market. In addition, the Buyers are well qualified, and have made an all-cash offer without any financing contingencies, as-is and where-is without any warranties or representations.

K. The Real Property is subject to accruing real property taxes. Most or all of the real property taxes have been satisfied, but to the extend any additional property taxes are due or accrue through the date of closing will be satisfied on a pro-rated basis at the time of closing.

L. On June 5, 2015, Receiver entered into an exclusive right to sell listing agreement (the "Listing Agreement") with MacArthur Sotheby's International Realty (the "Broker"), an authenticated correct copy of which is attached to the Kane Declaration as Exhibit 2. Broker is experienced in the sale of real estate in Hawaii County.

M. The Real Property was formally listed for sale with a listing price of $1,950,000.00. In determining the listing price, the Receiver relied on two appraisals of the Real Property, and a broker's opinion of value dated November 17, 2015, as well as the Broker's analysis of and recommendations regarding a listing price for the Real Property.

N. Broker has advised the Receiver that it has expended the following efforts to market the Real Property for sale as follows:

    (i) Use high quality photographs in marketing efforts
    (ii) Advertise on the award-wining site sir.com
    (iii) Advertise on the Big Island Real Estate MacArthur Sotheby's International Realty
    (iv) Advertise in the New York Times
    (v) Advertise in the Wall Street Journal
    (vi) Advertise on Trulia
    (vii) Advertise on Yahoo
    (viii) Advertise on Zillow
    (ix) Advertise on Homefinder

  (x)  Advertise in the Architectural Digest

  (xi)  Advertise in the Financial Times

  (xii)  Print and Digital Advertising

  (xiii)  Email Blasts

  (xiv)  Marketing Brochures

O.  On or about August 2, 2016, the Receiver received an all cash offer from the Buyers for $1.7 million, without any financing contingencies to purchase the Real Property, but the Buyers insisted that the sale must be conducted with no overbid proceedings (the "Offer").

P.  The Brokers engaged by the Receiver advised that in this market, it would be very difficult or impossible to find any buyer willing to agree to any terms contingent upon holding an overbid session. Accordingly, on or about August 8, 2016, the Receiver countered the Buyers' offer, which was (i) contingent upon court approval of the sale without an overbid session, (ii) for a purchase price of $1.8 million, and (iii) including additional protections for the estate, such as that the sale shall be without any warranty, express or implied, in any form whatsoever with respect to all defects, whether discovered, discoverable, known or unknown (the "Counteroffer").

Q.  On October 6, 2016, the Receiver, its undersigned counsel, the Defendants, and their undersigned counsel, met in person and discussed the status of negotiations for sale of the Real Property, including the sale price and other terms of the sale. The Defendants advised that the purchase price was very favorable to the estate, and that and the removal of any overbid proceedings made sense under the circumstances.

R.  On or about October 20, 2016, the Buyers and the Receiver agreed to amended escrow instruction (the "Amended Instructions").

S.  On or about October 31, 2016, Buyers and the Receiver agreed to a final Addendum, which clarified procedures and the scope and limitations of the Buyers' and the Receiver's obligations, waivers, and responsibilities (the "Final Addendum", and together with the Offer, Counteroffer, Amended Instructions, and all attachments thereto, the "Purchase and Sale Agreement").

T.   The Buyers have made it abundantly clear, from the very start of negotiations and steadfastly since then, that they are absolutely unwilling to purchase the Real Property subject to overbid proceedings.

U.   Receiver has obtained (i) two independent appraisals of the Real Property, (ii) a broker's opinion of value, and (iii) the qualified opinion of value from the principal of the owner of record for the Real Property, Edwin Fujinaga,[8] who has personal knowledge of the Real Property. The Receiver has not disclosed the amount of these valuations,[9] however, the purchase price of $1.8 million is very close to the actual market value of the Real Property, and that it is in the best interests of the receivership estate to approve this sale.

