Michael F. Lynch, Esq.
Nevada Bar No. 8555
**LYNCH LAW PRACTICE, PLLC**
3613 S. Eastern Ave.
Las Vegas, Nevada 89169
702.684.6000
702.543.3279 (fax)
Michael@LynchLawPractice.com

*Attorney for the Receiver*
*Robb Evans & Associates LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>       Plaintiff,<br>    vs.<br>EDWIN YOSHIHIRO FUJINAGA; and MRI INTERNATIONAL, INC.,<br>       Defendants,<br>  and<br>CSA SERVICE CENTER, LLC;<br>THE FACTORING COMPANY;<br>JUNE FUJINAGA; and<br>THE YUNJU TRUST,<br>       Relief Defendants. | Case No.: 2:13-cv-01658-JCM-CWH<br><br>**STIPULATION AND ORDER AUTHORIZING THE SALE OF PERSONAL PROPERTY AT AUCTION** |

This Stipulation and Order Authorizing the Sale of Personal Property at Auction (the "Stipulation and Order") is made by and between Robb Evans & Associates LLC as the Receiver (the "Receiver") on the one hand, and defendants Edwin Fujinaga ("Fujinaga"), MRI International, Inc. ("MRI"), and their affiliated entities, including The Factoring Company (collectively, the "Defendants", and together with the Receiver, the "Parties") on the other hand, each by and through their counsel.

## RECITALS

A. WHEREAS, on January 27, 2015, the Clerk of Court entered judgment against the Defendants (ECF No. 189) ("Judgment") pursuant to the Court's order granting summary judgment in favor of plaintiff Securities and Exchange Commission (the "SEC").

B. WHEREAS, on February 23, 2015, the Court issued its Order Appointing an

1 Equitable Receiver (ECF No. 194) ("Appointment Order") pursuant to which the Receiver was appointed as receiver for various commercial properties and their rents and profits (defined in the appointment order as the "Properties") as more fully set forth in the appointment order.

C. WHEREAS, on February 25, 2015, the Court issued its Rule 54(b) Certification (ECF No. 195) pursuant to which the judgment was made the final judgment as to the Defendants.

D. WHEREAS, the Receiver's duties and responsibilities were enlarged by that certain Order Appointing a Full Equitable Receiver to Assume Control over the Defendants' Assets and Enforce the Final Judgment entered on May 15, 2015 (the "Order Appointing Receiver") (ECF No. 226). The Order Appointing Receiver supersedes the previous order, and directs the Receiver to take and retain immediate possession, custody, and control of all assets owned or controlled, directly or indirectly, by any of the Defendants in this case, including but not limited to assets of The Factoring Company, a Relief Defendant herein. *Id.*

E. WHEREAS, The Factoring Company, relief defendant herein, is also known as The Factoring Company X III, Inc., the title holder of record to the personal property described as follows.

F. WHEREAS, (a) Relief Defendant The Factoring Company and (b) The Factoring Company X III, Inc., a Nevada corporation; are one and the same.

G. WHEREAS, this Stipulation and Order relates to the Receiver's proposed sale of personal property at auction, which property is a Bugatti EB110, title to which is held in the name of The Factoring Company X III, Inc. The Bugatti EB110 is currently in the possession, custody, or control of the Receiver, and described[1] as follows:

| Year | Make | Model | Vehicle Identification Number | Color |
| --- | --- | --- | --- | --- |
| 1993 | Bugatti | EB110 | ZA9AB01E0PCD39034 | Blue |

H. WHEREAS, the Bugatti EB110 is a rare, exotic, collectable, and valuable Italian sportscar.

I. WHEREAS, the Parties agree that Receiver should sell the Bugatti EB110 because,

---

[1] The Bugatti is more fully identified and described in that certain Nevada Certificate of Title, attached hereto as **Exhibit "1"**.

2

among other reasons, the estate gains no prospective material benefit from its possession or control of the Bugatti EB110, and because by selling it, the estate can obviate its ongoing risk of damage or theft, as well as other costs, expenses, and insurance relating to the Bugatti EB110.

J. WHEREAS, the Receiver has determined, based upon the nature of the Bugatti EB110, and the time and costs that would be incurred in connection with other methods of liquidation, that it is in the best interests of the receivership estate and its creditors for the Receiver to engage an auctioneer to liquidate the Bugatti EB110.

K. WHEREAS, Bonhams is a well-recognized auctioneer of this type of personal property, has already examined the Bugatti EB110, and has advised that a well-advertised auction is appropriate for this sale and provides an opportunity to maximize the return to the estate in a timely fashion. Bonhams has recommended to the Receiver that the 10th annual Greenwich Concours D'Elegance Auction, which will be held on June 4, 2017, would be a favorable forum to auction the Bugatti EB110, because another Bugatti has already been entered in the same auction, and that Bonhams can generate additional interest by having the rare opportunity to have two Bugattis in the same auction, which interest would heighten its exposure to likely qualified buyers.

L. WHEREAS, Bonhams estimates the Bugatti EB110 will sell for $500,000 -- $700,000, and that a minimum reserve price of $450,000 is appropriate.

M. WHEREAS, Bonhams has also agreed to waive the standard entry fee of $1,500.00 and will cover the transportation fee of $2,700.00.

N. WHEREAS, a true and correct copy of Bonhams' proposed consignment agreement (the "Consignment Agreement"), is attached hereto as **Exhibit "2"**.