V.   In the opinion of both the Receiver and the owner of record (CSA), which opinion is supported by the valuations and appraisals set forth above, that the proposed purchase price of $1.8 million far exceeds the minimum threshold for approval of a private sale of two-thirds of the average of three appraisals of the property as required under 28 U.S.C. § 2001.

W.   The Parties seek to sell the Real Property without an overbid session under the Purchase and Sale Agreement to the Buyers, who are unaffiliated, arm's length purchasers based on the Receiver's investigation. The Purchase and Sale Agreement provides for an "as is," all cash sale, conditioned upon Court approval of this Joint Motion, with the closing to occur within 45 days from entry of an order granting this Joint Motion in its entirety.

X.   Defendants hereby waive all requirements set forth in 28 U.S.C. § 2001 *et seq.* that apply to the Receiver's sale of real property in this case.

---

[8] Nevada law allows owners of real property to testify as to its value. "An owner of property may testify to its value . . . so long as the owner has personal knowledge, **or** the ability to provide expert proof, of value." *Stephans v. State*, 262 P.3d 727, 731 (Nev. 2011) (emphasis added). "A party to a lawsuit may testify as to the value of her personal or real property when that value is an issue in the case." *Dugan v. Gotsopoulos*, 22 P.3d 205, 207 (Nev. 2001)

[9] Receiver will submit copies of the valuations with the Court for in camera inspection if requested by the Court.

## II. AUTHORITIES APPLICABLE TO RECEIVER'S SALES OF REAL PROPERTY.

28 U.S.C. § 2001 provides the procedures pertaining to the sale of real property by a federal receiver. Subsection (a) pertains to procedures for the public sale of real property. Subsection (b) pertains to the sale of real property at a private sale and states:

> After a hearing, of which notice to all such interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interest of the estate will be conserved thereby. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale should not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a ten percent increase over the price offered in the private sale.

28 U.S.C. § 2001(b).

Courts are granted discretion in setting the terms and conditions for judicial sales and the Court's discretion will not be disturbed on appeal except where abuse of discretion is shown. United States v. Branch Coal Corp., 390 F. 2d 7 (3rd Cir. 1968), cert. den. Sun Protection Co. v. United States, 391 U.S. 966, 88 S. Ct. 2034 (1968). The Court has substantial discretion in receivership matters in setting the overbidding procedures applicable to sales of real property. See Pewabic Mining Co. v. Mason, 145 U.S. 349, 356, 36 L.Ed. 732, 12 S.Ct. 887 (1891) (the provisions for notice and other conditions shall be determined by the Court "as will in his judgment best protect the rights of all interested, and make the sale most profitable to all"). See also Cumberland Lumber Co. v. Tunis Lumber Co., 171 F. 352 (4th Cir. 1909); Bidwell v. Huff, 176 F. 174 (5th Cir. 1909). The terms and conditions of the judicial sale that the Court may adopt are based on the facts and circumstances of each case. The discretion granted in connection with sales of assets is consistent with the broad discretion accorded to the Court sitting in equity in receivership proceedings to make orders concerning the administration and supervision of the estate that will promote equity, efficiency and cost-effectiveness in the estate's administration.

See generally Securities and Exchange Commission v. Hardy, 803 F.2d 1034 (9th Cir. 1986); Securities and Exchange Commission v. Black, 163 F.3d 188, 199 (3rd Cir. 1998); Securities and Exchange Commission v. Elliot, 953 F.2d 1560 (11th Cir. 1992).

Under § 2001(b), in order for a sale to be approved, the minimum purchase price for the property must exceed two-thirds of the average value in three appraisals of the property by appraisers appointed by the court. The statute does not define what constitutes an "appraisal" for the purpose of § 2001(b).

As the Ninth Circuit noted in SEC v. Hardy, 803 F. 2d 1034, 1037 (9th Cir. 1986): "A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad" and subject to review under an abuse of discretion standard. See also United States v. Branch Coal Corp., 390 F. 2d 7 (3rd Cir. 1968) (courts granted discretion in setting the terms and conditions for judicial sales and the court's discretion will not be disturbed on appeal except absent abuse of discretion).