O. WHEREAS, the Parties agree that Bonhams is an appropriate and well qualified auction house appropriate to handle the auction of the Bugatti EB110.

P. WHEREAS, the Parties agree that Bonhams' proposed compensation, in an amount equal to 10% of the hammer price (seller's commission) and together with the standard buyer's premium in effect for the subject auction, is customary, fair, and appropriate, and commonly used and accepted in the industry.

Q. WHEREAS, the Parties agree, considering the rarity and variable collectable value of the Bugatti EB110, that it would be unhelpful, unnecessary and inefficient to expend the estate's assets in hiring three appraisers. To the extent Section 2001(b) may apply to this sale, the Parties request the Court exercise its discretion under Section 2004 to modify the sale procedures for this personalty set forth in Section 2001(b).

R. WHEREAS, the Receiver confirms that it has presented the terms of this proposed sale to counsel for plaintiff SEC and counsel for the class of Japanese investors,[2] and said counsel have both advised the Receiver that they have no objection to the sale of the Bugatti EB110 as provided for herein.

S. Similar requests by the Receiver to sell personal property via auction under similar terms have been previously approved by this Court. (*See e.g.*, ECF Nos. 274, 328, 372).

NOW THEREFORE, the Parties hereby request, stipulate and agree that the following Order be entered by this Court:

**ORDER**

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The recitals set forth hereinabove are adopted as findings of fact and part of this order;

2. This Stipulation is approved in its entirety;

3. It is in the best interests of the estate and its creditors to, and that the Receiver is authorized to, engage Bonhams to sell the Bugatti EB110 by auction at the 10th annual Greenwich Concours D'Elegance Auction to be held on June 4, 2017, upon the terms and conditions referenced herein and in the attachments hereto;

4. The Receiver is authorized to execute all documents and instruments necessary or convenient to commission for auction, and to complete, implement, effectuate, and close the sale of the Bugatti EB110, free and clear of any liens and/or encumbrances, including, but not limited to:

---

[2] The class of Japanese investors are the members of the plaintiff class in the action styled *Takiguchi et al. v. MRI International, Inc. et al.*, currently pending in the United States District Court for the District of Nevada as Case No. 2:16-cv-01183-HDM-NJK.

a. executing a consignment agreement with Bonhams that is, or that is materially consistent with, the Consignment Agreement attached hereto;

b. executing a Bill of Sale conveying all ownership interests in the Bugatti EB110 free and clear of all liens and/or encumbrances to a successful bidder for a hammer price of not less than $450,000, if any, at the auction; and

c. executing the Nevada Certificate of Title, a copy of which is attached hereto, as The Factoring Company X III, Inc., solely in the Receiver's capacity as receiver for The Factoring Company, Relief Defendant herein;

5. The Receiver is authorized to permit and/or cause to be paid from the proceeds of sale all ordinary and customary closing costs, all commissions, costs, and expenses due from seller under in the Consignment Agreement from the proceeds of sale; and

6. The Receiver has complied with all applicable statutory and legal authorities, including the provisions of 28 U.S.C §§ 2001 *et seq.*, required to approve the Receiver's sale of the Bugatti EB110 under the terms and conditions set forth in this Stipulation and Order.

LYNCH LAW PRACTICE, PLLC

*/s/ Michael F. Lynch*

Michael F. Lynch
Nevada Bar No. 8555
3613 S. Eastern Ave.
Las Vegas, NV 89169
702.684.6000
702.543.3279 (fax)
Michael@LynchLawPractice.com

Attorney for the Receiver
Robb Evans & Associates LLC

JORDEN & WHITE, LLP

*/s/ William T. Jorden*

William T. Jorden (PA SBN 10162)
billjorden@jordenandwhite.com
966 South Main Street
Meadville, PA 16335
Telephone: 814-724-1771
Facsimile: 814-724-1774

LAW OFFICE OF HAYES & WELSH
Larson Welsh, NV Bar No. 12517
lwelsh@lvlaw.com
199 N. Arroyo Grande Blvd., Ste. 200
Henderson, NV 89074
Telephone: 702-434-3444
Facsimile: 702-434-3739

Attorneys for Defendants Edwin Yoshihiro Fujinaga; MRI International, Inc.; CSA Service Center LLC and The Factoring Co.

**IT IS SO ORDERED.**

DATED:   May 4, 2017

*/s/ James C. Mahan*

The Honorable James C. Mahan
UNITED STATES DISTRICT COURT JUDGE

5

# Exhibit 1

Exhibit 1

# STATE OF NEVADA
## DEPARTMENT OF MOTOR VEHICLES

## CERTIFICATE OF TITLE

| VIN | YEAR | MAKE | MODEL | VEHICLE BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| ZA9AB01E0PCD39034 | 1993 | BUGA | EB110 | P2D | NV001576270 |

| DATE ISSUED | ODOMETER MILES | FUEL TYPE | SALES TAX PD | EMPTY WT | GROSS WT | GVWR |
|---|---|---|---|---|---|---|
| 02/01/2007 | | G | | | | |

| VEHICLE COLOR | ODOMETER BRAND | | | BRANDS | | |
|---|---|---|---|---|---|---|
| | EXEMPT | | | | | |

**OWNER(S) NAME AND ADDRESS**
THE FACTORING COMPANY X III INC
5330 S DURANGO DR
LAS VEGAS NV  89113

**LIENHOLDER(S) NAME AND ADDRESS**

**LIENHOLDER(S) RELEASE** – INTEREST IN THE VEHICLE DESCRIBED ON THIS TITLE IS HEREBY RELEASED:

_____    _____
SIGNATURE OF AUTHORIZED AGENT            DATE

_____
PRINTED NAME OR COMPANY STAMP



FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.
The undersigned hereby certifies the vehicle described in this title has been transferred to the following buyer(s):