### III. AUTHORITY REGARDING WAVIER OF THE PROVISIONS OF 28 U.S.C. § 2001.

The district court may approve a private sale of real property that does not satisfy the requirements of 28 U.S.C. § 2001 when those requirements have been waived by the defendants in a receivership case or by agreeing to the form of an agreed order appointing receiver that provides no such limits on the receiver's authority to sell real property. *See Securities and Exchange Commission v. Nelson*, Misc. File No. 2:09-ms-0101 (D.Nev. 2011); *see also Huntington Nat'l Bank v. Big Sky Dev. Flint*, No. 10-10346, 2010 WL 3702361, at *2 (E.D. Mich. 2010) (finding the requirements of § 2001(b) can be waived by a stipulated order appointing receiver and/or by the parties.).

The Defendants have waived any requirements applicable to the Receiver's sale of real property.[10] *See* Recital No. X above. Accordingly, to the extent the Purchase and Sale contract

---

[10] It is the Receiver's position that the requirements set forth in 28 U.S.C. § 2001(b) have been previously waived in this case by the Defendants. The waiver contained herein is intended to foreclose any potential dispute concerning such waiver with respect to this proposed sale and this case.

11

departs in any way from the requirements of 28 U.S.C. § 2001 et seq., the Parties request the Court find that the Defendants have waived any applicable requirements and approve the present sale under equitable principals applicable to receivership cases, the Court's inherent discretion, and/or upon Defendants' waiver.

## IV. THE RECEIVER HAS SATISFIED OR WILL SETTLE OR SATISFY ENCUMBRANCES AGAINST THE REAL PROPERTY FROM SALES PROCEEDS.

The Receiver has obtained a preliminary Title Report for the Real Property, which report is dated September 2, 2016, an authenticated copy of which is attached to the Kane Declaration as Exhibit 3, which identifies any liens or encumbrances against the Real Property, including any liens for unpaid taxes or unpaid utility charges. Any such unpaid taxes or charges, and any liens or claims against the Real Property, will be satisfied or removed by the receivership estate no later than the actual closing date.

## V. NOTICE OF THIS MOTION IS SUFFICIENT UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED

LR 66-5 provides for service of notice of the hearing on various motions by a receiver concerning the administration of the estate. That rule provides for service of the notice of hearing on such motions on all creditors of the receivership estate. No hearing has been set on this Joint Motion and the provisions of LR 66-5 do not specifically apply. Nevertheless, the Receiver will serve the Joint Motion, which includes the Notice of Motion and the Notice of Opportunity to Object, on the parties, the affected lienholders, and on all known non-consumer creditors of the estate and on known taxing authorities with a potential claim in the receivership estate ("Notice Parties"), to provide them notice and an opportunity to object and/or be heard concerning the Joint Motion. This notice is consistent with notice previously approved by the Court in this case.

In this case, there are believed to be many potential consumer creditors who may have claims against the receivership defendants arising out of the business operations of the receivership defendants prior to the Receiver's appointment, although the precise number, identity and location of such consumer creditors have not been determined by the Receiver. The Receiver has had discussions for counsel representing many of the foreign investors and has been

advised that the number of consumer creditors is likely in the thousands. It is not realistically possible or beneficial to the estate and its creditors for the Receiver to attempt to identify and serve the potential consumer creditors with notice of this and other similar administrative motions, and the expense and burden on the estate of attempting to effectuate such service would drain the estate's resources and cause undue administrative expense.

Based on the foregoing, to the extent that LR 66-5 applies to this Joint Motion, the Receiver seeks an order finding that service of this Joint Motion and the Kane Declaration is served by first class U.S. Mail on all parties to this action and the Notice Parties identified above. The Receiver submits that such service provides sufficient notice and an opportunity for hearing to the interested parties and should be approved as adequate.