_____    _____    ☐ AND
Printed Full Legal Name of Buyer                                    Nevada Driver's License Number or Identification Number    ☐ OR

_____    _____
Printed Full Legal Name of Buyer                                    Nevada Driver's License Number or Identification Number

_____
Address                    City                    State                    Zip Code

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.
    NO TENTHS    ☐ The mileage stated is in excess of its mechanical limits.
                 ☐ The odometer reading is not the actual mileage. WARNING: ODOMETER DISCREPANCY.
ODOMETER READING   ☐ Exempt – Model year over 9 years old.

_____    _____
Signature of Seller(s)/Agent/Dealership                  Printed Name of Seller(s)/Agent/Dealership

I am aware of the above odometer certification made by the seller/agent. ☐    Dealer's License Number _____    Date of Sale _____

_____    Printed Full Legal Name of Buyer
Signature of Buyer

ACCORDING TO THE RECORDS OF THE DEPARTMENT OF MOTOR VEHICLES, THE PERSON NAMED HEREON IS THE OWNER OF THE VEHICLE DESCRIBED ABOVE, SUBJECT TO LIEN AS SHOWN.

CONTROL NO.  **0387452B**
(THIS IS NOT A TITLE NO.)

RD-2 (Rev. 1/06)

ALTERATION OR ERASURE VOIDS THIS TITLE

## FIRST REASSIGNMENT — DEALER ONLY

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**
The undersigned hereby certifies the vehicle described in this title has been transferred to the following buyer(s):

☐ AND ☐ OR

Printed Full Legal Name of Buyer _____  Nevada Driver's License Number or Identification Number _____

Printed Full Legal Name of Buyer _____  Nevada Driver's License Number or Identification Number _____

Address _____ City _____ State _____ Zip Code _____

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING [NO TENTHS]
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING – ODOMETER DISCREPANCY
☐ Exempt – Model year over 9 yrs. old.

Signature of Seller(s)/Agent/Dealership _____  Printed Name of Seller(s)/Agent/Dealership _____

I am aware of the above odometer certification made by the seller/agent. ☐   Dealer's License Number _____ Date of Sale _____

Signature of Buyer _____  Printed Full Legal Name of Buyer _____

## SECOND REASSIGNMENT — DEALER ONLY

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**
The undersigned hereby certifies the vehicle described in this title has been transferred to the following buyer(s):

☐ AND ☐ OR

Printed Full Legal Name of Buyer _____  Nevada Driver's License Number or Identification Number _____

Printed Full Legal Name of Buyer _____  Nevada Driver's License Number or Identification Number _____

Address _____ City _____ State _____ Zip Code _____

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING [NO TENTHS]
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING – ODOMETER DISCREPANCY
☐ Exempt – Model year over 9 yrs. old.

Signature of Seller(s)/Agent/Dealership _____  Printed Name of Seller(s)/Agent/Dealership _____

I am aware of the above odometer certification made by the seller/agent. ☐   Dealer's License Number _____ Date of Sale _____

Signature of Buyer _____  Printed Full Legal Name of Buyer _____

## THIRD REASSIGNMENT — DEALER ONLY

▶ **FEDERAL AND STATE LAW REQUIRES THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.**
The undersigned hereby certifies the vehicle described in this title has been transferred to the following buyer(s):

☐ AND ☐ OR

Printed Full Legal Name of Buyer _____  Nevada Driver's License Number or Identification Number _____

Printed Full Legal Name of Buyer _____  Nevada Driver's License Number or Identification Number _____

Address _____ City _____ State _____ Zip Code _____

I certify to the best of my knowledge the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

ODOMETER READING [NO TENTHS]
☐ The mileage stated is in excess of its mechanical limits.
☐ The odometer reading is not the actual mileage. WARNING – ODOMETER DISCREPANCY
☐ Exempt – Model year over 9 yrs. old.

Signature of Seller(s)/Agent/Dealership _____  Printed Name of Seller(s)/Agent/Dealership _____

I am aware of the above odometer certification made by the seller/agent. ☐   Dealer's License Number _____ Date of Sale _____

Signature of Buyer _____  Printed Full Legal Name of Buyer _____

## LIEN

**LIENHOLDER TO BE RECORDED**

FEIN _____

Printed Full Legal Name of Lienholder _____ (if no lienholder write "NONE")

Address _____
Street _____ City _____ State _____ Zip Code _____

**ALTERATION OR ERASURE VOIDS THIS TITLE**

# Exhibit 2

Exhibit 2

# Bonhams

220 San Bruno Avenue, San Francisco, CA 94103
Tel (415) 391 4000 - Fax (415) 391 4040
Bonded Pursuant to California Civil Section 1812.600

**MOTORCAR CONSIGNMENT AGREEMENT**

| Sale Date | 6/4/2017 | Sale Venue | Greenwich Auction |
|---|---|---|---|
| Sale No. | 24143 | Schedule No. | |
| Closing Date for Entries | 4/4/2017 | Client No. | |