There is ample authority for approval of the scope and method of notice as set forth above. This Court, as a court of equity supervising the receivership estate, may make appropriate administrative orders governing the receivership, including limitations on and changes in notice and other procedures. See F.R.C.P. 5(a) and (c) (authorizing the court to modify service procedures when numerous defendants are involved in litigation). In addition, pursuant to LR 66-10, a receiver is directed to administer receivership estates "as nearly as may be in accordance with the practice in the administration of estates in Chapter 11 bankruptcy cases."

Orders limiting notice when the Bankruptcy Code or Rules would otherwise require notice to all creditors are routinely granted in bankruptcy cases to promote the expeditious and economical administration of bankruptcy estates. See In re First Alliance Mortgage Co., 269 B.R. 428, 442 (C.D. Cal. 201) (referencing in dicta in the court's recitation of facts the bankruptcy court's order limiting notice issued in that case); 11 U.S.C. § 102(1)(A) (defining the phrase "after notice and a hearing" to mean "after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances"); 11 U.S.C. § 105(a) and (d) (granting broad equitable powers to the court to issue orders "necessary or appropriate to carry out the provisions" of title 11 including "prescribing such limitations and conditions as the court deems appropriate to ensure the case is handled expeditiously and economically"); and F.R. Bankr. P. 202(m) (authorizing the court to

enter "orders designating the maters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules").

## IV. CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant this Joint Motion in its entirety by entry of an order in substantially the same form as the proposed order attached hereto as **Exhibit "1"**.

Dated:

LYNCH LAW PRACTICE, PLLC
/s/ Michael F. Lynch
_____
Michael F. Lynch
Nevada Bar No. 8555
3613 S. Eastern Ave.
Las Vegas, NV 89169
702.684.6000
702.543.3279 (fax)
Michael@LynchLawPractice.com

Counsel for the Receiver,
Robb Evans & Associates LLC

Dated:

JORDEN & WHITE, LLP
/s/ William T. Jorden
_____
William T. Jorden (PA SBN 10162)
billjorden@jordenandwhite.com
Matthew B. Jorden (PA SBN 209688)
mattjorden@jordenandwhite.com
966 South Main Street
Meadville, PA 16335
Telephone: 814-724-1771
Facsimile: 814-724-1774

LAW OFFICE OF HAYES & WELSH
Larson Welsh
Nevada Bar No. 12517
lwelsh@lvlaw.com
199 N. Arroyo Grande Blvd., Ste. 200
Henderson, NV 89074
Telephone: 702-434-3444
Facsimile: 702-434-3739

Attorneys for Defendants Edwin Yoshihiro Fujinaga; MRI International, Inc.; CSA Service Center LLC and The Factoring Co.

# Exhibit 1

# Exhibit 1

Michael F. Lynch, Esq.
Nevada Bar No. 8555
**LYNCH LAW PRACTICE, PLLC**
3613 S. Eastern Ave.
Las Vegas, Nevada 89169
702.684.6000
702.543.3279 (fax)
Michael@LynchLawPractice.com
*Attorney for the Receiver, Robb Evans & Associates LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>EDWIN YOSHIHIRO FUJINAGA and MRI INTERNATIONAL, INC.,<br><br>Defendants,<br><br>and<br><br>CSA SERVICE CENTER, LLC<br>THE FACTORING COMPANY,<br>JUNE FUJINAGA, and<br>THE YUNJU TRUST,<br><br>Relief Defendants. | Case No.: 2:13-cv-01658-JCM-CWH<br><br>**[PROPOSED]**<br><br>**ORDER (1) AUTHORIZING, APPROVING AND CONFIRMING THE PRIVATE SALE OF REAL PROPERTY LOCATED AT 47-4400 HAWAII BELT RD. WITHOUT OVERBID PROCEEDINGS; AND (2) GRANTING RELIEF FROM LOCAL RULE 66-5 PERTAINING TO NOTICE TO CREDITORS** |