Details: Owner ☐ Agent ☐ Executor ☐

| Name | Telephone (Mobile) | Are you a Dealer  Y / N |
|---|---|---|
| Address | Telephone (Home) | If Yes: |
| | Telephone (Business) | Dealer # |
| | Fax | State |
| | Email | Sales Tax # |

| Date of Manufacture | Make of Vehicle | Model or Type | Type of Body |
|---|---|---|---|
| 1993 | Bugatti | EB 110 | |

| License No. | Chassis No. | Engine No. |
|---|---|---|
| | ZA9AB01E0PCD39034 | Is engine original?  Yes  No |

| Cubic Capacity | No. of Cylinders | Transmission: Manual/Manual with Overdrive/Automatic | Left/Right Hand Drive |
|---|---|---|---|

| Name of Coachbuilder | No. of Seats | Body Color | Interior Color & Material |
|---|---|---|---|
| Original Coachwork?  Yes  No | | Blue | Grey |

| Has Vehicle Been Restored | Date of Restoration | Bills Available: List | Odometer Reading  Actual |
|---|---|---|---|
| | | | 15,588 KM  Not Actual |

| Certificate of Title Available | Lien Info:  Yes  No | If yes, amount of lien  $ | Lienholder/Bank |
|---|---|---|---|

**Special Instructions**

*A non-refundable consignment (entry) fee of ~~$1500~~ $0 will be zero.
*Sellers' Commission is a standard 10% of hammer price.
*Bonhams to professionally photograph at no additional charge
*Bonhams will undertake, with a budget ceiling of $1,500, the care and consideration to remove various blemishes required to display the vehicle in the right light
*Bonhams will arrange transport circa ~~$2,700~~ will be waived. Bonhams to pay.

**This Consignment Agreement consists of the information contained on this page and the "Seller's Conditions" attached hereto, as amended by any Special Instructions printed above.**

1. I request that Bonhams & Butterfields Auctioneers Corp. (hereafter, "you" or "Bonhams & Butterfields") offer for sale by auction at the sale venue stated above (the "Sale") the vehicle described above.
2. I acknowledge and agree that I have read the Seller's Conditions attached hereto and that they constitute a part of this Consignment Agreement.
3. I will arrange/request you to arrange for the delivery of the vehicle to the Sale venue stated above, at my own expense.
4. I may withdraw the vehicle from the Sale with your consent and agree to pay you withdrawal charges as outlined under paragraph 13 of the attached Seller's Conditions.
5. I agree to pay you a non-refundable Consignment Fee of US$1,500 at the time this Consignment Agreement is made, which fee will not be credited against the Seller's Commission.
6. If the vehicle is sold, I agree to pay you a Seller's Commission equal to 10% of the Hammer Price.

7. If the vehicle is not sold at the auction, I will arrange for its removal immediately after the conclusion of the Sale at my own expense unless alternative prior arrangements have been made and confirmed in writing.
8. I agree that should the vehicle not sell at the auction, you will have the sole and exclusive right for up to 14 days following the auction to sell the vehicle by private sale for any amount equal to or in excess of the Reserve Price less the Seller's Commission.
9. You may withdraw any vehicle from the Sale for any reason including if on examination you are not satisfied that the description given by me accords with the actual condition of the vehicle, and I agree that your decision will be final.
10. I declare that I have full legal authority to make this Consignment Agreement and to sell the vehicle on the terms and conditions stated herein and that the vehicle is free from any lien or encumbrance.

| Seller | Date |
|---|---|
| | |
| Reserve Price | Estimate |
| TBD per Mark Osborne | $500,000 - 700,000 |
| Bonhams | Date |

**SELLER'S CONDITIONS – U.S. Motoring Consignments**

This Consignment Agreement, consisting of these Seller's Conditions and the attached Entry Form, including any Special Instructions stated thereon (which are incorporated by reference herein) and any additional Schedule A property listing(s) attached thereto (such documents, collectively, comprising the "Agreement") is made by and between Bonhams & Butterfields Auctioneers Corp., a Delaware corporation ("Bonhams") and the Seller identified on the Entry Form as of the date last written thereon.

**1. Definitions**
In this Agreement, the following words and expressions shall (unless the context otherwise requires) have the following meanings:
1.1 "Auctioneer" means the representative of Bonhams conducting the auction.
1.2 "Bonhams" means Bonhams & Butterfields Auctioneers Corporation.
1.3 "Buyer" means the person to whom the Lot is knocked down by the Auctioneer or otherwise acknowledged as the Buyer by Bonhams.
1.4 "Catalogue" includes any advertisement, brochure, price list and other publication referring to the Lot or the Sale.
1.5 "Expenses" in relation to the Sale of a Lot means Bonhams' out of pocket costs for photographs, illustration, special advertising, packing, storage, duties, freight and any other such costs incurred by Bonhams in connection with a Lot.
1.6 "Hammer Price" means the successful bid price in U.S. dollars at which a Lot is knocked down by the Auctioneer to the Buyer of the Lot.
1.7 "Lot" means the property identified on the Entry Form of this Agreement and in any attachment to this Agreement.
1.8 "Buyer's Premium" shall have the meaning given in the Conditions of Sale in effect for the subject auction.
1.9 "Purchase Price" means the sum of the Hammer Price, the Buyer's Premium, and any sales, use or other tax due to any governmental authority as a result of the Sale of the Lot hereunder, plus any Expenses payable by a Buyer.
1.10 "Reserve Price" means the confidential minimum price, if any, that has been agreed to in writing between Bonhams and the Seller below which the Lot will not be sold, except as set forth herein.
1.11 "the Sale" means the Bonhams auction sale in respect of which a Lot is consigned for sale.
1.12 "Seller's Sale Proceeds" means the net amount due to the Seller being the Purchase Price *less* the Seller's Commission, the Buyer's Premium, any Expenses payable by Seller, and any sales, use or other tax due to any governmental authority as a result of the Sale of the Lot payable by Seller under this Agreement.
1.13 "Seller" means the party other than Bonhams identified hereinabove and/or on the Entry Form.
1.14 "Seller's Commission" shall have the meaning given in paragraph 11.2 below.
1.15 "Settlement Date" shall have the meaning given in paragraph 14.1 below.