Presently before the Court is the Joint Motion for Order (1) Authorizing, Approving and Confirming the Private Sale of Real Property Located at 47-4400 Hawaii Belt Rd. Without Overbid Proceedings; and (2) Granting Relief from Local Rule 66-5 Pertaining to Notice to Creditors (the "Joint Motion") [ECF No. 379 ] brought by Robb Evans & Associates LLC as Receiver ("Receiver") on the one hand, and defendants Edwin Fujinaga ("Fujinaga"), MRI International, Inc. ("MRI"), and relief Defendant CSA Service Center, LLC ("CSA", and together with MRI and Fujinaga, the "Defendants", and together with the Receiver, the "Parties"), on the other hand, made pursuant to 28 U.S.C. §§ 2001 and 2002 and Local Rules 66-5 and 66-10 and other applicable law, the Memorandum of Points and Authorities in support

thereof, the Declaration of Brick Kane in support of the Joint Motion (the "Kane Declaration") [ECF No. 380 ] and the authenticated exhibits attached thereto, and upon all other pleadings and documentary evidence as may be presented to the Court by the Receiver in support of the Joint Motion.

Pursuant to LR 7-2, an opposing party must file points and authorities in response to a motion and failure to file a timely response constitutes the party's consent to the granting of the motion. *See* LR 7-2(d); *United States v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979). The Defendants have joined in the Joint Motion, and no other party has filed any opposition, objection, and/or points and authorities in response to the Joint Motion and the deadline to do so has passed. The court has not scheduled a hearing on the Joint Motion, and finds that it is unnecessary to do so. Nevertheless, the court reviewed the substantive merits and grants the Joint Motion in full.

The Joint Motion requests an order:

1. Approving the proposed sale of the real property located at 47-4400 Hawaii Belt Road, Honokaa, Hawaii 96727, consisting of approximately 167.48 acres of unimproved agricultural real property, owned by relief defendant CSA, located in the North Hilo area of the "Big Island", and identified by the Tax Map Key (3) 4-7-007-054 (the "Hawaii Property") to Keith Gendreau and Allison Holt Gendreau or their assigns (the "Buyers") without overbid proceedings, and on an "as is – where-is" basis, on the terms more fully set forth in the Purchase and Sale Agreement[1] at a purchase price of $1.8 million without further notice, hearing, order, or overbidding;

---

[1] The Purchase and Sale Agreement is defined and described more fully in the Joint Motion, and is attached as Exhibit 1 to the Kane Declaration.

2

2. Authorizing the Receiver, by and through either one of its authorized deputies, Brick Kane and M. Val Miller, to execute all documents and instruments necessary or convenient to complete, implement, effectuate and close the sale of the Real Property to Buyers, free and clear of all existing debts and claims, including but not limited to:

(a) Authorizing Brick Kane (or M. Val Miller), solely in his capacity as authorized deputy to the Receiver, solely in its capacity as the receiver for Defendant MRI and relief defendant CSA, to execute and consummate the sale of the Real Property to the Buyers under the Purchase and Sale Agreement, as SELLER as follows:

> MRI International Inc., Receivership QSF % Receiver Robb Evans
> & Associates LLC, the Receiver for MRI International, CSA
> Service Center, LLC, a Nevada limited liability company, et al.
>
> By: Brick Kane (or M. Val Miller)
>      Authorized Deputy to the Receiver

(b) Authorizing Brick Kane (or M. Val Miller), solely in his capacity as the authorized deputy to the Receiver, solely in its capacity as the receiver for relief defendant CSA, to execute a deed conveying title to the Real Property (free and clear of liens and claims) from CSA as GRANTOR, to the Buyers as follows:

> CSA Service Center, LLC, a Nevada limited liability company by
> Robb Evans & Associates LLC, a California limited liability
> company as Receiver for CSA Service Center, LLC, a Nevada
> limited liability company
>
> By: Brick Kane (or M. Val Miller)
>      Authorized Deputy to the Receiver

and,

(c) Authorizing Brick Kane (or M. Val Miller), solely in his capacity as authorized deputy to the Receiver, solely in its capacity as the receiver for defendant MRI, to execute a release and/or re-conveyance of the mortgage encumbering the Hawaii Property executed by relief defendant CSA filed on August 5, 2011 with the Bureau of Conveyances of the State of Hawaii as Document No. 2011-124265, to and in favor of