**2. Consignment**
With respect to each Lot, Seller hereby consigns to Bonhams the Lot, which Bonhams, as Seller's exclusive agent, agrees to offer for sale at public auction (unless otherwise agreed), subject to the provisions set forth herein and Bonhams' Conditions of Sale in effect at the time of the Sale. In the event of any conflict between the Conditions of Sale and this Agreement, the terms of this Agreement shall control.

**3. Transportation and Storage**
Unless otherwise mutually agreed in writing, Seller agrees to pay any and all costs and expenses of transport and delivery of the Lot to the designated Sale location; Seller agrees to pay any applicable customs duties and customs user fees owing on the Lot; and delivery of the Lot into the possession of Bonhams or its authorized agent shall be deemed to take place when the Lot has been delivered to the saleroom at the designated location of the Sale (or other designated delivery location) and all mechanical parts of the Lot are turned off and in a stationary position.

**4. Currency Converter**
Solely for the convenience of bidders, a currency converter may be provided at Bonhams sales. The rates quoted for conversion of other currencies to U.S. dollars (or the currency in which the relevant sale is conducted) are estimates only and should not be relied upon by a bidder and neither Bonhams nor its agents shall be responsible for any errors or omissions in the currency converter.

**5. Bonhams' Discretion**
Bonhams shall have absolute professional discretion to set the time, manner and place (at the Sale Venue specified elsewhere in this Agreement) at which the Sale of the Lot is conducted, including the Conditions of Sale then in effect with respect to bidders. Bonhams shall have the discretion to cancel the auction subject of this Agreement or to change the date of that auction, *provided that* such new Sale Date must be within 30 days of the Sale Date stated on the Entry Form unless otherwise mutually agreed. Bonhams shall have absolute professional discretion with regard to the advertising, marketing and previewing of the Lot, and the description and illustration of the Lot in any Catalogue and the order in which the Lot appears in any Catalogue and in the auction. Bonhams shall have the right, but not the obligation, to seek the view of any expert concerning the Lot either before or after the auction, to refuse any bid on the Lot and to refuse entry to any person at the auction, and to divide the Lot for sale at the auction or to combine the Lot with other lots for sale at the auction. In the event of a dispute regarding bids or other irregularity at the auction, Bonhams reserves the right to place the Lot up for sale more than one time at the same auction.

**6. Risk of Loss or Injury**
Unless otherwise mutually agreed in writing, Bonhams shall not be liable for any loss or damage to or caused by all or any portion of the Lot unless such loss is caused by the sole negligence or intentional act of Bonhams, its agents or employees.

**7. Insurance**
Unless otherwise mutually agreed in writing, Seller, at no expense to Bonhams, shall cause each Lot to be and remain insured through the earlier to occur of the time of its sale or its release into Seller's custody, against theft, loss and damage, including from the time Bonhams takes delivery of the Lot until the Lot ceases to be in Bonhams' care, custody and control, for an amount no less than:
(a) the Hammer Price (if the Lot has been sold); or
(b) the Reserve Price (if a reserve has been agreed in accordance with paragraph 12); or
(c) where there is no Reserve Price, the average pre-sale estimate (as defined in paragraph 8 below); and

1

Seller expressly acknowledges that Bonhams shall be under no obligation to carry any insurance policy against risk of any loss, theft or damage to the Lot at any time and assumes no liability for any loss or theft of or damage to any Lot.

### 8. Bonhams' Estimates and Descriptions.
8.1 Bonhams makes no warranty or representation as to the anticipated or likely selling price (at auction or otherwise) of the Lot. Any written or oral estimate (whether or not printed in any Catalogue) given by Bonhams, its officers, employees or agents as to the estimated selling price of the Lot is a statement of opinion only, and may be revised from time to time in Bonhams' sole discretion and may not be relied upon as an indication of the actual selling price for the Lot. Bonhams shall not be liable for the failure of any Lot to be sold at price below such estimate or expected price or to reach the Reserve Price, if any.
8.2 Bonhams shall not be liable to Seller for any error, or misstatement in, or omission from the description of a Lot in any Catalogue. Bonhams shall have no duty to the Seller to investigate the accuracy of the description of any Lot provided by or on behalf of the Seller.
8.3 Bonhams is entitled to alter the description of any Lot by posting a saleroom notice, or by announcement, at any time prior to the offer of the Lot at the Sale.