3

relief defendant MRI (the "Mortgage")[2] and to take any further actions that are reasonable or necessary to fully remove the Mortgage as an encumbrance upon the Hawaii Property, as the MORTGAGEE as follows:

> MRI International, Inc., a Nevada corporation by Robb Evans & Associates LLC a California limited liability company as Receiver for MRI International, Inc., a Nevada corporation
>
> By: Brick Kane (or M. Val Miller)
> Authorized Deputy to the Receiver

3. Authorizing the Receiver to, in its capacity as receiver for defendant MRI, execute a release and/or re-conveyance of the mortgage encumbering the Hawaii Property executed by relief defendant CSA filed on August 5, 2011 with the Bureau of Conveyances of the State of Hawaii as Document No. 2011-124265, to and in favor of relief defendant MRI (the "Mortgage")[3] and to take any further actions that are reasonable or necessary to fully remove the Mortgage as an encumbrance upon the Hawaii Property;

4. Authorizing the Receiver to permit and/or cause to be paid from the proceeds of the sale of the Hawaii Property (a) all ordinary and customary closing costs, all costs and expenses required to be paid under the terms of the Purchase and Sale Agreement by the seller from the proceeds of sale, (b) all commissions provided for in the Purchase and Sale Agreement or the Receiver's listing agreement for the Real Property as set forth in the respective documents and the Joint Motion, copies of which is attached as Exhibits 1 and 2 to the Kane Declaration, and (c) all real property tax liens and prorated real property taxes due up to the date of closing;

5. Finding that the Defendants have waived any requirements applicable to this sale set forth in 28 U.S.C. § 2001 *et. seq.*;

---

[2] The Mortgage is more fully identified in the preliminary title report prepared by Title Guaranty of Hawaii, at page 3, No. 6, a true and correct copy of which is attached as Exhibit 3 to the Kane Declaration.

[3] The Mortgage is more fully identified in the preliminary title report prepared by Title Guaranty of Hawaii, at page 3, No. 6, a true and correct copy of which is attached as Exhibit 3 to the Kane Declaration.

4

6. Finding that the notice contained in the Joint Motion is sufficient notice under LR 66-5, based on the service of the Joint Motion and the Kane Declaration by first class U.S. Mail, postage fully prepaid, on all known non-consumer creditors of the estate, but not on the tens of thousands of potential foreign creditors; and

7. Granting the Joint Motion, and all relief requested therein, in its entirety.

Good cause appearing, the court hereby grants the Joint Motion, and all relief requested therein, in its entirety.

IT IS SO ORDERED:

_____
The Honorable James C. Mahan
UNITED STATES DISTRICT COURT JUDGE

DATED: February 7, 2017

LYNCH LAW PRACTICE, PLLC

_____
Michael F. Lynch
Nevada Bar No. 8555
3613 S. Eastern Ave.
Las Vegas, NV 89169
702.684.6000
702.543.3279 (fax)
Michael@LynchLawPractice.com

Counsel for the Receiver,
Robb Evans & Associates LLC

JORDEN & WHITE, LLP

_____
William T. Jorden (PA SBN 10162)
billjorden@jordenandwhite.com
Matthew B. Jorden (PA SBN 209688)
mattjorden@jordenandwhite.com
966 South Main Street
Meadville, PA 16335
Telephone: 814-724-1771
Facsimile: 814-724-1774

LAW OFFICE OF HAYES & WELSH
Larson Welsh
Nevada Bar No. 12517
lwelsh@lvlaw.com
199 N. Arroyo Grande Blvd., Ste. 200
Henderson, NV 89074
Telephone: 702-434-3444
Facsimile: 702-434-3739

Attorneys for Defendants Edwin Yoshihiro Fujinaga; MRI International, Inc.; CSA Service Center LLC and The Factoring Co.

5