### 9. Seller's Representations and Warranties
9.1 Seller represents and warrants that:
(a) Seller has full right, title and authority to make and enter into this Agreement, and that the Lot is now and will be upon sale free and clear of all liens, claims and encumbrances, that the Seller has good and marketable title and right to possession to the Lot and that the same will pass to Buyer upon completion of the Sale. Seller has or will promptly upon execution of this Agreement provide Bonhams with current, clear, transferable title documents for the Lot, assignable without further action by Seller, for Bonhams to hold as agent until completion of the sale of the Lot; if the Lot is not titled, Seller shall provide its Bill of Sale for the Lot and such other documentation as shall reasonably be requested.
(b) Seller has complied with all laws relating to the export or import of the Lot prior to the Sale.
(c) Seller has provided Bonhams with all written material in Seller's possession or control and has notified Bonhams in writing of all of Seller's knowledge concerning the authenticity, provenance, origin, age, condition, quality and any material alterations to the Lot as well as any facts or opinions expressed by third parties in relation to the Lot.
(d) There are no restrictions, legal or otherwise, affecting Bonhams' right to photograph, reproduce photographs of, exhibit or describe the Lot. Seller hereby grants to Bonhams the right to illustrate and photograph the Lot and to use Seller's name in connection with the Lot. Bonhams shall own the copyright on all such illustrations, photographs and written descriptions of the Lot produced by Bonhams, and Seller shall have no right, title or interest therein.
9.2 Seller agrees that the foregoing representations and warranties are for the benefit of both Bonhams and the Buyer of the Lot, that Bonhams may rely on their accuracy and completeness, and that such representations and warranties shall survive completion of the consignment and any sale of the Lot.
9.3 Seller agrees to notify Bonhams promptly in writing of any events or circumstances that may cause the foregoing representations and warranties to be inaccurate or breached in any way.

### 10. Indemnification
Seller shall indemnify, hold harmless and defend Bonhams, its directors, officers, agents and employees, from and against any and all losses, damages, liabilities, claims, and all fees, costs and expenses of any kind related thereto (including, without limitation, reasonable attorneys' fees) arising out of, based upon or resulting from any and all claims of ownership or right to possession of the Lot or sale proceeds, any breach or alleged breach of any representation or warranty made by Seller under this Agreement, or any active or passive negligence by Seller, its agents, representatives, or employees with respect to the Lot consigned hereunder.

### 11. Consignment Fee, Seller's Commission, and Buyer's Premium
11.1 Unless otherwise mutually agreed in the Special Instructions or otherwise in writing, Seller shall pay Bonhams a non-refundable Consignment (entry) Fee of $1500.00 for each Lot consigned hereunder upon signing of this Agreement.
11.2 Unless otherwise mutually agreed in the Special Instructions or otherwise in writing, Bonhams shall deduct and retain from the proceeds of the sale of the Lot a Seller's Commission in an amount equal to ten percent (10%) of the Hammer Price, together with any Expenses payable by Seller hereunder.
11.3 Seller acknowledges Bonhams' right to charge, collect and retain for its own account the full Buyer's Premium upon sale of the Lot.
11.4 Bonhams reserves the right in its sole discretion to pay a fee out of its own commissions to any third party introducing property or clients to it.

### 12. Reserves
12.1 The Lot will be sold without reserve unless a Reserve Price has been agreed by Bonhams and the Seller, on the Entry Form or otherwise in writing. Any Lot being offered for sale subject to a Reserve Price may be identified as such prior to the Sale and will not be sold for less than the Reserve Price at auction except as otherwise provided herein. As Seller's agent, Bonhams may act to protect the Reserve Price by bidding through the Auctioneer.
12.2 Neither the Seller nor any agent of the Seller (other than Bonhams) may bid on the Lot, directly or indirectly. If any such bid is nonetheless made, the Auctioneer may knock down the Lot to the Seller without observing any Reserve Price and the Seller shall pay to Bonhams the Buyer's Premium plus the Seller's Commission and any Expenses payable by Seller hereunder.
12.3 Any Reserve Price set in an amount other than an applicable bidding increment may be rounded down to the next bidding increment. Bonhams may sell any Lot below the Reserve Price if the Seller's Sale Proceeds are made equal to the amount which the Seller would have received had the Lot been sold at the Reserve Price. Any Reserve Price and any printed presale estimates of the selling price of the Lot shall not include the Buyer's Premium or any taxes payable.
12.4 In no event shall Bonhams be liable for any failure of any Lot to be sold at any estimated or expected price or for the failure of bidding on the Lot to reach any Reserve Price.

### 13. Withdrawal
13.1 No Lot may be withdrawn from sale after the effective date of this Agreement without Bonhams' prior consent. If Bonhams consents to such a withdrawal, Bonhams shall be entitled to charge a withdrawal fee equal to twenty percent (20%) of the average of Bonhams' latest high and low pre-sale estimates or, where a Reserve Price has been set, twenty percent (20%) of the

2

Reserve Price applicable to the Lot, plus Expenses incurred by Bonhams with respect to the Lot, plus any associated costs provided for herein.

13.2 Bonhams reserves the right to withdraw any Lot at any time prior to the initiation of bidding on the Lot at auction. In the event Bonhams withdraws such Lot as a result of doubt as to the accuracy of any of the Seller's representations or warranties or actual or alleged breach of any provision of this Agreement by Seller, Seller shall be liable to Bonhams for the full withdrawal fee described in paragraph 13.1 as well as any Expenses and associated costs.

13.3 If the Seller elects to withdraw the Lot and Bonhams consents to such withdrawal, the Seller shall arrange for collection and removal of the Lot from Bonhams' custody at the Seller's own expense within two (2) days after the date of Bonhams' consent; *provided, however,* that the Lot may not be removed or released to Seller unless and until any withdrawal fee, and any Expenses or other costs reimbursable hereunder, and any funds advanced to Seller, have been paid or reimbursed in full.

13.4 In addition, in connection with any withdrawal, Seller shall reimburse to Bonhams, on a full indemnity basis, any and all legal or other investigative fees or costs incurred by Bonhams in the investigation or defense of any claim concerning title to the Lot, the Seller's right to sell the Lot or the accuracy of the description of the Lot contained in the Catalogue.

**14. Settlement of Account**

14.1 Bonhams, in its capacity as Trustee of the Bonhams & Butterfields Consignor Trust (the "Trust"), shall account for and pay to the Seller the Seller's Sale Proceeds not later than 21 days after the date of the Sale (the "Settlement Date"), *provided that* the Purchase Price has been received in full by Bonhams, that no claim has been made against the Lot or its sale proceeds and that the Buyer has not given notice of intent to rescind the sale. Unless an alternate method of payment shall have been agreed with the Seller, payment hereunder shall be made by sending to the Seller a check drawn on the Trust's bank account, by first class mail. Payments shall be made in U.S. dollars. As Trustee of the Trust, Bonhams hereby accepts the foregoing instruction, and Seller hereby agrees that any interest paid on any sums deposited into any account held by the Trustee shall be retained by the Trustee to help defray its cost of administering the Trust. If payment is made to Seller other than by check, a nominal bank wire transfer fee may apply.

14.2 If the Purchase Price has not been received in full by Bonhams by the Settlement Date, Bonhams will pay the Seller's Sales Proceeds promptly and in any event within six (6) business days after the date on which the full Purchase Price is received by Bonhams in cleared funds from the Buyer.

14.3 Bonhams shall have no obligations to enforce payment by a Buyer. However, in the event the Purchase Price has not been received by Bonhams by the Settlement Date, Bonhams will notify the Seller to discuss an appropriate course of action. Bonhams may, in its absolute discretion, assist the Seller in the recovery of the Purchase Price; *provided, however*, that Bonhams shall be under absolutely no obligation to institute any proceeding in its own name.

14.4 In the event no agreement is made between Bonhams and Seller concerning the collection of the Purchase Price within seven (7) days following the giving of the notice by Bonhams referred to in paragraph 14.3, Bonhams may do any of the following:
(a) Agree with the Buyer as to terms for the payment of the Purchase Price;
(b) Remove, store and insure the Lot;
(c) Settle any claims and/or proceedings by or against the Buyer on such terms as Bonhams shall in its absolute discretion deem appropriate;
(d) Take such steps as Bonhams shall, in its absolute discretion, consider necessary and appropriate to collect the Purchase Price from the Buyer;
(e) Rescind the Sale and refund any monies paid by the Buyer;
(f) Offer the Lot for resale, by auction or private sale, with or without reserve;
(g) Engage an attorney to pursue any of the courses of action referred to in subparagraphs (a) through (f) above.
Seller hereby grants to Bonhams a full power of attorney coupled with an interest in the Lot to pursue said courses of action in the Seller's name, and Seller will render to Bonhams any and all assistance as Bonhams may reasonably require to enable Bonhams to take any of such courses of action.

14.5 Bonhams shall be entitled to set off any fees or costs it incurs as a result of it engaging in any of the courses of action set forth hereinabove as an Expense together with the Buyer's Premium and the Seller's Commission on the Lot. In the event that the money collected by Bonhams as a result of engaging in any such course of action is insufficient to cover such Expenses, Buyer's Premium and Seller's Commission, the net shortfall shall be payable by the Seller to Bonhams on demand.

14.6 Upon Bonhams' giving of the notice to Seller per Paragraph 14.3 above that the Purchase Price has not been received by the Settlement Date, Seller shall be entitled to instruct Bonhams to rescind the sale and request redelivery of the Lot by giving timely notice of such election to Bonhams, *provided that* Buyer has made prior payment to Bonhams of the Buyer's Premium plus the Seller's Commission and any Expenses payable by Seller hereunder.

**15. Unsold Lots**

15.1 If a Lot does not sell at auction, Bonhams shall have the sole and exclusive right, but not the obligation, to sell the Lot for a period equal to fourteen (14) days following the Sale at which the Lot was offered, for any price equal to or in excess of any Reserve Price less any Seller's Commission, except as otherwise agreed by the parties or permitted hereunder. Bonhams may elect to sell the Lot by private sale for less than the full Reserve Price under this paragraph, *provided that* Seller shall be paid an amount no less than the net amount to which Seller would have been entitled had the lot sold at a price equal to the Reserve Price.

15.2 Unless otherwise mutually agreed, Seller shall remove the Lot from Bonhams' possession by close of business on the day following the auction at which the Lot was to be sold or enter into a new consignment agreement with Bonhams with respect to the Lot. In the event of the Lot not being collected within the agreed time frame, Bonhams may, in Bonhams' sole discretion, return the Lot to Seller at Seller's expense, or transfer the Lot to a third party warehouse, or sell the Lot at public auction by Bonhams. In the event such Lot is sold at public auction as aforesaid, Seller shall be entitled to receive the sales proceeds in accordance with paragraph 14. In the event of transfer of any unsold Lot to a third party warehouse, Seller shall bear all costs and risks thereof and shall be liable to such warehouse for the payment of storage charges in the minimum amount of $20 per day or five percent (5%) of the Reserve Price, whichever is greater.

**16. Notices**

All notices and demands shall be given in writing either by personal service or by

registered or certified mail return receipt requested, or by overnight delivery, postage and fees prepaid, when delivered to the United States Post Office, Federal Express, United Parcel Service, DHL WorldWide Express, or Airborne Express, as the case may be, or by confirmed facsimile transmission. Notice shall be considered given on the date received by personal service or transmitted by confirmed facsimile, or the date appearing on the return receipt, but if the receipt is not returned, within three (3) days after being mailed. Notices shall be addressed as shown in this Agreement for each party, except that, if any party gives notice of a change of name or address, notices to that party shall thereafter be given as shown in that notice.

**17. Assignment**
The rights and obligations of the parties under this Agreement may not be assigned by either party (except in the case of Bonhams to a Bonhams Group corporate affiliate) without the prior written consent of the other party.

**18. Miscellaneous**
18.1 Bonhams shall have the right to set off from any monies due to Seller under this Agreement any monies due to Bonhams or any Bonhams Group corporate affiliate from Seller.
18.2 This Agreement and the relationship of the parties shall be governed by the laws of the State of California and U.S. Federal law (as applicable). Jurisdiction for all dispute resolution shall be the State of California, USA. Venue shall be in New York City, New York or San Francisco, California, as set forth in the following paragraphs. The parties expressly agree that the United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement.
18.3 Bonhams maintains a bond on file with the California Secretary of State.
18.4 This Agreement, as amended by any Special Instructions stated on the Entry Form or as otherwise mutually agreed in writing, constitutes the entire agreement between the parties concerning their rights and obligations with respect to the subject matter hereof. Any agreements or representations respecting the Lot or its Sale not expressly set forth in this Agreement shall have no effect, except for a subsequent written modification signed by the party to be charged.
18.5 The headings and captions used in this Agreement are for convenience only and shall not affect the meaning of this Agreement.
18.6 No act or omission of Bonhams, its employees or agents shall operate or be deemed to operate as a waiver of any of Bonhams' rights under this Agreement.
18.7 This Agreement shall be binding on the parties, their heirs, distributees, executors, legal representatives, successors and assigns.
18.8 Time is of the essence of this Agreement.
18.9 Resolution of any dispute hereunder shall be by mediation or arbitration, the terms for which shall be as set forth below.

**Mediation & Arbitration Procedures:**
(a) Within thirty (30) days of written notice that there is a dispute, the parties or their authorized and empowered representatives shall meet by telephone and/or in person to mediate their differences. If the parties agree, a mutually acceptable mediator shall be selected and the parties will equally share such mediator's fees. The mediator shall be a retired judge or an attorney familiar with commercial law and trained in or qualified by experience in handling mediations. Any communications made during the mediation process shall not be admissible in any subsequent arbitration, mediation or judicial proceeding. All proceedings and any resolutions thereof shall be confidential, and the terms governing arbitration set forth in paragraph (c) below shall govern.

(b) If mediation does not resolve all disputes between the parties, or in any event no longer than sixty (60) days after receipt of the written notice of dispute referred to above, the parties shall submit the dispute for binding arbitration before a single neutral arbitrator. Such arbitrator shall be a retired judge or an attorney familiar with commercial law and trained in or qualified by experience in handling arbitrations. Such arbitrator shall make all appropriate disclosures required by law. The arbitrator shall be drawn from a panel of a national arbitration service agreed to by the parties, and shall be selected as follows: (i) If the national arbitration service has specific rules or procedures, those rules or procedures shall be followed; (ii) If the national arbitration service does not have rules or procedures for the selection of an arbitrator, the arbitrator shall be an individual jointly agreed to by the parties. If the parties cannot agree on a national arbitration service, the arbitration shall be conducted by the American Arbitration Association, and the arbitrator shall be selected in accordance with the Rules of the American Arbitration Association. The arbitrator's award shall be in writing and shall set forth findings of fact and legal conclusions.

(c) Unless otherwise agreed by the parties or provided by the published rules of the national arbitration service:
(i) the arbitration shall occur within sixty (60) days following the selection of the arbitrator;
(ii) the arbitration shall be conducted in the designated location, as follows: (A) in any case in which the subject auction by Bonhams took place or scheduled to take place in the State of New York, Connecticut, or Florida or the Commonwealth of Pennsylvania or Massachusetts, the arbitration shall take place in New York City, New York; (B) in all other cases, the arbitration shall take place in the city of San Francisco, California; and
(iii) discovery and the procedure for the arbitration shall be as follows:
(A) All arbitration proceedings shall be confidential;
(B) The parties shall submit written briefs to the arbitrator no later than fifteen (15) days before the arbitration commences;
(C) Discovery, if any, shall be limited as follows: (I) Requests for no more than ten (10) categories of documents, to be provided to the requesting party within fourteen (14) days of written request therefor; (II) No more than two (2) depositions per party, *provided, however*, the deposition(s) are to be completed within one (1) day; (III) Compliance with the above shall be enforced by the arbitrator in accordance with California law;
(D) Each party shall have no longer than eight (8) hours to present its position. The entire hearing before the arbitrator shall not take longer than three (3) consecutive days;
(E) The award shall be made in writing no more than thirty (30) days following the end of the proceeding. Judgment upon the award rendered by the arbitrator may be entered by any court having jurisdiction thereof.
To the fullest extent permitted by law, and except as required by applicable arbitration rules, each party shall bear its own attorneys' fees and costs in connection with the proceedings and shall share equally the fees and expenses of the arbitrator.